IN THE UNITED STATES DISTRICT COURT
OF THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

JEROME D. JOHNSON        PLAINTIFF

V.        CIVIL ACTION NO. 1:07cv539LG-JMR

DONALD A. CABANA, et al.        DEFENDANTS

STATE OF MISSISSIPPI

COUNTY OF HARRISON

### AFFIDAVIT OF CORRECTIONS INVESTIGATOR CAROLYN PRENDERGRAST HARRISON COUNTY SHERIFF'S OFFICE

PERSONALLY CAME AND APPEARED BEFORE ME the undersigned authority in and for the County and State aforesaid, the within named CAROLYN PRENDERGRAST who, after first being duly sworn by me on her oath, did depose and state the following:

1. My name is Carolyn Prendergrast and I am over the age of twenty-one (21) years. I am an Investigator with the Harrison County Sheriff's Office, Criminal Investigations Division (CID). I have personal knowledge of the matters and facts contained in this Affidavit and I am competent to testify to the matters stated herein.

2. I have been an Investigator in CID for approximately five (5) years, and I have been trained in the Policies and Procedures, General Order No. 18, Crime Scene Investigation. See General Order attached hereto as **Exhibit "1"**.

3. I was the only officer assigned the task of investigating the sexual assault



EXHIBIT "F"

charges against the Plaintiff, and as a CID Investigator.

4. I investigated the claims made by Inmate Eugene Loisel, wherein Plaintiff was identified by Loisel as the assailant, then I completed my investigation, and presented the evidence before Judge Ray. Warrants were issued by the Court, and Plaintiff was charged with sexual assault; as more fully described in my Investigative Report, attached hereto as **Exhibit "2"**.

5. At the time, I believed that my actions were objectively responsible in light of the information available to me at the time, and in the belief that there existed probable cause to arrest Plaintiff for the charge of sexual assault.

6. On December 19, 2006, the sexual assault kits of Loisel, and Plaintiff were submitted and accepted by the Mississippi Crime Lab. On December 22, 2006, I submitted my entire investigation case file to the District Attorney's Office for Grand Jury review and prosecution. I then went on maternity leave in January and returned in March 2007. It wasn't until May 25, 2007 that the sexual assault kits were returned from the Mississippi Crime Lab. This evidence then required additional DNA testing at another facility and was forwarded on May 30, 2007, to the Jefferson Parish Regional DNA Profiling Unit in Harvey, LA ("Jefferson Parish Lab"). The Jefferson Parish Lab concluded their testing on or about August 3, 2007, and returned their report and invoice on or about August 15, 2007. Upon receiving the test results, I quickly forwarded (on August 21, 2007) the DNA Report to the District Attorney's Office.

6. All policies attached hereto represent policies and procedures which were in place and effect at the time of the subject incident.

I certify the above declaration is true and correct under penalty of perjury.

_____
Affiant/Carolyn Prendergast
Harrison County, Mississippi

Sworn to and subscribed before me on this the 1st day of August 2008.

_____
Notary Public

My Commission Expires:

1/28/09
(SEAL)

General Order #18
Harrison County Sheriff's Department
January 3, 2000

George Payne, Jr, Sheriff

## CRIME SCENE INVESTIGATIONS

1. **SCOPE**

   This policy is directed to all sworn and investigative personnel.

2. **PURPOSE**

   The purpose of this General Order is to establish a policy to define general procedures for Crime Scene Investigations.

3. **CRIME SCENE INVESTIGATIONS**

   This section uses terms that patrol officers and investigators should be knowledgeable of and adhere to in the process of conducting investigations.

4. **Preliminary Investigation**

   Generally, it is the activity which begins when officers arrive at the scene of an accident or crime. The activity shall continue until such time as a postponement of the investigation or transfer of responsibility will not jeopardize the successful completion of the investigation.

   The investigation usually includes the following tasks:

   1. Providing aid to the injured.

   2. Protecting the crime scene to ensure that evidence is not lost or contaminated.

   3. Determining if a crime has actually been committed and if so, the exact nature of the offense.

   4. Determining the identity of the suspect or suspects and effecting an arrest if it can be accomplished at the scene or through immediate pursuit.

   5. Furnishing other field units, through the communications system, a description, method, and direction of flight and other relevant information concerning wanted persons or vehicles.

