# IN THE UNITED STATES DISTRICT COURT
## OF THE SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DIVISION

JEROME D. JOHNSON                                  **PLAINTIFF**

V.                        **CIVIL ACTION NO. 1:07cv539LG-JMR**

DONALD A. CABANA, et al.                  **DEFENDANTS**

STATE OF MISSISSIPPI

COUNTY OF HARRISON

## <u>AFFIDAVIT OF SHERIFF GEORGE PAYNE, JR.</u>

PERSONALLY CAME AND APPEARED BEFORE ME the undersigned authority in and for the County and State aforesaid, the within named, George Payne, Jr., who, after first being duly sworn by me on his oath, did depose and state the following:

1.      My name is George Payne, Jr. I am over the age of twenty-one (21) years. I have personal knowledge of the matters and facts contained in this Affidavit and I am competent to testify to the matters stated herein I was at all times relevant to the Complaint in this Civil Action the duly elected Sheriff of Harrison County and the final policy making official for the Harrison County Sheriff's Office ("HCSO") and the Harrison County Adult Detention Center ("HCADC").

2.      I had no communication, correspondence, personal interaction or contact with the Plaintiff in this case, Jerome D. Johnson, at any time during the period of his incarceration at HCADC. Nor did I , or my secretary, ever

Page 1 of 5



EXHIBIT

"S"

receive a letter or grievance of any kind, from Plaintiff.

3.     I was not present during any of the alleged events in the Plaintiff's Complaint(s), and the filing of this lawsuit was the first notice and/or knowledge I had of any of Plaintiff's Complaints.

4.     I had no involvement in, or knowledge whatsoever of any events or incidents the Plaintiff complains of; including the sexual assault charge in September 2006, and/or the alleged incident on August 29, 2007. Prior to these incidents, I did not have knowledge, nor was I notified of any complaints from Plaintiff.

5.     At all relevant times it was the policy of HCADC to provide a safe and secure environment not only for inmates, but also for all officers and other employees of HCADC, and further to protect the general public by preventing any escapes from HCADC.

6.     Due to the nature and size of the Sheriff's Department and HCADC, I could not personally supervise all employees at one time; however, there were in place adequate policies and procedures to ensure all officers were supervised and acted in a lawful and professional manner and in compliance with the department's policies and procedures, general orders, and the laws of Mississippi. At all relevant times, a sufficient chain of command existed at the HCADC which enabled all officers to be adequately supervised. See Relevant Policies and Procedures collectively attached hereto as **Exhibit "1"**, including Facility Goals, Purpose, and Mission, Code of Ethics, Chain of Command, Discipline Procedure, Inmate Housing & Observation, Training for Correctional Officers, and Inmate Handbook.

7.    It was the policy of the HCADC to thoroughly investigate all allegations and complaints of misconduct and to take the appropriate disciplinary action if such allegations were ever sustained. At all relevant times, the Harrison County Sheriff's Department had a "Professional Standards Unit" policy in place and in full effect. See General Order No. 65, which is attached hereto as **Exhibit "2".** The Professional Standards Unit was responsible for conducting internal administrative investigation and applicant background development.

8.    It was the policy of the Sheriff's Department and the HCADC to investigate all criminal matters, including those that arise at the HCADC. At all relevant times the HCSD had a "Criminal Investigations Divisions" policy in place and in full effect. See General Order No. 18, which is attached hereto as **Exhibit "3".** Criminal Investigations Division was solely responsible for investigating the sexual assault claims that were made against Plaintiff.

9.    I have first hand knowledge of the hiring guidelines for the Harrison County Sheriff's Office that were in place at all relevant times. The Mississippi Code Annotated 45-4-1 et-seq. provides that the Board on Jail Officers Standards and Training should fix a minimum qualifications for the employment of jail officers in the State of Mississippi. The Harrison County Sheriff's Office followed these guidelines in hiring correctional officers for the Harrison County Adult Detention Center. Furthermore, all applicants are subject to a background investigation and a pre-employment medical examination to determine whether an employee has the physical and mental qualifications necessary to perform his or her job. Additionally, all employees are required

to successfully pass a urinalysis test upon being offered employment.

10. At all relevant times, it was also the policy of HCADC to provide appropriate training for all employees, including correctional officers as required by the laws of Mississippi. See 45-4-1, et seq. At all relevant times, it was HCADC's policy to send newly hired correctional officers to complete an initial forty (40) hour training program by state certified officers prior to assuming duties in the jail. Upon completion of this initial forty (40) hour program, correctional officers were to receive on the job training under the supervision of a field training officer, and an additional eighty (80) hours of instructional training, followed by refresher training provided throughout the course of the officer's employment. See HCADC policy regarding officer training, this specifically included training in handling inmate grievances and requests attached hereto as **Exhibit "4"**. All of the named Defendants herein were trained according to these policies and procedures; including but not limited to Investigations procedures, and receiving and responding to inmate requests and grievances.

11. At all times, the HCADC, had in place adequate hiring, training and supervisory procedures for its deputies.

12. At no time was I ever deliberately indifferent to any detainee's rights, including the Plaintiff's.

13. Lastly, this case is an unusual occurrence, in that I have never known of a case where an inmate was criminally charged, and then take over a year for the District Attorney to prosecute the matter.

14. All policies attached hereto represent polices and procedures which were in

place and effect at the time of the subject incident.

Further, Affiant sayeth not.

_____
George Payne, Jr.

Sworn to and subscribed before me on this the _4th_ day of ~~July,~~ *august* 2008.

_____
Notary Public

My Commission Expires:
_____1/28/09_____

(SEAL)

## FACILITY GOALS, PURPOSE AND MISSION

**DEFINTIONS**

Facility Administrator refers to the Director of Corrections who is responsible for all Correctional facilities located in Harrison County.

**POLICY:**   The Harrison County Adult Detention Center is established in accordance with Harrison County Sheriff's Department Policies with the goals of:

> A. Ensuring public safety through the provision of professionally managed correctional services of confined offenders detained at the Harrison County Adult Detention Center.
>
> B. Providing a level and quality of programs at least equal to those provided by state-operated facilities that house similar types of inmates.

**MISSION STATEMENTS**

It is the mission of the Corrections Division to provide, in a cost effective manner, the highest degree of facility security and safety for the staff and inmates. The philosophy of Corrections if predicated upon three assumptions:

> 1.   Incarceration is, in and of itself, punishment;
> 2.   All inmates shall be held accountable for their actions;
> 3.   Inmates shall not leave the facility any worse physically, emotionally, or psychologically than when they entered.

A positive atmosphere shall be created for both the inmates and staff through the provision of:

> 1.   A safe and secure environment;
> 2.   Adequately trained Correctional personnel;
> 3.   A variety of programs which provide inmates an opportunity to prepare themselves for eventual reintegration into their communities;
> 4.   Positive incentives for inmates through a classification system.

The staff and management of the HARRISON COUNTY SHERIFF'S DEPARTMENT, Corrections Division are committed to the preservation of the basic human rights and dignity of the inmate population. Our responsibilities are simply CUSTODY, CARE AND CONTROL of the inmate population detained in Harrison County.

**EXHIBIT**

"1"

**PROCEDURE:**

## I. INSTITUTIONAL GOALS AND MEASURABLE OBJECTIVES

Harrison County Adult Detention Center Administrator shall, on an annual basis, establish goals and measurable objectives to successfully implement the Policy and Mission Statement of this Memorandum. These objectives shall be reviewed on at least an annual basis by the Harrison County Adult Detention Center Administrator or designee and re-formulated as deemed necessary. The initial goals shall include:

A. To seek and obtain ACA accreditation from the American Correctional Association.

B. Perform quarterly and unannounced audits to gauge the overall performance of the Harrison County Adult Detention Center departments. Audits shall include a review of policy and procedures to ensure practicability and soundness of operational procedures and to ensure compliance with procedural and mission requirements.

C. Perform daily accountability checks of security features to determine the operating status of the Harrison County Adult Detention Center and correct noted deficiencies in a timely manner.

D. Conduct staffing evaluations to determine the status of staffing deployment relative to functions and the need for increase or re-allotment of staff resources to correct noted deficiencies.

E. Develop and improve Management Information System to eliminate unnecessary expenditure of staff time and resources. Update information systems database to meet the overall needs of the institution and the operational needs of individual departments. The effectiveness of the information system as it relates to the overall institutional management will be evaluated in writing at least annually.

F. Substance Abuse Treatment is an important part of inmate programming; therefore, the goal shall be to encourage maximum participation by the inmate population.

G. Meet or exceed all standards defined by ACA contractual agreements.

_Riley_
Facility Administrator

01 / 15 / 01
Effective Date

## CODE OF ETHICS

**POLICY:**   It is the policy of the Harrison County Adult Detention Center that all employees conduct themselves in a manner that creates and maintains respect for themselves as well as the Harrison County Adult Detention Center. In all their activities, personal and official, they should always be mindful of the high standards of behavior expected of them. Therefore, employees shall avoid any action(s) which might result in, or create the appearance of, affecting adversely the confidence of the public in the integrity of the Harrison County Adult Detention Center. It is expected that employees will discuss with their supervisors and/or superiors any problems arising in connection with matters within the scope of this policy.

## PROCEDURE:

### I.   GENERAL INFORMATION

The Harrison County Sheriff's Department expects of its employees integrity and honesty, respect for the dignity and individuality of human beings and a commitment to professional and compassionate service. To this end, we will be guided by the following code of ethics:

1.   Employees shall respect and protect the civil and legal rights of all individuals.

2.   Employees shall treat every professional situation with concern for the welfare of the individuals involved and with no intent of personal gain.

3.   Employees shall maintain relationships with colleagues to promote mutual respect within the facility and improve the quality of service.

4.   Employees shall make no public criticism of their colleagues or their facility.

5.   Employees shall respect the importance of all disciplines within the criminal justice system and work to improve cooperation with each segment.

6. Employees shall honor the public's right to information and share information with the public to the extent permitted by law subject to individuals' right to privacy.

7. Employees shall respect and protect the right of the public to be safeguarded from criminal activity.

8. Employees shall refrain from using their positions to secure personal privileges or advantages.

9. Employees shall refrain from allowing personal interests to impair objectivity in the performance of duty while acting in an official capacity.

10. Employees shall refrain from entering into any formal or informal activity or agreement which presents a conflict of interest or is inconsistent with the conscientious performance of duties.

11. Employees shall refrain from accepting any gifts, service or favor that is or appears to be improper or implies an obligation inconsistent with the free and objective exercise of professional duties.

12. Employees shall clearly differentiate between personal views/statements and views/statements/positions made on behalf of the facility or Sheriff's Department.

13. Employees shall report to appropriate authorities any corrupt or unethical behaviors in which there is sufficient evidence to justify review.

14. Employees shall refrain from discriminating against any individual because of race, gender, creed, national origin, religious affiliation, age, disability or any other type of prohibited discrimination.

15. Employees shall preserve the integrity of private information; they shall refrain from seeking information on individuals beyond that which is necessary to implement responsibilities and perform their duties; employees shall refrain from revealing non-public information unless expressly authorized to do so.

16. Administrators shall make all appointments, promotions and dismissals in accordance with established county policy, applicable contract agreements and individual merit rather than furtherance of personal interests.

_Riley_  
Facility Administrator

_01/15/01_  
Effective Date

# CHAIN OF COMMAND

**POLICY:**   It is the policy of the Harrison County Juvenile Detention Center that authority and responsibility shall be designated in a manner, which will facilitate the orderly operation of the facility.

**PROCEDURE:**

## I.   GENERAL INFORMATION

The Director of Corrections has the overall responsibility for the operation of all detention facilities and the supervision of all detention staff and shall report directly to the Sheriff of Harrison County.

All other Juvenile corrections staff personnel report directly to the Shift Sergeant or Facility Lieutenant which ever is appropriate, and work under their direct supervision.

In the event of the absence of the Sheriff, and Director of Corrections, and Facility Lieutenant a designee will be appointed to assume command of the Juvenile Detention Facility.