General Order #18—January 3, 2000      1

EXHIBIT "1"

6. Obtaining complete identification of all witnesses.

7. Determining what information is known by the victim(s) and witness(es).

8. Arranging for the collection of evidence.

9. Determining in detail the exact circumstances of the offense.

10. Obtaining written statements from victim(s) and witness(es) and from the suspect if such statements can be obtained legally.

11. Accurately and completely recording all pertinent information on the prescribed report forms.

5. Field Interviews

    Any law enforcement officer may stop and question a person if the officer:

    1. Has reasonable suspicion that the subject may have committed or may be about to commit a crime; or

    2. Believes the subject may be a hazard; or

    3. Believes this may have a preventive effect; or

    4. There is a voluntary engagement between the officer & the citizen.

6. Fingerprints

    A. Latent prints

       Each ridge of the finger, palms and soles bears a row of sweat pores which, in the average person, constantly exude perspiration. The ridges of the fingers and palms are in intermediate contact with other parts of the body, such as the hair, face, and various objects which may leave a film of moisture on the ridges. In touching an object, the film of moisture and/or grease may be transferred to the object, thus leaving an outline of the ridges of the fingers or palm. This print is called a latent impression. The word latent means hidden indicating the print may not be visible.

    B. Visible Prints

       Visible prints are prints that are left in such mediums as blood, grease, dirt, or paint and are visible to the naked eye.

C. Crime Scene Fingerprint Responsibilities

Every felony crime scene investigated by an officer of the department will be processed for latent and/or visible fingerprints. Crime scenes such as burglary, grand larceny, auto thefts, robbery, aggravated assault, rape and murder shall be fully processed for latent and visible fingerprints.

The officer assigned to the preliminary investigation shall be directly responsible for processing the crime scene for latent or visible fingerprints. Unless the initial investigating officer is relieved of the crime scene by a superior officer or a member of the Investigations Division, it shall be the responsibility of the officer who takes charge of the scene to see that the scene is fully processed for fingerprints.

This general order does not preclude an investigating officer from taking fingerprints at any other crime scene deemed necessary by the officer. It is the direct responsibility of each reviewing supervisor to see that fingerprints are taken at every felony scene. The shift supervisor shall see that fingerprints are properly identified and deposited.

If fingerprints are not taken at the scene of a crime, as required above, the investigating officer shall prepare a separate narrative report giving the reason(s) that no fingerprints were taken. The reviewing supervisor shall then review the report with the investigating officer and discuss the reasons that fingerprints were not taken before signing the report.

7. Inspection and Training

Shift supervisors are responsible to ensure that each officer has a fully equipped fingerprint kit and supplies. It is also the responsibility of the shift supervisor to ensure that any officer who has not had formal training in fingerprint processing is either personally trained by the shift supervisor or an assigned field training officer.

8. Constitutional Rights During Crime Scene Investigations

Patrol officers and other sworn officers shall ensure that:

A. There is no coercion or involuntary confessions and admissions from suspects;

B. There shall be no failure to inform defendants of their rights when necessary and that there shall be no deprivation of counsel;

C. There shall be no pretrial publicity tending to prejudice a fair trail;

D. There will be no illegal search and seizure and there shall be no threat of delay in arraignment.

General Order #18—January 3, 2000

3

9. Preliminary Investigations

In most situations patrol officers shall conduct all preliminary investigations. Only when directed by the Director of Investigations or his designee shall preliminary investigations be handled by members of the Investigations Division. Since the patrol officer is the first law enforcement officer on the scene most of the time, preliminary investigations, properly documented by the patrol officer may satisfactorily complete the case. The patrol officer shall notify the immediate supervisor to request assistance from the Investigations Division and shall notify the supervisor of any incident requiring immediate follow-up.

Patrol Officers and other sworn officers shall ensure that the following are followed in conducting a preliminary investigation:

A. Maintaining the crime scene and protecting evidence

B. Locating and identifying witnesses

C. Observing all conditions, events and remarks

D. Documenting all conditions, events and remarks

E. Effecting the arrest of the criminal

F. Interviewing the suspect

G. Arranging for the collection of evidence

H. Reporting the incident fully and accurately to include a synopsis of the victim(s)/witness(es) account of the incident.

NOTE: The preliminary investigation may be sufficient to bring the case to a satisfactory conclusion, thus eliminating the need for a follow-up investigation. Should a follow-up investigation be authorized by the shift commander, it may be performed by the preliminary investigating officer or by an officer from the Investigations Division.