The following chain of command has been established to facilitate accountability in this decision:

**Sheriff**

**Major**

**Captain**

**Lieutenant**

**Sergeant**

**Field Training Officer**

**Correctional Officer**

**Correctional Officer Trainee**

## II.   ISSUANCE OF ORDERS

"Lawful Order" shall be construed to mean any order, issued by the Sheriff or any ranking officer, for the preservation of good order, efficiency and discipline within the department; or relating to the performance of any duty, provided, such orders are not in violation of any law or officially established departmental policy, procedure, rule or regulation.

Such order may be issued in verbal or written form, and may be over the signature or under the authority of the Sheriff or a ranking officer.

Any order issued shall be in clear, understandable language, civil in tone, and issued in pursuit of departmental business. All lawful orders shall be obeyed promptly, including orders relayed by a supervisor through a person of the same or lesser rank. No supervisory employee will knowingly issue an order which is contrary to any law or procedure. However, the responsibility for justification of the refusal to obey an order, rests with the employee.

Supervisors are responsible for avoiding the issuance of conflicting orders. Orders conflicting with written directives and procedures may be issued only by a Lieutenant or higher in authority, and **must be issued in writing**. In an emergency situation requiring immediate action, a supervisor may issue an order conflicting with an order previously issued. However, the supervisor doing so must justify his/her action.

Upon receipt of a conflicting order, the employee affected will inform the person issuing the conflicting order that a conflict exists. The employee will then obey the last lawful order received. If the employee feels that the order was unjust, unlawful, or improper, he/she will submit a written report to the Director of Corrections.


_Riley_                                      _01/01/01_
Director of Corrections                      Effective Date

# DISCIPLINE PROCEDURE

**POLICY:**   It is the policy of the Harrison County Adult Detention Center to have in place a system of inmate discipline that serves to protect the public, inmates and staff, and maintain order in the facility, through the impartial application of a fully developed set of rules and regulations and a hearing procedure that incorporates all applicable due process requirements.

**PROCEDURE:**

## I.   GENERAL INFORMATION

All inmates housed at Harrison County Adult Detention Center are required to obey the rules and regulations of the facility as outlined in the Inmate Handbook.

A copy of the Inmate Handbook will be made available to every inmate within the facility.

If an inmate violates one of the facility rules, he/she is subject to disciplinary action.

Inmates may not be punished except for conduct which violates an existing jail rule or regulation.

The accusing officer or supervisor will submit to the inmate a written notification of the major or minor rule violation he/she is charged with along with a statement including facts supporting the alleged violation at least 24 hours in advance of the hearing.

All minor violations will be handled by a Shift Supervisor.

All major violations will be handled by a hearing disciplinary officer who may offer a plea prior to a disciplinary hearing.

An investigation will be conducted into each formally reported incident.

The Shift Supervisor or Discipline Officer will be responsible for interviewing all parties involved.

If a plea is accepted, the inmate will sign a plea agreement and sanctions will begin. However, if a plea is refused a formal disciplinary hearing will be held as soon as possible after the plea sheet is signed refusing the pleas offer.

All inmates will be allowed to attend their disciplinary hearing, unless prior behavior poses a threat to the staff or facility security. In which case a written statement from the inmate will suffice. An inmate may waive his/her right to a disciplinary hearing.

A maximum of three witnesses will be allowed for the inmate's defense.

The inmate has the right to appeal to the Captain of Security within five calendar days after the Disciplinary decision.

## II.  MINOR INFRACTIONS

Minor infractions, which do not have a serious inmate and institutional management implications, may be resolved through an informal process that includes providing the inmate with a written statement of the violation and a decision by a disciplinary or shift supervisor within 7 working days.

## III.  MAJOR INFRACTIONS

A major infraction is any rule violation which, in the judgment of the investigating staff member, has serious inmate and institutional management implications. Major infractions will be handled through the formal disciplinary process and/or criminally prosecuted. An inmate may be placed on disciplinary lockdown for a major infraction.

## IV.  PRE-HEARING DETENTION

Inmate may be placed in pre-hearing detention as the result of an alleged rule infraction. In order for an inmate to be placed in pre-hearing detention, his/her presence in the general population would create a threat to the physical safety of other inmates and staff or to preserve the integrity of an investigation. A supervisor must approve movement to pre-hearing detention and the inmate must be reviewed by the Disciplinary Officer within 72 hours.

## V.  REPORTING INFRACTIONS

The observing officer will submit a Narrative to the Shift Supervisor from the officer who observed the major infraction. The Narrative must contain the following details:

1.  Specific rule violation
2.  Date, time of offense

3. location of offense
4. inmate(s) involved
5. adequate details of violation to substantiate charge
6. A description of immediate action taken
7. a formal statement of charge
8. any unusual behavior
9. Names of witnesses (employees & inmates)

## VI. INVESTIGATION

The Shift Supervisor or Disciplinary Officer will be responsible for conducting an investigation within 24 hours of the time the violation was reported. An investigation may be delayed due to facility emergencies or other exceptional circumstances.

The Shift Supervisor or Disciplinary Officer will determine if the inmate will remain in general population pending the investigation. In the event an inmate is placed in pre-hearing detention status, the supervisor will submit a Narrative to the Disciplinary Officer, Security Captain, Chief of Security and Director of Corrections within 72 hours.

## VII. EVIDENCE

If one or more of the violations involves possession of contraband, the items of contraband must be produced at the hearing if the existence or nature of the items cannot be satisfactorily established by other means.

Perishable items that pose a threat to health and safety, may be disposed of prior to the hearing. Any contraband items that are excluded from the hearing must be photographed or copied, an this evidence must be produced at the hearing, if item is required for hearing.

## VIII. SANCTIONS

The Disciplinary Officer may impose the following dispositions or a combination thereof:

1. Dismissal of any or all charges and clearing of the record
2. Reprimand
3. Placement in disciplinary detention
4. Restriction of privileges
5. Suspension of execution of any sanction imposed

## IX. TIME FRAMES

All disciplinary hearings and decisions should be completed within seven (7) days after the alleged violation occurred excluding holidays and weekends.

## X. DOCUMENTATION

The Disciplinary Officer will submit a monthly report of disciplinary actions to the Security Captain for inclusion in the Security Statistics Report.

## XI. DISCIPLINARY VIOLATIONS & PUNISHMENT

### Category I Offense ( Major)

A. Assault or attempted assault (i.e., sexual, physical, etc) on inmate or Officer.

B. Setting fire in cell.

C. Possession / use of a weapon.

D. Participating in any group demonstration that disrupts the ordinary routine of the facility (i.e., riot.)

E. Participating in any sexual behavior or activity with a person, male or female.

F. Verbally threatening any person with death, violent injury or sexual assault.

G. Rape (same or opposite sex.)

H. Fighting.

I. Possession of drug paraphernalia, illegal drugs, or prescriptions.

J. Theft, (i.e., personal items, canteen, facility equipment.)

K. Tampering with security devices (i.e., fire sensors, locking devices, etc.)

L. Attempting or aiding in an escape (i.e., interfering with proper locking of cell doors, digging mortar from around bricks.)

M. Purposely causing toilets to malfunction.

**Punishment:**

Lockdown up to 60 days, loss of up to 60 days visitation, telephone and canteen privileges.

Any inmate who assaults Officer or staff member will be prosecuted for assault of a law enforcement officer.

## Category II (Major)

A. Bribery

B. Destruction of county property.

C. Extortion or intimidation of fellow inmates or Officer.

D. Possession of intoxicant.

E. Interfering with staff (i.e., failure to cooperate with shakedown, searches, counts, etc.)

F. Violation of at least two separate Category III offenses while on 12 hour lock down.

G. Indecent exposure.

H. Sale/possession of contraband (i.e., cigarettes, tobacco, unauthorized facility property, etc.)

I. Destruction of another person's property.

J. Smoking in the facility.

K. Being found in someone else room during headcount or after lockdown .

**Punishment:**

Lockdown up to 30 days, loss of up to 30 days visitation, telephone and canteen privileges.

If any inmate defaces or damages county property, he or she will be required to pay regardless of the amount.

## Category III (minor)

A. Exchanging, trading bartering, giving receiving or other participation in the transfer of money, personal property or any other items of value from one inmate to another.

B. Noisy, loud and profane language, gambling, gaming.

C. Loud noise from metal doors, kicking or beating on doors, windows, etc.

D.  Attempting to communicate with individuals outside on the facility grounds (i.e., beating on windows, calling individuals to the fence, etc.)

E.  Being outside cell not fully clothed, (i.e., including cut off T-shirts, uniforms, etc.)

F.  Answering to the name of another inmate.

G.  Being in an unauthorized area.

H.  Disorderly conduct.

I.  Disrespect.

J.  Having paper, trash bags or pictures over windows, walls, vents, lights, and writing on walls.

K.  Failure to maintain a neat and sanitary housing area, cell, etc.

L.  Failure to maintain personal hygiene.

M.  Being out of cell without bed made.

N.  Talking through cell doors with inmates on lockdown.

O.  Not wearing I.D. Bracelet.

P.  Improper use of tables or chairs. (i.e., sitting or lying on)

Q.  Hanging items from electrical devices, sprinkler heads, doorknobs, door hinges, cell doors, bunks, etc.

**Punishment:**

Lockdown for remainder of the shift, up to 15 days loss of canteen and visitation privileges.

All disciplinary actions will be written up on all offenses no matter how small or minor.

## XII.  HEARING PROCESS

An inmate requesting a disciplinary hearing concerning alleged violations will follow the procedure below:

1.  Inmate charged with rule violation shall be present at the hearing unless

behavior justifies exclusions. Hearing may be conducted in inmate's absence.

2. The Hearing Officer(s) will review all the evidence and decide whether there is a preponderance of evidence to indicate guilt or innocence. Decisions will be based solely on the information obtained (i.e., narratives, statements form inmate and witnesses)

3. The inmate and any witnesses will leave the room prior to a decision being rendered.

4. After a finding of guilt the penalty will be imposed based on category of violation chart. The disciplinary officer will assure the inmate is relocated to the proper housing section.

5. Inmate's found not guilty will be returned to assigned classification custody level with the final disposition logged on all paperwork and the computer.

NOTE: When a violation is felonious in nature, all paperwork concerning the incident will be forwarded to the Security Captain. The Captain will assure Investigations is provided with all paperwork for possible prosecution. The Security Captain or above may have an inmate placed in Administrative Segregation for the remainder of his stay depending on the severity of the violation.

## XIII. APPEALS

An inmate punished under the authority set forth by a disciplinary officer who considers his/her punishment unjust or inappropriate may appeal to the Facility Administrator or designee.

The appeal must be in writing and include the reason for regarding the decision of punishment as unjust.

The Facility Administrator or designee may suspend or set aside the whole or part of the punishment imposed. The inmate will receive a response within 14 days of the appeal.

_Riley_
Facility Administrator

_01/01/01_
Effective Date

# INMATE HOUSING & OBSERVATION

**POLICY:** Corrections Officers assigned to any area where inmate are housed must maintain regular observation of the inmates and their activities to ensure the safety and security of the facility, staff and inmates.

**PROCEDURE:**

## I. GENERAL INFORMATION

A. Close supervision must be maintained on maximum security and maximum risk inmates. These inmates are the most violent and may cause harm to themselves and others, and are the greatest escape risk. Efforts will be made to house maximum security inmates in one-bunk cells. Such inmates shall be visibly checked every 30 minutes. Maximum security inmates will never be housed in the same cell with minimum security inmates.

B. Minimum security inmates and inmate workers will normally be housed in two-bunk cells.

C. All efforts will be made to keep pretrial detainees and convicted felons separated.

D. Nondiscriminatory Housing: The cell used to house the inmate shall be assigned without regard to race, religion, color, creed, national origin, or political belief.

E. Male and female inmates will never be placed in the same cell nor section together.

F. Homosexual Housing: Known homosexuals shall be housed in a location that causes the least amount of facility disorder.

G. Mental Health/Illness: Arrestees/Inmates suffering from mental illness, or other types of illnesses shall be housed in an area exclusive of other inmates.

H. Alcohol and Drug Related Arrestees: Those arrestees detained for alcohol and/or drug related offenses will be placed in an area for observation of withdrawal signs. Medical Staff must be advised immediately if an inmate is experiencing health problems.

I. Violent Arrestees/Inmates: Any inmate whose past or present charges, or behavior indicate that he/she is likely to act in a violent manner shall be separately housed from other inmates, and shall be classified as a maximum security inmate.