10. Follow-up Investigations

A follow-up investigation is an extension of the preliminary investigation. Its purpose is to provide additional investigation to close a case, arrest an offender and/or recover stolen property.

Follow-up investigation activities are used for:

1. Identification and apprehension of the offender

2. Collection, preservation, analysis and evaluation of evidence

3. Recovery of stolen property

4. Interviewing victim(s) and witness(es)
5. Interviewing suspects
6. Determining in detail the exact circumstances of an offense
7. Determining if other crimes may have been committed by the suspect
8. Preparation of the case for court presentation
9. Properly document all follow-up activities.

11. Field Interviews

    Field interviews may deprive actual and potential offenders of some of their initiative in selecting the time, place and circumstances for commission of crimes. Field interviews may be based on the time of day, location, crime rate, unexplained or suspicious circumstances and the like.

12. Collection and Preservation of Evidence

    The patrol officer, or other officer assigned patrol responsibility for processing the scene of an incident, shall include in the processing the following functions:

    1. Photographing and sketching the scene
    2. Protecting, collecting and preserving the evidence

13. Protection of Evidence

    The investigating officer shall use methods that shall ensure that evidence is not altered in the process of collection, that foreign materials are not added and shall ensure as complete a sample as possible and practical.

    For example: Liquid blood samples must be placed in proper containers and be delivered promptly to the laboratory or be placed in an agency refrigerator. Latent fingerprint areas must be protected to insure that other prints are not added.

14. Equipment in Vehicles for Evidence Collection

    Officers shall ensure they maintain equipment in their vehicles to enable them to perform the following tasks:

    1. Recovery of fingerprints
    2. Photography (If the officer does not have a camera and photographs need to be taken, the officer shall call for photographic assistance)

3. Sketch of scene

4. Collection and preservation of physical evidence

   Officers should be equipped to perform timely and effective evidence processing.

15. Report for Non-collection of Evidence or Not Taking Photographs

    When evidence is not collected or photographs are not taken for homicides, rapes, arson, robbery or major assaults, the officer shall submit a narrative report to his/her supervisor detailing reasons why the evidence was not collected or photographs were not taken.

16. Timely Submission of Evidence to the Crime Lab

    Any evidence collected at the scene should be turned in to the property office as soon as possible following completion of the collection process. The Mississippi Crime Lab Form IS-19 (10-74) shall be used to transmit the evidence to the Crime lab.

    The property officer is responsible for collecting all evidence that is deposited in the evidence lockers and documenting these items for storage or when necessary, transporting the evidence to the Crime Lab.

17. What should be Submitted to the Crime Lab

    Any evidence where scientific analysis will help to prove its contents, relationship with other items, etc., shall be submitted to the lab. It is most important that when possible, materials and substances from known sources be collected and be sent for comparison with those from unknown sources. This is particularly true in the case of the study of hairs, fibers, paint, glass, wood, soil and tool marks. The location of the known source provided is of the utmost importance.

    A. Sketches

       The following are some items to consider when making sketches of crime scenes: dimensions; geographical features of roads; addresses, floor or room numbers as appropriate; location of significant features of the scene to include the victim; date and time of preparation; names of the persons preparing the sketch; direction of north and location of items of physical evidence.

B. Photography

All aspects of the scene should be photographed by a trained photographer. In cases when precise measurements of objects are required, the photographer shall include an appropriate measurement device in the photograph as close to the object photographed as possible. Where a court might not allow a photograph, as described above, two shots should be taken, one with the measurement device in the picture and one without the measurement device. When pictures are taken that will ultimately become part of the evidence of the case, great care shall be taken to ensure that dimensions of objects can be determined.

18. Responsibility for Requesting Laboratory Examinations

The first officer on the scene is to take charge of investigation. This officer shall be in charge until the scene is officially transferred to a supervisor or a detective. One of the major items to ensure in this transfer is to identify which officer or detective will take the evidence to the property room for storage.

19. List of Evidence Items

For all items of evidence collected, the officer shall provide the following on each item:

1. Description of the item, including make, model, serial number, if any;

2. The source (from who or what location item(s) were obtained);

3. The name of person collecting the item(s) and;

4. The date / time collected.

20. The Written Report

An accurate record of events that transpire at the scene in conjunction with the investigation is required at time of the trial. The officer should include the following: date and time of arrival at the scene; location of the crime; name of the victim(s), if known; name of suspect(s), if known; actions taken at the scene, including the number of photographs taken, measurements taken (yes or no) and a listing of physical evidence recovered and Case File Reference Number. The narrative report shall be used to record these items of information.