J. Offenses: Those arrestees charged with misdemeanors shall be separate from those charged with felonies, within the limits of in the jail system.

K. Corrections Officers assigned to inmate housing areas will make regular observation rounds checking on each inmate at least once every two hours in general housing area where and when inmates are free to access the entire day room.

L. Corrections Officers assigned to inmate housing areas will make regular observation rounds checking on each inmate at last once each hour in general housing areas where and when inmates are confined to their individual rooms or restricted bunks.

M. Corrections Officers will make regular observation rounds checking on each inmate at least once every 15 minutes in Suicide Watch.

N. Every time any observation round is conducted, the Corrections Officer must visually check each inmate to ensure the inmate's presence and his or her well being.

O. Every time any observation round is conducted, the Corrections Officer must assure it is documented in the Tower Control Log.

II. **CELL ASSIGNMENT BASED ON CLASSIFICATION**

Cell assignment shall be based on the inmate's classification. Whether inmates are single-bunked, double bunked, will depend on their classification and availability of beds. (SEE CLASSIFICATION POLICY)


_____         01/01/01
Facility Administrator          Effective Date

# Training for Correctional Officers

### 80 Hour Correctional Academy
Must be conducted within 2 years of hire
(State of Mississippi Requirement)

### 40 Hour Pre-Service
Must be conducted prior to post assignment

### In-Service Training

Ethics & Human Relations
Cultural Diversity
OC Spray Certification/Re-Certification
Verbal Judo
1st Line Supervisor's Training
CPR Refresher
Report Writing Refresher

## TRAINING PLANS

**POLICY:** The Harrison County Adult Detention Center will establish and maintain a training program and training coordinator to facilitate appropriate training levels for all employees of the Harrison County Adult Detention Center. This program will incorporate both basic recruit and in-service training for employees.

**PROCEDURE:**

## I. GENERAL INFORMATION

A. The Harrison County Adult Detention Center Officer Training Programs and trainer qualifications are governed by the Minimum Standards Board on Jail Officers Standards and Training, the Harrison County Sheriff's Department and ACA standards. The training plan will be reviewed annually.

B. All Training Coordinators will meet or exceed Harrison County Sheriff's Department requirements.

C. Training curriculum will meet or exceed Minimum Standards requirements.

D. An Advisory Committee will be established which will meet quarterly to review the Unit Training Program. The committee will be chaired by the Services Captain and will consist of representatives from various departments. Written reports from these meetings will be forwarded to the Harrison County Adult Detention Center Administrator.

E. The Training Advisory Committee will conduct an ongoing formal evaluation and assess the pre-service, in-service and specialized training programs and will submit a written report to the Harrison County Adult Detention Center Administrator for appropriate changes in the annual training plan. The training plan is developed, evaluated and updated based on these assessments that identify current job related training needs.

F. Whenever possible, these training programs will be conducted by the Training Academy or Sheriff's Department Staff.

G. Facilities and equipment for classroom training programs will be available on site at the Harrison County Adult Detention Center. The equipment and training programs will be located in an area that will provide isolation from other employees and from inmates. Alternate sites will be selected to best accommodate small or large classes. Facilities for physical training, firearms and chemical agents will be located at or off the facility and will conform to the same requirements as the classroom programs.

H. Employees who are designated as non-exempt will be paid in accordance with facility policy for time spent in training programs authorized by the Facility Administration. Per diem and travel expenses will be paid to any facility employee who attends training seminars which require those employees to be away from home overnight or where the use of privately owned vehicles has been authorized by the Harrison County Adult Detention Center Administration. Funds will also be available to reimburse staff who attend training during off duty hours.

I. All new correctional officers will receive a minimum of forty (40) hours of training/orientation prior to being assigned to a particular job. This orientation/training will include, at a minimum, orientation to the purpose, goals, policies and procedures of the institution and Harrison County Sheriff's Department; working conditions and regulations; responsibilities and rights of employees; and an overview of the correctional field. The orientation/training should include some preparatory instruction related to a particular job assignment. Upon assignment to a post new employees will be assigned to a Field Training Officer.

J. Correctional officers assigned to a specialized unit must have one (1) year experience as a Correctional Officer and at least 40 hours of training before being assigned. At least 16 of the 40 hours annual training must be pertaining to the specialized unit assignments. Emergency unit members shall receive training in and maintain certification in PPCT, Chemical Agents, First Aid/CPR and Firearms.

K. Correctional Officers, in addition to the 40 hour orientation training, will receive 80 hours of basic correctional training. In addition, all Correctional Officers will receive the required amount of in-service training each subsequent year of employment.

L. All Clerical/Support employees will receive a minimum of sixteen (16) hours of training during the first year of employment and sixteen (16) hours of training each year thereafter.

M. All support employees and professional specialists who have regular or daily inmate contact will receive a minimum of forty (40) hours of training during their first year of employment and forty (40) hours of training each

year thereafter (e.g. Food Service, Industrial Supervisors, Case Managers, Chaplains, Teachers, Medical Personnel, Volunteers, Recreation Specialist).

N. All Harrison County Adult Detention Center administrative and managerial staff will receive a minimum of forty (40) hours of training during their first year of employment and forty (40) hours of training each year thereafter. This training should include, at a minimum, General Management, Labor Law; Employee Management Relations, elements of the Criminal Justice System; relationships with other service agencies.

O. The Training Coordinator will give all part-time employees and contract personnel a formal orientation appropriate to their assignments and any additional training as determined by Harrison County Sheriff's Department Rules, applicable court orders, Mississippi State Law and Facility Administration.

P. Prior to assignment to a post involving possible use of a firearm, all personnel authorized to use firearms will be trained in the use, safety, care and constraints involved in the use of firearms. All personnel authorized to use firearms will be required to demonstrate competency annually.

Q. All employees of the Harrison County Adult Detention Center will be encouraged to continue their education. Administrative leave and/or reimbursement is available for employees attending approved meetings, seminars or work related activities. Efforts will be made to coordinate all employees' educational activities with institutional requirements.

R. All personnel who work with inmates will receive sufficient training so that they are thoroughly familiar with the rules of inmate conduct, the rationale for the rules and the sanctions available.

S. On the job training will be provided to all full-time employees during their probationary period.


_Riley_
Facility Administrator

_01 /01 /01_
Effective Date

| Harrison County Adult Detention Center | Policy Number | Pages: 02 |
|---|---|---|
| Policy and Procedures | | |
| Chapter: Training | Related Standards: | |
| Subject: Training Plans | | |

## Policy

The Harrison County Adult Detention Center will establish and maintain a training program and training coordinator to facilitate appropriate training levels for all employees of the Harrison County Adult detention Center. This program will incorporate both basic recruit and in-service training for employees.

## PROCEDURE:

I. **General Information**

A. The Harrison County Adult Detention Center Officer Training programs and trainer qualifications are governed by the Minimum Standards Board on Jail Officers Standards and Training, the Harrison County Sheriff's Department and ACA standards. The training plan will be reviewed annually.

B. All Training Coordinators will meet or exceed Harrison County Sheriff's Department requirements.

C. Training curriculum will meet or exceed Minimum Standards requirements.

D. An Advisory Committee will be established which will meet quarterly to review the Unit Training Program. The committee will be chaired by the Training Director and will consist of representatives from various departments. Written reports from these meetings will be forwarded to the Warden.

E. The Training Advisory Committee will conduct an ongoing formal evaluation and assess the pre-service, in-service and specialized training programs and will submit a written report to the Warden for appropriate changes in the annual training plan. The training plan is developed, evaluated and updated based on these assessments that identify current job related training needs.

F. Whenever possible, these training programs will be conducted by the Sheriff's Department, Corrections Division, and staff.

G. Facilities and equipment for classroom training programs will be available on site at the Harrison County Adult Detention Center. The equipment and training programs will be located in an area that will provide isolation from other employees and from inmates. Alternate sites will be selected to best accommodate small or large classes. Facilities for physical training, firearms and chemical agents will be located at or off the facility and will conform to the same requirements as the classroom programs.

H. Employees who are designated as non-exempt will be paid in accordance with facility policy for time spent in training programs authorized by the Facility Administration. Per diem and travel expenses will be paid to any facility employee who attends training seminars which require those employees to be away from home overnight or where the use of privately owned vehicles has been authorized by the Harrison County Adult Detention Center Administration. Funds will also be available to reimburse staff who attend training during off duty hours.

I. All new officers will receive a minimum of one hundred-sixty (160) hours of training/orientation prior to being assigned to a particular job. This orientation/training will include, at a minimum, orientation to the purpose, goals, policies and procedures of the institution and Harrison County Sheriff's Department; working conditions and regulations, responsibilities and rights of employees; and an overview of the correctional field. The orientation/training should include some preparatory instruction related to a particular job assignment. Upon assignment to a post, new employees will be assigned to a Field Training Officer.

J. Correctional Officers, in addition to the one hundred-sixty (160) hours of training, will receive 80 hours of basic correctional training. In addition, all Correctional Officers will receive the required amount of in-service training each subsequent year of employment.

K. All Clerical/Support employees will receive a minimum of sixteen (16) hours of training during the first year of employments and sixteen (16) hours of training each year thereafter.

L. All support employees and professional specialist who have regular or daily inmate contact will receive a minimum of forty (40) hours of training during their first year of employment and forty (40) hours of training each year thereafter (e.g. Food Service, Industrial Supervisors, Case Managers, Chaplains, Teachers, Medical Personnel, Volunteers, Recreation Specialist.).

M. All Harrison County Adult Detention Center administrative and managerial staff will receive a minimum of forty (40) hours of training during their first year of employment and forty (40) hours of training each year thereafter. This training should include, at a minimum, General Management, Labor Law; Employee Management Relation, elements of the Criminal Justice System; relationships with other service agencies.

N. The Training Coordinator will give all part-time employees and contract personnel a formal orientation appropriate to their assignments and any additional training as determined by Harrison County Sheriff's Department Rules, applicable court orders, Mississippi State Law and Facility Administration.

O. Prior to assignment to as post involving possible use of firearm, all personnel authorized to use firearms will be trained in the use, safety, care and constraints involved in the use of firearms. All personnel authorized to use firearms will be required to demonstrate competency annually.

P. All employees of the Harrison County Adult Detention Center will be encouraged to continue their education. Administrative leave and/or reimbursement is available for employees attending approved meetings, seminars or work related activities. Efforts will be made to coordinate all employees' educational activities with institutional requirements.

Q. All personnel who work with inmates will receive sufficient training so that they are thoroughly familiar with the rules of inmate conduct, the rationale for the rules and the sanctions available.

R. On the job training will be provided to all full time employees during their probationary period.

| Effective Date | Approved By |
|---|---|
| Sept. 1, 2007 | Wald McCu |

HARRISON COUNTY
MISSISSIPPI

INMATE HANDBOOK
ADULT DETENTION CENTER



GEORGE PAYNE, JR. - SHERIFF

UPDATE JANUARY 2005

N. Talking through cell doors with inmates on lockdown.

O. Not wearing I.D. Bracelet.

P. Improper use of tables or chairs. (i.e., sitting or lying on)

Q. Hanging items from electrical devices, sprinkler heads, doorknobs, door hinges, cell doors, bunks, etc.

R. Failure to follow an order from a staff member.

S. Refusing to work.

T. Wearing head rag//doo rag outside cell.

U. Addressing officers by anything other than last names.

V. Being on top tier without permission.

W. Purposely wearing pants below the waist or improper wearing of uniform.

X. Refusing to comply with grooming standards.

Y. Improper use of telephones.

Z. Improper behavior during court.

**Punishment:**

Disciplinary actions may include one or a combination of the sanctions listed below; All offenses must be documented & signed by a supervisor.

**Lockdown for remainder of Shift**

**OR**

**15 days loss of canteen**

**OR**

**15 days loss of visitation**

25

C. Using ... .... ....

D. Coercing staff members.

E. Possession / use of a weapon.

F. Participating in any group demonstration that disrupts the ordinary routine of the facility (i.e., riot.)

G. Participating in any sexual behavior or activity with a person, male or female.

H. Verbally threatening any person with death, violent injury or sexual assault.

I. Rape (same or opposite sex.)

J. Fighting.

K. Possession of drug paraphernalia, illegal drugs, or prescriptions.

L. Theft, (i.e., personal items, canteen, facility equipment.)

M. Tampering with security devices (i.e., fire sensors, locking devices, etc.)

N. Attempting or aiding in an escape (i.e., interfering with proper locking of cell doors, digging mortar from around bricks.)