21. **Training in Crime Scene Processing**

    Patrol Officers shall receive specialized training to ensure they know what to do and how to do it with regard to crime scene processing.

    Subjects to be covered are:

    1.  Potentialities and limitations of the examination of physical evidence;

    2.  Written directive(s) concerning the role and function of the investigator, the patrol officer and the crime scene specialists;

    3.  Collection methods and procedures regarding fingerprints, footprints, blood fibers and fabrics, weapons, hairs, paint, glass, tool marks and the requirements for the collection of materials from a known source for comparison purposes;

    4.  Preservation methods for various forms of evidence;

    5.  Maintaining the chain of evidence, marking, custody and records;

    6.  The crime or accident scene sketch;

    7.  Crime or accident photography;

    Crime or accident scene records - Particularly noteworthy work of officers shall be produced and be read at shift briefing to show good work that is well done and to familiarize other officers with how to do the work well.

# HARRISON COUNTY SHERIFF'S DEPARTMENT
## CRIMINAL INVESTIGATIONS DIVISION
Sheriff George H. Payne Jr.

☒ *INVESTIGATIVE REPORT*  ☐ *SUPPLEMENTAL REPORT*  ☐ *NARRATIVE*

*CASE NUMBER*: **2006-16701**
*OFFENSE*: **SEXUAL BATTERY**
*DATE REPORTED*: **09-01-2006**
*INVESTIGATOR*: **PRENDERGAST**

I. **SYNOPSIS:**

On September 5, 2006, The Harrison County Sheriff's Department arrested Jerone Dontae Johnson and Michael Tyrone Blackmon for sexual battery. This arrest was a result of a complaint made by Eugene Anthony Loisel III, who related that Johnson and Blackmon sexually assaulted him in C-Block of the Harrison County Adult Detention Facility. Johnson and Blackmon were placed into the Harrison County Adult Detention Facility under $100,000.00 bond set Judge Melvin Ray.

II. **VICTIM:** EUGENE ANTHONY LOISEL III, W/M
DOB: 05-10-1984
SSN: 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
2229 32ND STREET GULFPORT, MS.

III. **DEFENDANT:** JEROME DONTAE JOHNSON, B/M
DOB: 01-16-1976
SSN: 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
35 WOODVILLE AVENUE EAST YORK, CN.

MICHAEL TYRONE BLACKMON, B/M
DOB: 02-24-1979
SSN: 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
538 REDNECK STREET BILOXI, MS.


EXHIBIT "2"

1

# HARRISON COUNTY SHERIFF'S DEPARTMENT
## CRIMINAL INVESTIGATIONS DIVISION
Sheriff George H. Payne Jr.

IV. **WITNESS:**  DONALD RICHARDSON, W/M
DOB: 08-09-1960
SSN: 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
1845 TWIN PINE DRIVE PEARL MS.

FREDRICK SULLIVAN, W/M
DOB: 09-29-1979
SSN: 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
318 KIMBERLY DRIVE GULFPORT, MS.

NURSE GAY HARTLEY, HEALTH ASSURANCE, LLC

STEPHAINE PARKS, MEMORIAL HOSPITAL AT GULFPORT
DR. CARL MORAN, MEMORIAL HOSPITAL AT GULFPORT
JENNIFER CLARKE, MEMORIAL HOSPITAL AT GULFPORT

DEPUTY NATHAN ELLSBERRY, HCSD
DEPUTY EARL LEONARD, HCSD
DEPUTY KENNY ROGERS, HCSD
DEPUTY JACENT GREGORY, HCSD
DEPUTY TOM JOHNSON, HCSD
DEPUTY MARIE STEVENSON, HCSD
DEPUTY ROBERT MILLER, HCSD
INV. KEVIN FAYARD, HCSD
INV. CAROLYN PRENDERGAST, HCSD

V. **NARRATIVE:**

On August 31, 2006, Inmate Loisel filled out an Inmate request form stating that "I was raped last night. I need medical attn". This form was given to Nurse Gay Hartley at the evening medical call at approximately 9:10pm, Nurse Hartley called corrections to have Loisel brought to Medical.