O. Purposely causing toilets to malfunction, or placing items such as trash, papers, food etc. in toilets.

**Punishment:**

Lockdown up to 60 days, loss of up to 60 days visitation, telephone and canteen privileges. Any inmate who assaults Officer or staff member will be prosecuted for assault of a law enforcement officer.

5. All major rule violations under Category I & II will be handled by a Disciplinary Officer who may offer a plea prior to a disciplinary hearing.

6. If a plea is accepted, the inmate will sign a plea agreement and sanctions begin.

7. However, if plea is refused, a formal disciplinary hearing will be held as soon as possible after the plea sheet is signed refusing the plea offer.

8. All inmates will be allowed to attend their disciplinary hearing, unless prior behavior poses a threat to the staff or facility security. In which case a written statement from the inmate will be accepted.

9. A maximum of three witnesses will be allowed for the inmate's defense. However, any inmate or witness who is unruly or disrespectful will be removed immediately.

10. You have the right to appeal to the Captain of Security within three calendar days after the Disciplinary hearing committee's decision. You should submit your appeal by using an inmate request form. This will be addressed to the Captain of Security.

# Disciplinary Violations and Punishment

I. **Category I Offense ( Major)**

A. Assault or attempted assault (i.e., sexual, physical, etc) on inmate or Officer.

B. Attempted coercing of staff members.

21

# INTRODUCTION

This handbook is provided to you so that you will know the rules you are to comply with while housed in the Harrison County Jail. These rules describe the operation of this facility and the services that are provided. READ IT CAREFULLY.

While you are in jail you will not be treated differently because of your race, religion, national origin, sex or disability. You will receive equal access to programs based on your classification and behavior while incarcerated. Religious, education, vocational training and other work programs are available for inmates to take advantage of while housed at this facility. After sentencing, an inmate may apply to serve as an inmate worker and have the opportunity to be recommended for meritorious earned time (MET) credit. Inmates found guilty of RVRs will loose the opportunity to earn additional MET.

While you are in jail you are expected to keep yourself and your living area clean at all times. You are to respect the rights of your fellow inmates and the rights of Harrison County employee's charged with your supervision. Your responsibility is simple:

\*Obey the Rules                          \*Have good behavior at all times
\* Show respect
\*Notify your family and friends of new rules
    that affect them

If you have questions that this handbook does not answer the staff must be asked in the following order:

    1.  OFFICER assigned to your tower or floor
    2.  FIELD TRAINING OFFICER
    3.  SHIFT SUPERVISOR
    4.  SECURITY CAPTAIN
    5.  DIRECTOR

# TABLE OF CONTENTS

## GENERAL INFORMATION

Incoming Inmates..................1
Issued Items.....................1
Personal Property................1
Facility Rules...................2
Behavior Standards...............2
Cell Doors.......................3
Classification...................3
Searches.........................3
Cleaning.........................4
Dress Code.......................4
Emergency Buttons................5
Escape...........................5
Exercise.........................5
Evacuation Procedures............6
Grievances.......................7
Headcounts.......................7
Inmate ID Wristbands.............8
Inmate Accounts..................8
Laundry..........................8
Legal Access.....................9
Mail.............................10
Library..........................10
Meals............................11
Movements........................12
Telephone Access.................12

## HEALTH CARE

Medical..........................12
Dental...........................13
Mental Health....................13
Medication.......................12

## PRIVILEGES

Canteen..........................14
Programs.........................15
Visitation.......................16
Rules & Regulations..............17

6. All lights out at 11:00 PM Sunday THRU Thursday; 12:00 PM Friday and Saturday. Inmate workers 12:00 PM Sunday THRU Thursday; 0100 am Friday and Saturday.

## Inmate Disciplinary Rules and Procedures

The Harrison County Adult Detention Facility disciplinary rules and procedures are as follows:

No disciplinary punishment which results in solitary or disciplinary confinement, or in any other major adverse change in condition as set forth in the rules and regulations, shall be imposed except under the following due process requirements.

1. Inmates may not be punished except for conduct which violates an existing jail rule or regulation.

2. Any inmate considered a danger to himself or others can be isolated by a Shift Supervisor or above in command until further evaluation.

3. The Shift Supervisor or Officer should submit to the inmate a written notification of the major or minor rule violation he / she is charged with along with a statement including facts supporting the alleged violation.

4. All minor rule violations under category III will be handled by the Shift Supervisor. Any grievance on the action should be written on an inmate request form addressed to the Disciplinary Officer. If the violation was already handled by the Disciplinary Officer then a request should be sent to the Captain of Security.

20

## GENERAL INFORMATION

### Incoming Inmates
Incoming inmates will submit to a complete search, be deloused & take a shower and dress in a clean uniform. During booking, staff members will ask you questions to assist with assessing your health needs, custody level, and the appropriate housing area. This is for your health and safety, you are expected to tell the truth and cooperate.

### Issued Items
When you are transferred from the booking area to a housing unit you will be issued a mattress w/cover, sheets, blanket, and a uniform, hygiene items, shower shoes, cup and spoon, ID Band. Any other necessary items must be requested at time of classification or from an officer.

When you are released you must return everything received in booking & at classification except the hygiene items. Items to be returned include: 1 pair of shoes; 1 mattress w/cover; 1 inmate ID armband; 2 sheets; 1 towel; 1 gray box; 1 inmate handbook; 2 jail uniforms; 1 cup; 1 blanket. These items should be returned in the same condition as you received them. The other items may be thrown away.

### Personal Property
Your personal property will be inventoried and stored until your release unless you choose to release it to someone of your choice for pick up. We encourage you to have someone pick up your valuable items Monday, Wednesday, Friday and Saturday between 8:00am-2:00pm to eliminate the chance of them being misplaced. Personal property allowed in the housing units are limited to issued clothing items, purchases from the canteen, white underwear, white socks. A reasonable amount of personal mail and legal papers are allowed as long as they are kept neat and do not pose a sanitation, safety or security hazard.

All items maintained in your cell must fit into your gray box. If you are transferred to MDOC or to some other detention facility your personal

1

workers must only wear issued facility tennis shoes.

17. Do not sit on tables. Any authorized chairs are to remain in the sections. Do not lean or tilt chairs. All four chair legs must remain on the floor.

18. Do not run inside the housing unit. You will behave in an orderly fashion at all times when in this facility.

19. No personal items such as cups, spoons, paper, etc. will be left outside the inmate's cell. These items must be returned to your cell immediately when not in use.

20. Only three books will be allowed in cell including the Bible or Quaran.

21. No cleaning supplies will be stored in cells. Supplies used must be visually observed by an Officer.

## The Daily Procedures

1. At mealtime, all inmates not locked down will line up to receive their meal. Each inmate is allowed one tray.

2. Inmates will not share or exchange cups, spoons, towels, or uniforms.

3. Do not urinate or spit anywhere except in commode or sink.

4. Inmates are not permitted to take anything with them when they are being transported out of the section, except legal paper necessary for court.

5. Inmate must turn in an empty toilet roll in order to receive a new toilet roll.

19

---

property must go with you. Items not accepted by the agency picking you up will not be held at this facility. This facility will only keep property for inmates housed here.

## MDOC ALLOWABLE ITEMS FOR TRANSPORTING STATE OFFENDERS TO MDOC/CMCF

1. Soft back Bible (1)
2. Legal Material
3. Money (To be placed in Inmate Account)
4. Address Book
5. Watch (no more than $50 in value)
6. Necklace (must be religious nature)
7. Wedding band (males) wedding set (females)
8. Deodorant (1)
9. Medication (turned over to MDOC staff)
10. Eyeglasses (prescribed by doctor) or contacts (case if inmates has one)
11. Undergarments, walking cane, crutches or prosthesis prescribed by doctor

Note: Court-Order returnees can have only the property that they arrived with when they entered your facility. Anything not on the list is considered contraband, subject to be destroyed or thrown away. No cigarettes and no free world clothes, shoes or electronics (TV, Radios, etc.) are allowed. All other non-allowed items must be disposed of before going to Central Mississippi Correctional Facility or it WILL BE DESTROYED.

## FACILITY RULES

### Behavior Standards

The staff at the Harrison County Detention Facility, expect that you will

2

4.  Inmates will be fully dressed in their issued uniform when not in their assigned cell. They will also be fully dressed during any count. Pant legs will be rolled down at all times.

5.  No tobacco products are allowed. This is a non-smoking / tobacco free facility. Any inmate found with any tobacco products will be disciplined for contraband.

6.  Razors will be signed in and out on Sunday. Two hours after issuance the razors will be returned to the Officer.

7.  Under no circumstances will uniforms, sheets, pillowcases, walls, or furniture be damaged or defaced in any manner. If you are found with damaged articles in your possession you will be charged and/or disciplined. Failure to pay will result in disciplinary actions.

8.  No items will be attached to walls, furniture, or windows in any manner.

9.  Inmates' cells will be inspected routinely. Each inmate is responsible for cleaning his/her cell daily.

10. Beds will be made neatly with blanket and sheets tucked under the mattress when the bed is not in use.

11. All personal property must fit in the property bin attached to the bunk or in the gray storage box.

12. All inmates' shoes will be placed on the floor underneath the bunks.

13. No food other than canteen items will be permitted inside the cell.

14. No jewelry of any kind will be permitted.

15. No headband or wraps will be worn except while sleeping.

16. Population inmates are not authorized use of shoelaces. Inmate

18

be responsible, display good behavior and comply with staff directions at all times. If you choose not to obey the rules, you will be disciplined and housed in an area where you will get few, if any privileges.

While you are in jail, it is important that you act in a way which promotes the safe, orderly, and efficient operation of the facility. You are required to show respect to follow the rules, to keep yourself and your sleeping area clean, and to use common sense. Violations of acceptable behavior will result in disciplinary action and loss of privileges.

## Cell Doors

Cell doors are to remain open during waking hours unless instructed otherwise (Exception B-Block cell doors will be secured at all times). At lockdown the doors will be closed and secured. It is your responsibility to assure nothing blocks the windows. Tampering with the locks or the ability of the doors to be secured could be considered an attempt at escape, and will cause the cell occupant to be placed in lockdown. Damage to door locks could result in fees being assessed against the inmates account.

## Classification

Your first housing assignment will be determined by booking staff. Within several days Classification staff will evaluate you based on your criminal charges and special needs identified during the booking process. Your permanent custody level will be determined at this time. While incarcerated, your behavior will be closely monitored. You may request reclassification once every six months.

## Searches

Cell searches and or shakedowns will be conducted periodically, and may be conducted at any time during the day or night. If officers enter your section to conduct a search you are to

3

## Visitation Schedule

| Tuesday | Thursday | Saturday | Sunday |
|---|---|---|---|
| 5:00pm-10:00pm<br>A-Block<br>Last names A-L | 5:00pm-10:00pm<br>B-Block General Population<br>B-Block Admin. Segregation<br>(BD) | 8:00am-1200 pm<br>C-Block General Population<br>B-Block Protective Custody<br>(BD)<br>D-Block Juvenile (BF)<br><br>5:00pm-10:00pm.<br>C-Block Inmate Workers<br>D-Block Female Population | 8:30am-<br>10:15am<br>Church Services<br><br>5:00pm-10pm<br>D-Block Male<br>Population<br>A-Block Last<br>names M-Z |

## General Housing Unit Rules and Regulations

You are expected to follow all detention center rules and regulations. Failure to do so will result in disciplinary action. If you have any questions regarding rules and regulations, ask the Officer. All questions and comments are to be addressed to the control room or the floor officer. You may request to speak to a supervisor. You should allow seven days for reply to your written request. If you have an emergency notify the Control Room Officer immediately.

1.  When asked to go to your assigned cell, you will do so immediately no question asked.

2.  Do not talk to other inmates through closed cell doors, fire exit doors, or pass notes of any kind.

3.  Keep I.D. bracelets on at all times. You will not be afforded any privileges without your I.D. bracelet. Destruction of I.D. bracelet will constitute a charge of ten dollars to the inmate's canteen account, or payment at line of release.