On September 1, 2006, Loisel was examined by Nurse Hartley in Medical. Nurse Hartley noted that there appeared to be some injury to the rectum, no visible blood noted, with slight bruising around the rectum. Nurse Hartley requested that inmate Loisel be placed into medical for observation.

# HARRISON COUNTY SHERIFF'S DEPARTMENT
## CRIMINAL INVESTIGATIONS DIVISION
### Sheriff George H. Payne Jr.

On September 1, 2006, at approximately 3:15am, Inmate Eugene Loisel advised Sergeant Nathan Ellsberry and Sergeant Earl Leonard that he was sexually assaulted in C-Block, D- Section. Inmate Loisel reported that two black males from the top tier came into his cell and jumped on him. Inmate Loisel reported that one black male held him down while the other black male raped him. Loisel identified the two black males as Michael Blackmon who held him down and Jerone Johnson who sexually assaulted him.

On September 1, 2006, Inmate Loisel was transported to Memorial Hospital at Gulfport where a victim's sexual assault kit was performed on Loisel by Dr. Carl Moran with the assistance of Nurse Stephaine Parks. Dr. Moran noted that he found dried secretions on Loisel's buttock folds. Deputy Tom Johnston took possession of the victim's sexual assault kit from Nurse Stephaine Parks. Inv. Prendegast took possession of the victim's sexual assault kit from Deputy Johnston and placed it into the CID evidence refrigerator.

On September 1, 2006, at approximately 3:42pm, Inv. Prendergast conducted an audio recorded interview with Eugene Loisel III at the Harrison County CID interview room. Loisel related that he is currently incarcerated on a probation violation. Loisel related that his original charge was robbery. Loisel related that he has been in the Harrison County Adult Detention Center Facility since August 24, 2006. Loisel related that on August 31, 2006, at approximately 2-5am, he woke up to use the bathroom. Loisel related that when he went to lay back down, two black male inmates entered his cell. Loisel related that one inmate held him while the other sexually assaulted him. Loisel described the inmate that penetrated him as a black male, tall with tattoos on each arm. Loisel related that one arm had something like "Gautier" tattooed on it and the other had "soldier" tattooed on it. Loisel related that he felt a sharp object against his throat but could not describe it. Loisel related that the inmate that held him had him up against the wall in a standing position. Loisel related

that they told him if he does anything they were going to cut him. Loisel related that he could not advise whether the inmate ejaculated or not. Loisel related that after they were finished they threw him on his bunk and he just laid there. Loisel related that he filled out the inmate request and gave it to the nurse at medicine call that night. Loisel related that he had not taken a bath or had a bowel movement during this time period. Loisel related that he was shown several pictures of inmates by the correctional officer in which he identified Jerome Johnson as the inmate that penetrated him. Loisel identified Michael Blackmon as the inmate that held him.

On September 1, 2006, at approximately 10:00am, Sergeant Rogers assisted in a shake down of inmate Johnson and Blackmon cell's (231 and 228) Sgt. Rogers discovered a blade that was removed from a county issued razor lying on the top bunk of Johnson's cell. Officer Gregory found the handle part of a county issued razor with the blade removed in Blackmon's cell. Both items were placed into the evidence vault.

On September 2, 2006, at approximately 10:46am, Inv. Prendergast conducted an audio recorded interview with Donald Richardson (Loisel's room mate) at the Harrison County Sheriff's Department CID interview room. Richardson related that he is deaf in his right ear. Richardson related that he does not wish to get involved in anything. Richardson related that he wants to finish his time and go home.

On September 5, 2006, at approximately 10:22am, Inv. Prendergast presented Loisel with a photographic line up of six black males. Loisel positively identified Blackmon as the inmate that held him.

On September 5, 2006, at approximately 10:24am, Inv. Prendergast presented Loisel with a second photographic line up of six black males. Loisel positively identified Johnson as the inmate the penetrated him.

On September 5, 2006, Inv. Prendergast prepared a criminal affidavit against Blackmon and Johnson for sexual battery. Inv. Prendergast also prepared affidavits

4

# HARRISON COUNTY SHERIFF'S DEPARTMENT
## CRIMINAL INVESTIGATIONS DIVISION
### Sheriff George H. Payne Jr.

and underlying facts for a search warrant for Johnson and Blackmon's body. Inv. Prendergast presented the aforementioned underlying facts and affidavits to the Honorable Judge Melvin Ray. After review and consideration, Judge Ray issued warrants for Blackmon and Johnson for the charge of sexual battery. Judge Ray also issued search warrants for Blackmon and Johnson's person.