17

---

immediately report to the yellow line in the day room and remain there until you receive further instructions.

## Cleaning

You are required to clean your assigned cell or bunk and dayroom daily prior to receiving any privileges. Television, microwaves, and telephones will not be turned on until all cells and dayrooms are thoroughly cleaned. Visitation and canteen privileges will not be granted until all cells are cleaned. This includes making your bed and eliminating all clutter. All personal items are to fit in your issued gray box. If it will not fit in the gray box, you should consider throwing away some unnecessary items to assure you have enough space to keep all items inside the box.

Nothing will be hung in the windows or on homemade clotheslines. The dayroom and shower are common areas. They are to be cleaned and clutter free. All trash is to be thrown away, do not allow trash to pile up. The dayroom is to be swept and wet mopped daily. The shower will be wet mopped daily and the walls wiped down. Shower doors are to be left open after showers and at lockdown to allow them to dry. When not in use all games and cards are to be neatly stored away. Failure to follow this rule may result in games and cards being taken away. You should take pride in your living area. Inspections will be conducted routinely by the staff, and if your area is not clean you may lose certain privileges.

## Dress Code

When you leave your cell or bunk you will be in your issued uniform. Before and after a shower you must wear shorts and a shirt, as a sign of respect for officers of the opposite sex. Wearing a towel or boxers to the shower is not allowed by male nor female inmates.

Haircuts will be provided FREE once per month unless an attorney makes a special request for court appearance. All male haircuts will be military style.

4

## Programs

Time for Religious Services, Educational Services, Alcoholics/Narcotics Anonymous will be announced as scheduled. These services are conducted by volunteers who are here to help you. Do not show them disrespect. If you are not really interested in the program provided do not attend. Due to the number of inmates incarcerated space is already limited.

## Visitation

REMEMBER this is a privilege that will be taken if rules are violated.

## Visitation

Visitation is a privilege that may be prohibited if rules are not followed. You have the RIGHT to a professional visit with your Attorney, Bonding agent or approved members of the clergy. All personal visitation is non-contact and non-conjugal. Special visits for people living over 150 miles away must be pre-approved. Visitors are not allowed to leave anything in the visitation room for you. Violators caught will be banned from visiting and may be subject to arrest. All visits are limited to three people once per week. All children are counted as visitors. Anyone under the age of 18 must be accompanied by a parent. Visits will last no more than 30-minutes per week.

Visits will be scheduled at least 24-hours in advance by the inmate. It is the responsibility of the inmate to advise friends, family or loved one a visit has been scheduled.

A visitation form will be provided during the classification process. If the form is not provided you must request one at time of classification. On the form you will list the persons you want to visit you and all information you have available. The form must be returned to the Classification Officer or placed on the mobile cart when it comes around. The person on the form must bring a picture ID in order to visit.

16

## Emergency Buttons

There is an emergency button located in each cell near the door. The intended use is to notify the Officer if there is a serious problem in the cell. Misuse of this button will result in immediate disciplinary actions. This button is there for your safety. DO NOT ABUSE OR DESTROY IT.

## Escape

Any inmate who escapes, attempts to escape, or aids or attempts to aid any other inmate in escaping will be prosecuted according to the laws of the State of MS.

Inmates with prior escape charges will be housed in administrative segregation. The following conditions of confinement will apply:

1. Shower at least 3 times per week
2. Access to basic hygiene items
3. Prescribed medication
4. Scheduled laundry & exchange services (clothing, & linen)
5. Limited telephone privileges (Shift Supervisor must verify all calls)
6. Facility scheduled meals
7. One hour outside of cell 5 days per week
8. Opportunity to submit inmate requests

NOTE: Because this inmate has proven to be a security risk, he/she must never be outside of the cell without restraints.

Be advised these confinement conditions may be overridden if safety & security is a concern.

## Exercise

Inmate will be afforded one hour daily of physical exercise outside the cell, efforts will be made to offer the exercise yard weather permitting. The faster you line up to go to the yard the

5

more time you will have outside.

EXERCISE YARD RULES:

While going to the exercise yard, talking to other inmates in other sections is not allowed. One rule to keep in mind while on the exercise yard is to RESPECT EACH OTHER.

1. No food or liquid is allowed on the exercise yard.
2. Inmates will wear a full uniform, including shoes during exercise yard use.
3. No personal items are allowed on the exercise yard.
4. No climbing or hanging on the walls of the exercise yard.
5. Littering on the exercise yard is not allowed.
6. No confrontations, regardless of severity, will be tolerated. This includes physical or verbal disputes. In the event of a confrontation, regardless of the severity, inmates will move immediately to a designated area and remain there until further advised by a Corrections Officer.
7. In the event of a medical emergency all inmates will move to an area designated by an Officer and remain there until further advised by a Corrections Officer. Notification of an emergency will be made immediately to an Officer.
8. When a Detention Officer advises inmates that the exercise period is over, all inmates will immediately return to their cellblock.

Evacuation Procedure

If evacuation of the area becomes necessary, line up in single file, stop talking and follow the instructions being given by staff. Failure to follow instructions may jeopardize everyone's safety. The evacuation routes are posted in each section near the section door. From time to time drills will be conducted.

Any mistakes must be noted on the receipt by Canteen Personnel at the time of verification and corrections made as soon as possible.

If an inmate forgets to order or misses the order date he/she must wait until the next date for ordering. There will be no back orders, additions or exchanges.

### Barbershop Schedule

| Mon | Tue | Wed | Thurs | Fri | Sat | Sun |
|---|---|---|---|---|---|---|
| C Block | C Block | A Block | D Block | A Block | B Block | C Block |
| B Section | E Section | A Section | A Section | D Section | C section | A Section |
| C Section | F Section | B Section | B Section | B Section | D section | E Section |
| D Section | | C Section | C Section | F Section | E Section | |
| | D Block | | Females Only | | | |
| | D Section | A Section | 0800-1000 hours | | | |
| | E Section | B Section | 1600-2100 hours | | | |
| | F Section | | B Block Juveniles 1300-1400 | | | |

Inmate Workers

Inmate worker positions are available in various location throughout the jail. Inmates must make request for work by completing an inmate request form and placing it on the daily request cart. You may be denied if you have a history of behavior problem while in jail or a violent criminal history. You must be currently serving some time (either misdemeanor of felony). Understand as an inmate worker you must follow all handbook rules and some additional inmate worker rules. Privileges for inmate workers include: longer visitations, MET toward sentence or 2 for 1 time for misdemeanor convictions increased meal portions, opportunity to sharpen or develop a skill, etc.

Convicted misdemeanor inmates will be classified as skilled or unskilled inmate workers. The classification level will determine whether work assignments are permanent or on an as needed basis.

6

15

Diseases may be spread in a jail setting if precautions are not used. To prevent yourself from getting diseases, do not share needles for drugs or tattooing nor share body fluids.

If you are feeling anxious, depressed, or you feel like harming yourself, complete a request to see the Mental Health Staff. The Medical Staff are always available for emergencies.

## PRIVILEGES

### Canteen

The Canteen is a convenience store operated by the Detention Center, making retail sales to inmates in the Blocks. If you have money in your inmate account, you may order items from the Canteen (i.e., snacks, postage, writing materials, personal hygiene items, etc.) one time per week. Items are purchased using the Canteen request form filled out by the inmate. The cost of the purchases is deducted from the inmate's account and the items are delivered by Canteen Staff.

You may purchase up to $45.00 each delivery day provided you have money and are not restricted due to disciplinary actions. If an order was placed prior to lockdown, upon delivery, the inmate will only be allowed hygiene items. The remainder of the Canteen items will be returned and your account credited.

### RULES FOR DELIVERY

Inmates will be called out of the section, one at a time to pick up their order;

The items will be removed from the bag and compared to the order form;

The inmate will sign a receipt verifying that he/she has received the order;

14

### Grievances

The inmate grievance procedure may be used to address violations of inmate rights. If you feel that you have a serious complaint regarding your treatment or other conditions, first speak with your Tower or Floor Officer. If that doesn't provide satisfactory results, you must write the grievance down and put it in the grievance box when the daily cart comes around. A supervisor will address your grievance within 10 days.

Grievances and dispositions will be forwarded to the Security Captain for review. Petitions will not be accepted. Multiple grievances filed on the same subject are not necessary. Grievances can only be answered on topics directly controlled by the Harrison County Sheriff's Department.

Note: Inmates sentenced to the Department of Corrections may seek relief through the Administrative Remedy process offered by the State if you are not satisfied your grievance has been adequately addressed in-house.

### Headcounts

Headcount will be conducted at least twice daily, and may be conducted anytime the staff deems it is necessary. Inmates will go to their ASSIGNED cell or bunk 30-minutes before headcount starts. When headcount begins a Officer will ask you your name, you must give the name you were booked under. For verification purposes you will be asked to show your ID wrist band. Therefore, have ID band on and be fully dressed when headcount starts. No telephone calls, no heating of food, no taking showers and no talking is permitted at this time. This is not the time to talk to the staff, there will be time to do that later in the shift. Your cooperation makes headcount go faster which allows you to return to chosen activities sooner.

7

## ID Wristband

Once you are issued your ID wristband you are required to keep it on your wrist at all times. You will need this wristband whenever you leave your assigned section, receive meals, canteen, mail, sick call, and for ID when you are released. If your ID band is lost or destroyed you may be accessed a fee for replacement and your release delayed because of a lack of positive identification.

## Inmate Accounts

Inmates are not allowed to have cash money on their person or in the living area. Money taken during booking will be placed in an inmate account and a receipt will be given to you. MONEY ORDERS only will be taken at the front desk, added to your inmate account and a receipt will be given to you. The maximum face value of one money order is $50. No more than (1) $50 money order will be accepted each week. Any money left on the account upon release will be returned to the inmate by check. Checks will be available after 10:00 a.m. Tuesday thru Friday. There will be no checks issued on Saturday or Sunday. Those check will be available after 3:00p.m. on Monday. You must indicate at the time of release whether you will pick up check or want it mailed. No personal checks will be accepted for the inmate account. You should advise your family and friends not to send cash in the mail. Any cash received will be returned to sender.

## Laundry

A laundry schedule is posted in your dayroom. Inmates will turn in dirty laundry and it will be washed and returned as soon as possible that same day.

Hand-washed laundry will be kept in the cells and hung from the hooks provided. Nothing will be hung on windows, rails, grates, or on homemade clotheslines.

## HEALTHCARE

As an inmate, you are eligible for medical, dental and mental health services as needed to maintain your health. There is a five ($5) fee for each physician, dentist and mental health visit. You WILL NOT be denied medical services because of your inability to pay. Additionally, you will not be charged for follow-up visits or chronic care visits scheduled by the medical department. However, if money is deposited in your Canteen Account while you are incarcerated, your outstanding medical bill will be deducted first.

It is your responsibility to fill out a request slip stating the health service needed. (i.e., medical, mental or dental). You may also verbally ask for medical services from an officer or medical personnel. Drop your request slip in the locked box provided for requests in your housing area.

Request will be collected daily by medical personnel. Do not expect officers to hand carry routine requests. Non-emergency request will be reviewed by medical staff within 24 hours. You will be scheduled to see a health care professional within the next 24 hours (72 hours on weekends).

Emergency or acute health service request are reviewed and the inmate will be seen by a medical professional within 24 hours.

If your medical problem is an emergency, tell a staff member immediately so you may be treated.

Health Evaluations will normally be performed by the medical personnel within 14 days of incarceration, FREE OF CHARGE.

If a requested medical procedure is not deemed a necessity by the doctor it will not be provided. Dental procedures will consist of PAIN CONTROL & INFECTION CONTROL. No elective or cosmetic dental services will be provided.

13

8

## Meals

The facility serves three meals per day. Meals will be delivered to your section. To assure orderly distribution of meals, the Officer's instructions must be followed. The approximate serving times for each meal is listed below.

Breakfast      5:30 a.m.
Lunch          11:00 a.m.
Dinner         4:00 p.m.

When a meal is announced you will form a line at the service area. You must bring your cup and inmate ID wristband. Meals will be eaten in the dayroom only unless an inmate or the entire section is on lockdown. Eating meals in the cells and storing meals to eat later is not allowed.