On September 5, 2006, at approximately 1:48pm, Inv. Prendergast conducted an audio recorded interview with Jerome Johnson at the Harrison County CID interview room. Inv. Prendergast advised Johnson of his Miranda Warning. Johnson related that on August 31, 2006, he was in his cell all night. Johnson related that he is currently in "lock down" due to the correctional officer finding a razor and pen in his cell. Johnson denied the allegations against him.

On September 5, 2006, at approximately 2:09pm, Inv. Prendergast conducted an audio recorded interview with Michael Tyrone Blackmon at the Harrison County Sheriff's Department CID interview room. Inv. Prendergast advised Mr. Blackmon of his Miranda Warning. Blackmon invoked his rights.

On September 5, 2006, Deputy Marie Stevenson and Deputy Robert Miller transported J. Johnson and M. Blackmon to Memorial Hospital at Gulfport. Inv. Prendergast met them at the hospital to execute the search warrant on their bodies. Nurse Jennifer Clarke was asked to conduct the suspect sexual assault kits on both Blackmon and Johnson's person. Deputy Stevenson and Deputy Miller witnessed this execution of the search warrants by Nurse Clarke. Nurse Clarke turned both suspect sexual assault kits over to Inv. Prendergast. Inv. Prendergast transported the kits to the Harrison County Sheriff's Department where they were placed in the CID evidence refrigerator.

On September 7, 2006, Inv. Prendergast requested permission to send the victim's sexual assault kits and the suspect's sexual assault kits to Reliagene Technologies for testing.

# HARRISON COUNTY SHERIFF'S DEPARTMENT
CRIMINAL INVESTIGATIONS DIVISION
Sheriff George H. Payne Jr.

On September 7, 2006, Inv. Prendergast photographed Jerone Johnson's tattoos in the Harrison County Adult Detention Booking area. Inv. Prendergast observed the tattoo on the back of Johnson's left arm to depict "GUTTER". Inv. Prendergast observed the tattoo on the back of Johnson's right arm to depict "SOLDIER". These tattoos were photographed and placed into the investigative case file.

On October 11, 2006, at approximately 1:25pm, Inv. Prendergast was contacted by Staten Fountain who stated that he was representing Michael Blackmon. Fountain requested that Inv. Prendergast conduct an interview with inmate Fredrick Sullivan. Fountain related that Sullivan had some information about this investigation.

On October 13, 2006, at approximately 10:56am, Inv. Prendergast and Inv. Fayard conducted an audio recorded interview with Fredrick Sullivan at the Harrison County Sheriff's Department CID interview room. Sullivan related that he is currently incarcerated for the charge of murder. Sullivan stated that he was returned to Harrison County from MDOC on August 24, 2006. Sullivan related that this is when he met Loisel in the booking holding cell. Sullivan related that Loisel came to lock down recently. Sullivan related that he was "picking" with Losiel and stated "Hey man, you went around and let somebody take you?" Sullivan stated that Loisel told him that he owed a lot of cigarette and told the sergeant that he feared for his life. Sullivan related that Loisel stated that the sergeant alleged that he (Loisel) been raped to get him moved out of the block. Sullivan related that "I was ragging him (Loisel) hard". Sullivan related that he would not tell anyone if he was ever "tampered" with. Sullivan related that he does not know whether Loisel denied the raped occurred because he did not want the other inmates to know or not.

On October 27, 2006, Inv. Prendergast conducted a second interview with Eugene Loisel III at the Harrison County Sheriff's Department CID interview room.

6

# HARRISON COUNTY SHERIFF'S DEPARTMENT
## CRIMINAL INVESTIGATIONS DIVISION
Sheriff George H. Payne Jr.

Due to technical difficulty, there is no audio recording of this interview. Loisel related that he denied the rape occurred when speaking with Sullivan because the inmates were giving him a hard time. Loisel related that he did not want any of the other inmates to know about the rape. Loisel related every thing he disclosed to law enforcement about the rape was the truth.

On December 7, 2006, Inv. Prendergast submitted an evidence submission request for the Mississippi Crime Lab to compare the sexual assault kits for DNA evidence.

This investigative case file will be forwarded to the District Attorney's Office for Grand Jury review.