## Movement

When you leave the cell block you will be handcuffed and/or wear other forms of restraints. Walk in single file to the right of the hall. There will be no talking to other inmates or staff. You must have your ID wristband on.

## Telephone Access

Each inmate will be given an opportunity to make a reasonable number of telephone calls to assist with release at the time of booking. Once placed in a section inmates will not be taken back to booking to make calls.

Telephones are located in each section. They are to be used during the dayroom hours. Calls to your court-appointed attorneys can be made direct by dialing 1 + Area Code + the telephone number. All other calls made are collect calls. The telephones are property of the telephone company, if they are intentionally damaged the section may be without telephone services until the company can be contacted for repair.

12

## Laundry Schedule

| Mon | Tue | Wed | Thurs | Fri | Sat | Sun |
|---|---|---|---|---|---|---|
| A & C Block | B & D Block; Inmate Workers | A & C Block | BD Blocks | A & C Block | D & D Block | Booking |
| Inmate Workers | Clothing Only; No Sheets nor Blankets | Sheets/Blankets | Clothing Only; No Sheets nor Blankets | Clothing Only | Sheets/Blankets Inmate workers | Inmate Workers |
| Clothing Only; No Sheets nor Blankets | Female Inmates after 1700 hours | Inmate Workers | Inmate Workers | | Female Inmates After 1700 hours | |

## Legal Access

Inmates needing information from the law library or Legal Resource Center should complete a request form and drop it in the law library box when the cart comes to your section. Requests will not be received by the Floor Officer or through any other method. Urgent requests should be directed to a supervisor for evaluation. The cart comes around daily. The request forms will be answered by the Legal staff as soon as possible.

The Legal Resource Center does not practice law or give legal advice. As an inmate you must direct your legal questions to your attorney.

All state inmates need to write:

South MS Corr. Institute of Legal Assistance
P.O. Box 1419, Leakesville, MS 39451

The Legal Resource Center is here to assist you based on available resources. Requested research is pulled, letters mailed to your attorney or to the courts (should you represent yourself) in order to assure access to the court system. Do your part in helping the system flow smoothly by not sending multiple requests for the same thing. If you will cooperate the system will work for you smoothly and quickly.

9

Notaries are done upon request according to deadlines. Cases are pulled **in the order in which they are received**, as well as the processing of all other requests. You must allow at least seven days for a reply to your request.

**Please note:** If you are newly incarcerated for a felony and have not applied for an attorney, then you need to request a Petition for Attorney. If you have already Petitioned the court for an attorney, then your temporarily assigned court appointed attorney is as follows at the Justice Court level until you are formally indicted, and then **you will be reassigned by Circuit Court a new appointed attorney.**

| 1st Judicial District-Gulfport | 2nd Judicial District- Biloxi |
|---|---|
| **Attorney: Kay Wilkerson** | **Attorney: Bill Dreher** |
| P.O. Box 4105 | P.O. Box 1344 |
| Gulfport, MS 39502 | Biloxi, MS 39533 |
| (228) 863-5827 | (228) 432-5588 |

**Once you are indicted** and you have already Petitioned the Circuit Court for an attorney, and for whatever reason you are not satisfied with the time it is taking for you to receive your new attorney assignment, **then you are at liberty to write the court handling your case as follows:**

| Circuit Court-1st Judicial District | CircuitCourt-2nd Judicial District |
|---|---|
| P.O. Box 998 | P.O. Box 235 |
| Gulfport, MS 39502 | Biloxi, MS 39533 |
| (228) 865-1635 | (228) 435-8250 |

**Library**

The Adult Detention Center operates a mobile library for inmate usage. To request a book, you simply complete a book request form and place it on the request cart when it comes around. The library cart will deliver books to your block. You may only check out one book at a time. If you have a book checked out to you already, that book must be returned

---

before you will be allowed to check out another book.

**Mail**

Communication with the outside world is important. The staff will pick-up letters each day. Personal letters without postage or return addresses will not be mailed. You should limit information on the envelop to the name, address & your return address. Any out going mail with obscene or vulgar words or pictures or gang related symbols will not be mailed. Outgoing mail will not contain any foreign items. Only letters are

acceptable. The envelope along with the contents will be destroyed and you will not be reimbursed for postage. All out going mail will be stamped with the following.

> Harrison County Sheriff's Department. Adult Detention Center
> This letter is being mailed by an inmate of this facility.
> The Administration has not reviewed the contents.

Incoming mail must have a return address or it will not be accepted. All incoming mail except legal will be opened & searched for contraband. Legal mail will only be opened in the presence of the inmate. The inmate may keep the contents of legal mail but the envelope must be returned to the officer delivering mail. Any packages or unauthorized mail will be returned to the post office. The HCADC is not responsible for lost items mailed to this institution unauthorized. To insure fastest delivery of all incoming mail it must be addressed as follows:

> Harrison County Adult Detention Center
> Your full Name (name you were booked under)
> Cell Block, Section and Cell Number
> 10451 Larkin Smith Drive
> Gulfport, MS 39503

Mail will be picked up and delivered every day except Saturday, Sundays and Holidays. You must show your ID band to receive mail.

10

George Payne, Jr, Sheriff

## PROFESSIONAL STANDARDS UNIT

1. **PURPOSE**

   The purpose of this order is to establish the policy for managing and staffing the Professional Standards Unit of the Harrison County Sheriff's Department. This policy will outline the procedures for investigating complaints of misconduct.

2. **SCOPE**

   This policy is directed to all department personnel.

3. **POLICY**

   The Harrison County Sheriff's Department Professional Standards Unit shall be responsible for conducting internal administrative investigations and applicant background development.

   This policy shall define the methods of investigation and discipline in order to ensure the protection of employees' rights through the conscientious investigation and ultimate disposition of each inquiry. This policy shall ensure the integrity of the department by establishing procedures that provide an investigation of any matter that might affect the efficient, professional operation of the department, and mandated compliance with all general orders.

   A. **Internal Investigations Authority**

   Internal inquiries and investigations are performed under the authority of the Sheriff. The Professional Standards Unit shall have the primary responsibility of investigating complaints of alleged employee misconduct. The Professional Standards Unit will operate under the supervision and direction of the Sheriff. All orders written or verbal issued in connection with any internal investigation shall be considered as direct orders from the Sheriff. The final authority to exonerate, declare unfounded, not sustained, or to sustain any complaint rests solely with the Sheriff. Internal inquiries are administrative and should not be construed as criminal investigations.



EXHIBIT

"2"

**B. Disciplinary Review**

Members of the Professional Standards Unit may be required to attend Disciplinary Review Hearings subsequent to internal investigations. The sole purpose will be to provide the facts and circumstances surrounding the respective cases.

**C. Civil Service Meetings**

A representative of the Professional Standards Unit may be requested to attend regular or special civil service meetings for providing insight on disciplinary actions occurring inside the department. The representative's responsibility is solely to inform the Civil Service Commissioners of results of particular investigations.

**D. PSU Area of Investigative Responsibility**

The Professional Standards Unit will investigate serious or sensitive allegations of misconduct and incidents resulting in actual or potential litigation against the county, the Sheriff's Department or employees of the Sheriff's Department. Any such investigation shall be performed under the guidelines of appropriate county policies and Mississippi Statutes.

## Legal Action

The Professional Standards Unit may investigate any pending legal action against the department or it's employees. Upon receipt of such information, a case file will be established which will contain all pertinent information on the action and any request for information.

**E. Shift Supervisor Area of Responsibility**

The appropriate immediate supervisor will investigate complaints of less serious violations. This assignment shall not relieve the Professional Standards Unit from lending assistance when requested or monitoring the investigation.

The Supervisor receiving an external complaint or filing an internal complaint is responsible for preserving evidence to include taking documentary photographs when practical and possible. The Supervisor shall take photographs of complainants in all excessive force complaints even if injuries are not visibly present.

**F. Complaints:**

*<u>All external complaints will be documented on a Citizen Complaint Form.</u>*
Complaints may be received in a variety of ways including, but not limited to: (a) in person (b) by mail (c) telephone (d) email (e) third party *Anonymous complaints are investigated, but have limitations caused by the inaccessibility of the complainant.*

<u>Procedure for Citizen Inquiry</u>

A citizen alleging misconduct on the part of any employee shall be directed to the supervisor on duty regardless of the time of day. The supervisor may be able to resolve the complaint without the assistance of the Professional Standards Unit. Many complaints of alleged misconduct can be handled by the Shift Commander or a supervisor, provided it is done in a professional and timely manner. Unless the complaint involves gross misconduct or a criminal violation, the Shift Commander or supervisor should make every attempt to resolve the matter without involving the Professional Standards Unit.

If the shift supervisor cannot resolve the complaint satisfactorily or there is an allegation of a criminal nature, the shift supervisor shall complete the Citizen Complaint Report and forward this form to the Professional Standards Unit without delay.

In the event a citizen directly contacts the Professional Standards Unit when initially registering the complaint, the Professional Standards Unit will be responsible for referring the complaint to the affected supervisor or completing the Citizen's Complaint Report and other necessary documentation.

<u>Traffic Citations/ Arrests</u>

Complaints relative to differences of opinion between an officer and a citizen over the issuance of a traffic citation or regarding guilt or innocence subsequent to an arrest, shall not be investigated by the Professional Standards Unit, but will be properly handled by the judicial system.

**G. Use of Citizen Complaint Report**

1. Personnel receiving the complaint shall have the citizen sign the Citizen Complaint Report in their presence. The substance of the complaint shall be documented in the appropriate section of this form.

2. Under no circumstances shall the Citizen Complaint Report be used as a means to threaten, intimidate, harass or discourage a citizen from making a complaint.

3. Should the citizen refuse to sign the complaint report, the receiving supervisor shall complete the report and document the refusal to sign. A memorandum concerning the allegations shall also be made. The report shall be signed in the space provided for supervisor receiving the complaint. The completed report shall be forwarded to the Professional Standards Unit without delay.

## H. Internal Complaint Procedure

In furtherance of the intent of this policy, any employee may submit a written statement, documenting employee misconduct, directly to the Professional Standards Unit which shall process the complaint in accordance with this general order.

## I. Written Counseling Form

Written Counseling Forms shall be utilized to document an employee's unsatisfactory performance or to document an incident involving employees. Written Counseling Forms in some cases shall serve as a written consultation. A copy of all the internal complaints or incidents shall be forwarded to the Professional Standards Unit.

If the supervisor believes the complaint, either external or internal, is of such a serious nature that it requires immediate attention, or he needs assistance, he shall contact the Sheriff or the appropriate Director within his chain of command, who shall determine if the complaint requires immediate assistance or the assignment of personnel from the Professional Standards Unit. If the appropriate Director deems that the complaint should be investigated by the Professional Standards Unit, the Director shall make the request to the Sheriff.

## J. Initial Investigation Procedures

1. Upon receipt of the documentation and approval of the Sheriff, the Professional Standards Unit shall determine which general order(s), policies or statutes were violated.

2. Should a formal investigation be ordered, an *Initial Notice of Inquiry Report* shall be drafted and forwarded to the affected employee through the chain of command, except under the following circumstances:

   (a) The alleged violation is ongoing.
   (b) The investigation possibly would be compromised by the release of the information.

3. Garrity warnings shall be given to employees and signed prior to all formal interviews whereby the possibility of criminal conduct may be alleged. When there is no criminal conduct alleged, employees interviewed by the Professional Standards Unit will be advised of the authority of the investigation as well as requirements of complete truthfulness and candor. This will be documented on an audio recording tape.

## K. Classification of Allegations

The Professional Standards Unit investigator shall, in the Internal Investigative Report, recommend 1 of the following 5 classifications:

1. Unfounded- the allegation is false or not factual.

2. Exonerated- the incident occurred, but was lawful and proper.

3. Not Sustained- there was insufficient evidence to prove or disprove the allegation.

4. Sustained- the allegation is supported by a preponderance of evidence to justify a reasonable conclusion that the incident did occur.

5. Policy Failure- the policy was not specific or did not cover this incident.

## L. Internal Investigations

1. Internal Complaints will be assigned an IA# by the Professional Standards Unit OIC.

2. The complaint will then be assigned to a Professional Standards Unit Investigator by the OIC.

Each internal investigative report will contain:

1. The general order(s) violated.
2. The details in chronological order, addressing each point of accusation.
3. A synopsis of each witness statement.
4. Mitigating circumstances, if appropriate.
5. Recommended classification of the allegations

## M. Case File Preparation:

*Unless special circumstances occur, all internal investigations must be completed within thirty days. An extension may be given by the Professional Standards Unit OIC or the Sheriff.*

Each case file and report will contain the site or copies of the general orders violated. In addition, each case file will include letters and memos relevant to the investigation. All reports must include an investigator's finding and conclusions. Findings and conclusions should be a summary listing of relevant conclusions drawn by the investigator based on facts and circumstances of the investigation and a recommended classification of the allegations shall be provided by the Investigator. The Professional Standards Unit shall not make any recommendations regarding disciplinary action. All Garrity statements, including audio or video tapes of such interviews, must be filed separately from the investigative file in an envelope marked "Garrity statement" and filed accordingly.

N. Dispositions

　　1. Informal Personnel Actions- Actions documented on a Written Counseling Form shall be processed by forwarding a copy of the Written Counseling Form to the Professional Standards Unit for record.

　　2. Formal Discipline- A copy of the Formal Discipline Report, (letter of suspension, termination, etc.) shall be maintained in the affected employee's personnel file as defined in the department General Orders and a copy to be maintained in the Professional Standards Unit file.

O. Corrective Actions

　　1. Informal Personnel Action- When practical informal actions should be positive and educational rather than punitive in nature. The employee's immediate supervisor will complete all informal personnel actions.

　　2. Formal Discipline- Construed to be punitive in nature. It includes, but shall not be limited to:

　　　　(a) Written Reprimand
　　　　(b) Demotion
　　　　(c) Suspension
　　　　(d) Termination

P. Procedural Due Process

　　1. Prior to awarding any level of informal personnel action or formal discipline, the recommending authority may contact the Professional Standards Unit in order to determine the record of the offending employee and the consistent level of personnel action or discipline for the violation.

2. **Required Actions-** The following steps will be taken to ensure due process:

    (a) The employee must be informed of the charge(s) against him/her.

    (b) The employee must be given an explanation of the evidence underlying the charge(s).

    (c) The employee must have the opportunity to respond to the charge(s).

    (d) All notices and hearings must be done in a meaningful time and a meaningful fashion.

If the internal investigation classifies the case as either exonerated, not sustained, unfounded or policy failure, the employee(s) involved will receive a letter of disposition.

Q. **Reviews, Appeals and Grievances**

All appeals and grievances shall follow procedures herein and established by the Harrison County Civil Service Commission and Department Policy. The Sheriff and all Division OIC personnel may review all informal and formal personnel actions.

**Obstruction of Internal Investigation**

No employee shall by writing, speaking, utterance or any other means commit an act which would hinder or obstruct an authorized internal investigation by the Harrison County Sheriff's Department.

**Confidentiality of Investigations**

All complaints and complaint investigations will be confidential and will not be discussed within or outside the department without approval of the Sheriff or his designee.

**Unauthorized Internal Investigation**

No employee shall initiate, conduct, or otherwise participate in any unauthorized investigation.

**Other Administrative Investigations**

Officer Involved Shootings

The Harrison County District Attorney's Office shall be responsible for conducting an independent investigation of all shootings involving officers of the Harrison County Sheriff's Department. The Sheriff may request other independent investigations by the Mississippi Highway Safety Patrol or other law enforcement agencies. The Harrison County Sheriff's Department Professional Standards Unit will conduct all internal investigations.

## Background Investigations

Background investigations of applicants including sworn, non-sworn and reserves, will be conducted by the Professional Standards Unit. A background investigation by the Professional Standards Unit may be requested by any Director when the Director is informed of a need to begin the hiring process of applicants. The PSU investigator will be given a checklist of needed information, and the items on the list will be noted as to time and date of completion. Upon completion of the investigation the application will be returned to the personnel officer with a cover sheet indicating whether or not the applicant passed the background process. In addition, a copy of the cover sheet will be forwarded to the Sheriff and the affected Director. Without the approval of the Sheriff, applicants shall not be offered employment until after a satisfactory background investigation has been completed and it is determined that the candidate is suitable for the position which he/she has applied.

George Payne, Jr, Sheriff

## CRIME SCENE INVESTIGATIONS

### 1. SCOPE

This policy is directed to all sworn and investigative personnel.

### 2. PURPOSE

The purpose of this General Order is to establish a policy to define general procedures for Crime Scene Investigations.

### 3. CRIME SCENE INVESTIGATIONS

This section uses terms that patrol officers and investigators should be knowledgeable of and adhere to in the process of conducting investigations.

### 4. Preliminary Investigation

Generally, it is the activity which begins when officers arrive at the scene of an accident or crime. The activity shall continue until such time as a postponement of the investigation or transfer of responsibility will not jeopardize the successful completion of the investigation.

The investigation usually includes the following tasks:

1. Providing aid to the injured.

2. Protecting the crime scene to ensure that evidence is not lost or contaminated.

3. Determining if a crime has actually been committed and if so, the exact nature of the offense.

4. Determining the identity of the suspect or suspects and effecting an arrest if it can be accomplished at the scene or through immediate pursuit.

5. Furnishing other field units, through the communications system, a description, method, and direction of flight and other relevant information concerning wanted persons or vehicles.

EXHIBIT

tabbies®

"3"

6. Obtaining complete identification of all witnesses.

7. Determining what information is known by the victim(s) and witness(es).

8. Arranging for the collection of evidence.

9. Determining in detail the exact circumstances of the offense.

10. Obtaining written statements from victim(s) and witness(es) and from the suspect if such statements can be obtained legally.

11. Accurately and completely recording all pertinent information on the prescribed report forms.

5. Field Interviews

Any law enforcement officer may stop and question a person if the officer:

1. Has reasonable suspicion that the subject may have committed or may be about to commit a crime; or

2. Believes the subject may be a hazard; or

3. Believes this may have a preventive effect; or

4. There is a voluntary engagement between the officer & the citizen.

6. Fingerprints

A. Latent prints

Each ridge of the finger, palms and soles bears a row of sweat pores which, in the average person, constantly exude perspiration. The ridges of the fingers and palms are in intermediate contact with other parts of the body, such as the hair, face, and various objects which may leave a film of moisture on the ridges. In touching an object, the film of moisture and/or grease may be transferred to the object, thus leaving an outline of the ridges of the fingers or palm. This print is called a latent impression. The word latent means hidden indicating the print may not be visible.

B. Visible Prints

Visible prints are prints that are left in such mediums as blood, grease, dirt, or paint and are visible to the naked eye.

C. Crime Scene Fingerprint Responsibilities

Every felony crime scene investigated by an officer of the department will be processed for latent and/or visible fingerprints. Crime scenes such as burglary, grand larceny, auto thefts, robbery, aggravated assault, rape and murder shall be fully processed for latent and visible fingerprints.

The officer assigned to the preliminary investigation shall be directly responsible for processing the crime scene for latent or visible fingerprints. Unless the initial investigating officer is relieved of the crime scene by a superior officer or a member of the Investigations Division, it shall be the responsibility of the officer who takes charge of the scene to see that the scene is fully processed for fingerprints.

This general order does not preclude an investigating officer from taking fingerprints at any other crime scene deemed necessary by the officer. It is the direct responsibility of each reviewing supervisor to see that fingerprints are taken at every felony scene. The shift supervisor shall see that fingerprints are properly identified and deposited.

If fingerprints are not taken at the scene of a crime, as required above, the investigating officer shall prepare a separate narrative report giving the reason(s) that no fingerprints were taken. The reviewing supervisor shall then review the report with the investigating officer and discuss the reasons that fingerprints were not taken before signing the report.

7. Inspection and Training

Shift supervisors are responsible to ensure that each officer has a fully equipped fingerprint kit and supplies. It is also the responsibility of the shift supervisor to ensure that any officer who has not had formal training in fingerprint processing is either personally trained by the shift supervisor or an assigned field training officer.

8. Constitutional Rights During Crime Scene Investigations

Patrol officers and other sworn officers shall ensure that:

A. There is no coercion or involuntary confessions and admissions from suspects;

B. There shall be no failure to inform defendants of their rights when necessary and that there shall be no deprivation of counsel;

C. There shall be no pretrial publicity tending to prejudice a fair trail;

D. There will be no illegal search and seizure and there shall be no threat of delay in arraignment.

9. **Preliminary Investigations**

In most situations patrol officers shall conduct all preliminary investigations. Only when directed by the Director of Investigations or his designee shall preliminary investigations be handled by members of the Investigations Division. Since the patrol officer is the first law enforcement officer on the scene most of the time, preliminary investigations, properly documented by the patrol officer may satisfactorily complete the case. The patrol officer shall notify the immediate supervisor to request assistance from the Investigations Division and shall notify the supervisor of any incident requiring immediate follow-up.

Patrol Officers and other sworn officers shall ensure that the following are followed in conducting a preliminary investigation:

A. Maintaining the crime scene and protecting evidence

B. Locating and identifying witnesses

C. Observing all conditions, events and remarks

D. Documenting all conditions, events and remarks

E. Effecting the arrest of the criminal

F. Interviewing the suspect

G. Arranging for the collection of evidence

H. Reporting the incident fully and accurately to include a synopsis of the victim(s)/witness(es) account of the incident.

NOTE: The preliminary investigation may be sufficient to bring the case to a satisfactory conclusion, thus eliminating the need for a follow-up investigation. Should a follow-up investigation be authorized by the shift commander, it may be performed by the preliminary investigating officer or by an officer from the Investigations Division.

10. **Follow-up Investigations**

A follow-up investigation is an extension of the preliminary investigation. Its purpose is to provide additional investigation to close a case, arrest an offender and/or recover stolen property.

Follow-up investigation activities are used for:

1. Identification and apprehension of the offender

2. Collection, preservation, analysis and evaluation of evidence

3. Recovery of stolen property

General Order #18—January 3, 2000                                                      4

4. Interviewing victim(s) and witness(es)

5. Interviewing suspects

6. Determining in detail the exact circumstances of an offense

7. Determining if other crimes may have been committed by the suspect

8. Preparation of the case for court presentation

9. Properly document all follow-up activities.

11. Field Interviews

Field interviews may deprive actual and potential offenders of some of their initiative in selecting the time, place and circumstances for commission of crimes. Field interviews may be based on the time of day, location, crime rate, unexplained or suspicious circumstances and the like.

12. Collection and Preservation of Evidence

The patrol officer, or other officer assigned patrol responsibility for processing the scene of an incident, shall include in the processing the following functions:

1. Photographing and sketching the scene

2. Protecting, collecting and preserving the evidence

13. Protection of Evidence

The investigating officer shall use methods that shall ensure that evidence is not altered in the process of collection, that foreign materials are not added and shall ensure as complete a sample as possible and practical.

For example: Liquid blood samples must be placed in proper containers and he delivered promptly to the laboratory or be placed in an agency refrigerator. Latent fingerprint areas must be protected to insure that other prints are not added.

14. Equipment in Vehicles for Evidence Collection

Officers shall ensure they maintain equipment in their vehicles to enable them to perform the following tasks:

1. Recovery of fingerprints

2. Photography (If the officer does not have a camera and photographs need to be taken, the officer shall call for photographic assistance)

3. Sketch of scene

4. Collection and preservation of physical evidence

   Officers should be equipped to perform timely and effective evidence processing.

15. **Report for Non-collection of Evidence or Not Taking Photographs**

    When evidence is not collected or photographs are not taken for homicides, rapes, arson, robbery or major assaults, the officer shall submit a narrative report to his/her supervisor detailing reasons why the evidence was not collected or photographs were not taken.

16. **Timely Submission of Evidence to the Crime Lab**

    Any evidence collected at the scene should be turned in to the property office as soon as possible following completion of the collection process. The Mississippi Crime Lab Form IS-19 (10-74) shall be used to transmit the evidence to the Crime lab.

    The property officer is responsible for collecting all evidence that is deposited in the evidence lockers and documenting these items for storage or when necessary, transporting the evidence to the Crime Lab.

17. **What should be Submitted to the Crime Lab**

    Any evidence where scientific analysis will help to prove its contents, relationship with other items, etc., shall be submitted to the lab. It is most important that when possible, materials and substances from known sources be collected and be sent for comparison with those from unknown sources. This is particularly true in the case of the study of hairs, fibers, paint, glass, wood, soil and tool marks. The location of the known source provided is of the utmost importance.

    A. Sketches

       The following are some items to consider when making sketches of crime scenes: dimensions; geographical features of roads; addresses, floor or room numbers as appropriate; location of significant features of the scene to include the victim; date and time of preparation; names of the persons preparing the sketch; direction of north and location of items of physical evidence.

**B.  Photography**

All aspects of the scene should be photographed by a trained photographer. In cases when precise measurements of objects are required, the photographer shall include an appropriate measurement device in the photograph as close to the object photographed as possible. Where a court might not allow a photograph, as described above, two shots should be taken, one with the measurement device in the picture and one without the measurement device. When pictures are taken that will ultimately become part of the evidence of the case, great care shall be taken to ensure that dimensions of objects can be determined.

18.  **Responsibility for Requesting Laboratory Examinations**

The first officer on the scene is to take charge of investigation. This officer shall be in charge until the scene is officially transferred to a supervisor or a detective. One of the major items to ensure in this transfer is to identify which officer or detective will take the evidence to the property room for storage.

19.  **List of Evidence Items**

For all items of evidence collected, the officer shall provide the following on each item:

1.  Description of the item, including make, model, serial number, if any;

2.  The source (from who or what location item(s) were obtained);

3.  The name of person collecting the item(s) and;

4.  The date / time collected.

20.  **The Written Report**

An accurate record of events that transpire at the scene in conjunction with the investigation is required at time of the trial. The officer should include the following: date and time of arrival at the scene; location of the crime; name of the victim(s), if known; name of suspect(s), if known; actions taken at the scene, including the number of photographs taken, measurements taken (yes or no) and a listing of physical evidence recovered and Case File Reference Number. The narrative report shall be used to record these items of information.

21. **Training in Crime Scene Processing**

Patrol Officers shall receive specialized training to ensure they know what to do and how to do it with regard to crime scene processing.

Subjects to be covered are:

1. Potentialities and limitations of the examination of physical evidence;

2. Written directive(s) concerning the role and function of the investigator, the patrol officer and the crime scene specialists;

3. Collection methods and procedures regarding fingerprints, footprints, blood fibers and fabrics, weapons, hairs, paint, glass, tool marks and the requirements for the collection of materials from a known source for comparison purposes;

4. Preservation methods for various forms of evidence;

5. Maintaining the chain of evidence, marking, custody and records;

6. The crime or accident scene sketch;

7. Crime or accident photography;

Crime or accident scene records - Particularly noteworthy work of officers shall be produced and be read at shift briefing to show good work that is well done and to familiarize other officers with how to do the work well.

# INMATE GRIEVANCE

**POLICY:**   It is the policy of the Harrison County Adult Detention Center to provide to the inmates housed in it's facilities an internal grievance mechanism for the resolution of complaints arising from institutional matters. The intent is to reduce the need for litigation and afford the staff an opportunity to improve jail operations.

## PROCEDURE:

### I.   GENERAL INFORMATION

The Security Captain may appoint a Corrections Officer to fulfill the duties of the Grievance Officer who will be responsible for investigating and responding to all grievances. Shift Supervisors may also be charged with answering grievances.

All Corrections Officers, or other employees who receive a grievance must attempt to resolve the issue raised on the grievance if it falls within the responsibilities of his or her job description.

The grievance should state clearly the time, date, and names of all parties involved with all pertinent details of the incident or complaint.

Should a grievance make accusation of questionable acts or impropriety on the part of a Corrections Staff Member, the grievance will be forwarded to the Security Captain. A written response to the inmate will be made within ten working days of receipt of the grievance.

### II.   FILING

An inmate may file a grievance at any time to bring a problem to the attention of the staff or to appeal a specific action. An inmate may file only for him/herself, although an inmate may assist another inmate in filing. Only one grievance may be filled out at a time on any one single incident or item of concern. An inmate may withdraw a grievance at any time. No staff member will retaliate against an inmate for filing or withdrawing a grievance.

**EXHIBIT**

tabbies

**"4"**

## III. BASIS FOR GRIEVANCES

A grievance may be filed for any one of the following reasons:

1. Lost property
2. Staff conduct
3. Conditions/confinement
4. Policy/procedures
5. Incidents
6. Reprisals
7. Mail
8. Discipline/classification

Only issues regarding activities within the facility can be addressed in the grievance procedure. Disciplinary actions have an appeal process and are not addressed in the grievance procedure. Issues relating to the Courts, Attorneys, and other issues over which the Harrison County Adult Detention Center has no control cannot be addressed in the grievance procedure. A grievance filed concerning any of these issues will be returned to the inmate with an explanation as to why it was returned.

## IV. REVIEW

If an inmate registers a complaint against a staff member, that employee shall not play a part in making a decision on the request. However, this shall not prevent the employee from being questioned or providing a narrative concerning the incident.

## V. GRIEVANCE CLASSIFICATION

A grievance will be classified as either an informal, standard, or emergency grievance.

**Informal Grievance** – may be resolved by staff at any level without the complete processing of a formal grievance.

**Standard Grievance** — may be processed through normal channels because there is not an immediate threat to the welfare or safety of an inmate.

**Emergency Grievance** — must be processed expeditiously because there appears to be an immediate threat to the welfare of an inmate.

## VI. INFORMAL GRIEVANCE

An inmate may verbally submit a grievance to any Corrections Officer. When presented with an informal grievance, the Corrections Officer may initiate corrective action if the actions is within the normal scope of the officers duties,

the officer will advise the Shift Supervisor. The Shift supervisor will attempt to resolve the matter or have the inmate initiate a standard grievance at their discretion.

## VII. STANDARD GRIEVANCE

An inmate may file a formal grievance within 30 days after a potential grievable event has occurred. The inmate must submit a detailed description of the occurrence in written form. All grievances will be forwarded to the Grievance Officer or Security Captain by way of the request cart. Grievances sent to the Director of Corrections will be given to the Grievance Officer for further investigation. Once the investigation has been completed the Investigating Officer will notify the inmate in written form of corrective action if necessary. The shift Supervisor may delay an investigation of a grievance until employees who may have knowledge of the incident are on duty to respond.

## VIII. EMERGENCY GRIEVANCE

Once an emergency grievance has been submitted the officer will immediately contact his/her Shift Supervisor. The Shift supervisor will be responsible for determining whether the situation is in deed life threatening. In the event the situation appears to be life threatening the Shift Supervisor will contact the Security Captain and corrective measures will be taken at that time.

## IX. GRIEVANCE OFFICER

The Grievance Officer will process and investigate all standard grievances. The Grievance officer will conduct interviews with all individuals involved in order to verify facts. Once the investigation has been completed a written response will be submitted to the inmate who filed the grievance, inmate file, grievance file. A monthly report of grievances addressed will be submitted to the Security Captain Chief of Security and the Director of Corrections.

## X. GRIEVANCE APPEALS

An inmate may file a written appeal within 72 hours of the Grievance Officers decision. The appeal will be forwarded to the Security Captain for review. The Security Captain will respond to the inmate in writing regarding the outcome of his/her appeal, additionally, a copy will be placed in the inmates file. In the event the inmate has been released or transferred a copy will be forwarded to their new location, where possible. A copy of the appeal will be sent to the Director of Corrections for review.

## XI.   RECORDS

Once the grievance process has been completed a complete copy of all documents (i.e., original grievance, investigation note & final disposition) will be forwarded to Record to include in the inmate's custody file.

_R. Riley_
Facility Administrator

_01/01/01_
Effective Date



# HARRISON COUNTY
# SHERIFF'S DEPARTMENT

*George H. Payne, Jr.*
*Sheriff*

Post Office Box 1480
Gulfport, Mississippi 39502

To: All Inmate Housing Units

From: Donald A. Cabana, Ph.D., Warden

Re: Revised Inmate Grievance Procedure

Date: October 30, 2006

A new Inmate Grievance Procedure will be implemented on Wednesday, November 1, 2006. The forms for this new system will be distributed to the cellblocks today. All grievances should be addressed to Ms. Becky Collins, Inmate Grievance Officer. The new system is a two step process, and is very similar to the Administrative Remedy Program (ARP) utilized by the Mississippi Department of Corrections.

Ms. Collins will come around each day, Monday through Friday, to pick up grievances as well as Inmate Request Forms. Effective immediately, any grievances that are filed using Request Forms will be returned to the inmate. Grievances must be filed using the new forms and the new system. Your cooperation is appreciated.

## POST IN ALL HOUSING UNITS.

cc: File



# HARRISON COUNTY
# SHERIFF'S DEPARTMENT

*George H. Payne, Jr.*
*Sheriff*

Post Office Box 1480
Gulfport, Mississippi 39502

Inter Office Memo 2006-28

To:  Lt. McGowin

From:  Donald A. Cabana, Ph.D., Warden

Re:  Inmate Grievance Procedure

Date:  October 13, 2006

    Effective Monday, October 30, 2006 a new inmate grievance procedure will be implemented. Ms. Collins will be designated as the Inmate Grievance Officer. New Inmate Grievance Forms have been devised. The Grievance Form will be filled out by the inmate and submitted to the Grievance Officer. The Grievance Officer will review and route it to the appropriate individual for response. A copy of the original grievance will be kept by the Grievance Officer. The grievance will be assigned a tracking number, e.g.: 10-128-06 for October, grievance number 128 that month, in 2006. For example, if the grievance pertained to a medical problem, it would be sent to Pat Olsen. The 1st step responder will reply in writing, using the First Step Response Form (IGF-2), attach the response to the original Grievance Form, and return them to the Grievance Officer. The Grievance Officer will copy the response, and forward the original grievance paperwork back to the inmate. If the inmate is not satisfied with the Step 1 response, he/she may elect to appeal it via Step 2 to the Warden, via the Grievance Officer. The Warden, upon receipt from the Grievance Officer, submits a written response to Step 2, using the Second Step Response Form (IGF-3), and sends Step 2 back to the Grievance Officer. The Grievance Officer places a copy in the file, and sends the Step 2 response back to the inmate. Step 2 exhausts the administrative remedy (s) available to an inmate, as the Warden is the final step in the appeal process.

    Attached are copies of the forms to be used in this process. Following are time guidelines, and procedures, that must be adhered to if this process is to work effectively:

1. When a grievance is received by the Grievance Officer, it must be stamped "received", with the date at the bottom of the Inmate Grievance Form. A file should be set up (hard copy), and it should be entered electronically as well. The following preprinted from should be sent to the inmate:

        To:  Inmate John Doe #000000
        From:  Grievance officer
        Re:  Grievance
        Date: XX/XX/XXXX

        Your grievance has been received by this office. It will be forwarded to the appropriate individual for review. You will receive a written response within ten (10) days.



# HARRISON COUNTY
# SHERIFF'S DEPARTMENT

*George H. Payne, Jr.*
*Sheriff*

Post Office Box 1480
Gulfport, Mississippi 39502

2. When an inmate elects to appeal the Step 1 response to the Warden, the following form should be sent:

> To:  Inmate John Doe #000000
> From: Grievance Officer
> Re:  Grievance Appeal
> Date: XX/XX/XXXX
>
> Your appeal of the Step 1 response to your grievance has been received by this office. It will be forwarded to the Warden for review. You will receive a written response within ten (10) days. This will exhaust administrative remedies available to you in connection with this grievance.

3. When a grievance is forwarded to an individual and/or the Warden for response, the following memorandum of instruction shall be attached:

> To: XXXX
> From: Grievance Officer
> Re: Response
> Date: XX/XX/XXXX
>
> The attached inmate grievance is being forwarded to you for response. Please forward your written response to this office within seven (7) working days.

When the final step in the grievance process has been exhausted (Warden), and the response sent back to the inmate, the hardcopy documents should be filed under "grievances – inactive", meaning the file has been closed because all steps have been exhausted, the inmate elected to drop his complaint, or he was released, transferred, etc. A notation should be entered indicating the exact nature of the inactive status. A computer file of all grievances received/handled shall be set up so that the existence/status of any grievance can be easily and accurately tracked.

cc: File
    Attachments