**IN THE UNITED STATES DISTRICT COURT
OF THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**JEROME D. JOHNSON**                                                    **PLAINTIFF**

**V.**                                              **CIVIL ACTION NO. 1:07cv539LG-JMR**

**DONALD A. CABANA, et al.**                                            **DEFENDANTS**

---

**MEMORANDUM OF AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANT'S
DONALD A. CABANA, EARL LEONARD, CAROLYN PRENDERGAST, STEVE
CAMPBELL, GEORGE PAYNE, KENNETH ROGERS, NATHAN ELLSBERRY and
ELAINE LEGE, IN THEIR OFFICIAL AND INDIVIDUAL CAPACITIES, FOR
QUALIFIED IMMUNITY AND SUMMARY JUDGMENT**

---

COME NOW, Defendants, Donald A. Cabana ("Cabana"), Earl Leonard ("Leonard"), Carolyn Prendergast ("Prendergast"), Steve Campbell ("Campbell"), George H. Payne, Jr. ("Payne"), Kenneth Rogers ("Rogers"), Nathan Ellsberry ("Ellsberry") and Elaine Lege ("Lege"), all officially and in their individual capacities, by and through  the law firm of Dukes, Dukes, Keating & Faneca, P.A., and submit this their Memorandum of Authorities in Support of their Motion for Qualified Immunity and Summary Judgment, as follows:

## I. BACKGROUND AND UNDISPUTED FACTS

Plaintiff filed this *pro se* suit against Defendants Cabana, Leonard, Prendergast, Gaston, and Campbell, on April 16, 2007, alleging violations of his constitutional rights while incarcerated at the Harrison County Adult Detention Center ("HCADC"), and specifically regarding Plaintiff's claim that he was wrongfully charged with sexual assault of another inmate and then wrongfully incarcerated awaiting prosecution; beginning with the charge in September 2006 and continuing through to a Grand Jury's "No True Bill" being returned in October 2007.  See DN 1.  On August 27, 2007, Plaintiff filed his Amended Complaint seeking to add Payne, Rogers, Ellsberry, and Lege

as Defendants.  See DN 10.  Defendants filed their Answer on January 24, 2008.  See DN 23.  On

November 7, 2007, Plaintiff filed his Request to Add Documents (See DN 17), and seeking to add

an additional claim regarding an altercation with four inmates which is alleged to have occurred on

or about August 29, 2007.

Plaintiff's primary complaint is that he was falsely charged and arrested for the sexual assault

of another inmate and then falsely imprisoned at the HCADC, from September 2006 to October

2007,  and during that time he was not allowed to return to the Restitution Center and complete his

probation for Forgery, at that facility.  However,  Plaintiff admits that during the time of the alleged

violation of his constitutional rights at the HCADC, he would have been incarcerated and serving

his sentence and probation for a felony conviction of Forgery, irrespective of any of the incidents he

now complains of and/or the claims he maintains against these Defendants.  See Exhibit "A",

P150:L9-13, Deposition of Jerome Johnson.

There is no dispute that Plaintiff was charged in April 2005 with three counts of Forgery,

committed in Gulfport, MS in August 2003.  See Exhibit "B", Multi-Count Indictment.  Plaintiff was

convicted of those charges in June 2005, and sentenced to serve 10 years running concurrent on

Count I, and ten years running concurrent on Count II, with two years to serve.  See Exhibit "A",

P27:L15 - P28:L2.   Plaintiff was then shuffled around within the Mississippi Department of

Corrections, serving time and probation at the HCADC, Harrison County Work Center, Rankin

County, Parchman, and Pascagoula Restitution Center.  See id. at P28:L3 - P30:L19.  Plaintiff was

then transferred to the Hinds County Restitution Center in March 2006, and remained there until

June 2006.  See id. at P30:L20 - P31:L9.

There is no dispute that on June 23, 2006, while serving Plaintiff's probation sentence at the

Hinds County Restitution Center, a Warrant for Arrest on Violation of Probation was issued against

Plaintiff and for his receipt of stolen property, a Sony Digital Camera. See Exhibit "C", Warrant for Arrest on Violation of Probation. Plaintiff was then returned to the HCADC, and to await a hearing on the revocation of his probation. See Exhibit "A", P31:17 - 19.

On August 31, 2006 a HCADC inmate by the name of Eugene Loisel ("Loisel"), filled out an Inmate Request Form stating that he had been raped. See Exhibit "D", Inmate Request Form of Eugene Loisel. This form was given to the nurse and she called to have Loisel brought to Medical. See Exhibit "E", P2, Investigative Report of Carolyn Prendergast.

On September 1, 2006, Loisel was examined by a nurse who noted that there appeared to be some injury to Loisel's rectum with slight bruising around the rectum. Id. The nurse then requested that Loisel be placed into medical for observation. Id. Loisel advised Defendants Ellsberry and Leonard that he was sexually assaulted in C-Block, D-Section. Id. at P3. Loisel reported that two black male inmates from the top tier of his Section entered into his cell and jumped on him. Id. Loisel reported that one black male inmate, identified as Michael Blackmon ("Blackmon") held him down, while the other black male inmate, identified as the Plaintiff, raped him. Id. Loisel was then transported to Memorial Hospital at Gulfport where a victim's sexual assault kit was performed. Id. The doctor noted that he found dried secretions on Loisel's buttock folds. Id.

Defendant Prendergast, the Criminal Investigations Division ("CID") Investigator in charge of investigating Loisel's sexual assault claim (See Affidavit of Carolyn Prendergast, Exhibit "F"), interviewed Loisel, where he confirmed everything he had told Ellsberry and Leonard, and described the inmate that penetrated him as a black male, tall with tattoos on each arm. Id. Loisel stated that one arm had something like "Gautier" tattooed on it and the other had "soldier" tattooed on it. Id. Loisel was shown several pictures of inmates by the correctional officer in which he identified Plaintiff as the inmate that penetrated him. Id. at P4.

On September 1, 2006, Sergeant Rogers also assisted in a shake down of Plaintiff's cell, and discovered a blade that was removed from a county issued razor lying on the top bunk of Plaintiff's cell. Id. Officer Gregory found the handle part of a county issued razor with the blade removed in Blackmon's cell, and both items were placed into the evidence vault. Id. Plaintiff was charged with a Category II Rule Violation for this contraband and for tampering with the cell doors. See Exhibit "G", Rule Violation Report and supporting Narratives/Documents. Plaintiff was disciplined for this Rule Violation, by being placed in Segregation Confinement from September 1, 2006, until September 20, 2006. See Exhibit "H", Affidavit of Eric Tarpley.

On September 5, 2006, Prendergast presented Loisel with a photographic line up of six black males, and he positively identified Plaintiff as the inmate that penetrated him. See Exhibit "E" at P4. Prendergast then prepared a criminal affidavit against Blackmon and Plaintiff for sexual battery, and also prepared affidavits and underlying facts for a search warrant for Plaintiff and Blackmon's body. Id. at P4-5. Prendergast presented the underlying facts and affidavits to the Honorable Judge Melvin Ray. Id. at P5. After review and consideration, Judge Ray issued warrants for Blackmon and Plaintiff, and also issued search warrants for Blackmon and Plaintiff's person. Id., and Exhibit "I", Warrant for Arrest of Jerome Johnson. Plaintiff and Blackmon were then transported to Memorial Hospital at Gulfport, where sexual assault kits were obtained. Id. At this time, Plaintiff did not receive a Rule Violation Report for this charge because this was a criminal matter, and all criminal matters are handled through CID and the Courts, not the HCADC. See Exhibit "H", Affidavit of Eric Tarpley.

On September 6, 2006 Plaintiff made his initial appearance before Judge Ray, being represented by the court appointed attorney K. Wilkerson. See Exhibit "J", Certificate of Initial Appearance. Plaintiff was bound over to await the action of the next Grand Jury which was to

convene on the Court's next term.  See id.  Plaintiff was granted the right to post bond, set at $100,000.  Id.

Continuing with her investigation, on September 7, 2006, Prendergast photographed Plaintiff's tattoos, where she observed the tattoo on the back of Plaintiff's left arm to depict "GUTTER" and  the tattoo on the back of his right arm to depict "SOLDIER"; both as previously identified by Loisel .  See Exhibit "E", at P6.   These were photographed and placed into the investigative case file.  Id.  On September 20, 2006, Plaintiff's Preliminary Hearing was conducted and he was again bound over to await the action of the Grand Jury, and his bond remained at $100,000.  See  Exhibit "K", Mittimus.

On October 11, 2006 Prendergast was contacted by Blackmon's counsel, who requested that Prendergast conduct an interview with inmate Fredrick Sullivan ("Sullivan"), because it was believed that Sullivan had information about this investigation. See Exhibit "E", at P6.  On October 13, 2006, Prendergast and Investigator Fayard interviewed Sullivan, who claimed that Loisel told him that he owed a lot of cigarettes to other inmates and had told an unknown Sergeant that he feared for his life, and that the Sergeant alleged that Loisel had been raped to get him moved out of the block.  Id.  Sullivan admitted that he did not know whether Loisel denied the rape occurred because he did not want the other inmates to know or not.  Id.

On October 27, 2006, Prendergast conducted a second interview with Loisel, where he stated that he denied the rape occurred when speaking with Sullivan because the inmates were giving him a hard time, and that he did not want any of the other inmates to know about the rape.  Id. at P6-7.  Loisel stated that everything he disclosed about the rape was the truth.  Id. at P7.

On December 19, 2006, the sexual assault kits of Loisel, Blackmon and Plaintiff were submitted and accepted by the Mississippi Crime Lab in Biloxi, MS.  See Exhibit "L",  Mississippi

Crime Laboratory - Evidence Submission Form.  On December 22, 2006, Prendergast submitted her entire investigation case file to the District Attorney's Office for Grand Jury review and prosecution. See Exhibit "M", Case File Receipt.  Prendergast then went on maternity leave in January and returned in March 2007.  See Exhibit "F", Affidavit of Carolyn Prendergast.

It wasn't until May 25, 2007 that the sexual assault kits were returned from the Mississippi Crime Lab.  See Exhibit "N", Harrison County Sheriff's Department - Property Invoice - Chain of Custody.  This evidence then required additional DNA testing at another facility and was forwarded on May 30, 2007,  to the Jefferson Parish Regional DNA Profiling Unit in Harvey, LA ("Jefferson Parish Lab").  See id.  The Jefferson Parish Lab concluded their testing on or about August 3, 2007, and returned their report and invoice on or about August 15, 2007. See Exhibit "O", DNA Report and Invoice.  The testing was negative for seminal fluid, and microscopic analysis failed to reveal the presence of any sperm cells.  See id.  Upon receiving the test results, Prendergast quickly forwarded (on August 21, 2007)  the DNA Report to the District Attorney's Office.  See Exhibit "O1", DNA Report.  On October 22, 2007 the District Attorney's Office presented all of the evidence before the Grand Jury and they returned a "NO TRUE BILL", finding that there was insufficient evidence to prosecute this case any further.  See Exhibit "P", November 16, 2007 correspondence from Cono Coranna to Carolyn Prendergast.

Plaintiff alleges that once he was charged with the sexual assault of another inmate he then began sending numerous requests and grievances.  See Exhibit "A", P51:L20 - P52:L24, Deposition of Jerome Johnson.  However, there is no dispute that Plaintiff has no copy or proof that he sent any Request or Grievance Form (to any of these Defendants) prior to February 21, 2007, besides his own conclusory allegation.  See id. at P52:L25 - P53:L2.

The very first Grievance Form of record was received on or about February 21, 2007.  See

Exhibit "Q", Inmate Grievance Form. In this Grievance, Plaintiff refers to his charge of sexual assault, but his main complaint regards inquiry into his placement in disciplinary segregation for the contraband charge, and the disciplinary rules and procedures. See id. On February 23, 2007, Captain Rogers responded, indicating that the sexual assault charge had been turned over to CID and that he needed to contact his attorney or CID. See Exhibit "R", First Step Response Form. Captain Rogers explained that a criminal matter arising at the HCADC, required Plaintiff to be placed in lockdown. See id. At his deposition Plaintiff testified that he then attempted to contact CID on numerous occasions by filing Grievance Forms, but did not receive a response. See Exhibit "A", P59:L13 - P60:L10, Deposition of Jerome Johnson. Plaintiff continued with sending Grievances even though he didn't believe it was the proper procedure, and thinks he may have sent a Grievance to CID directly. Id. Plaintiff admitted that he was able to write and send letters, besides filing Grievances, but did not attempt to contact CID this way. Id. at P60:L11 - 18. Instead, Plaintiff claims to have mailed a letter to Payne's secretary, sometime in February 2007. Id. at P60:L19 - P61:L6. Neither Payne or his secretary received or have record of Plaintiff's alleged correspondence. See Exhibit "S", Affidavit of George Payne, Jr. The filing of this lawsuit and service of the Summons and Complaint on April 16, 2007 are the first notice and knowledge that Defendant Payne had regarding Plaintiff's claims against him. See Id..

Plaintiff was not satisfied with the response he received from Captain Rogers on February 23, 2007, so he filed his "Second Step" request. See Exhibit "T", Inmate Relief Request Form. On March 6, 2007 Cabana responded and informed Plaintiff that criminal charges against inmates are turned over to CID, and Plaintiff would need to contact them for further clarification. See Exhibit "U", Second Step Response Form. Cabana instructed Plaintiff to contact CID, because he was not involved in the investigation or prosecution of Plaintiff's sexual assault charge. See Id, and Exhibit

"V", Affidavit of Donald A. Cabana. Plaintiff filed his final request of record on March 25, 2007, and addressed it to the Shift Supervisor, Defendant Leonard. See Exhibit "W", Inmate Request Form. Leonard responded that Plaintiff needed to contact his attorney K. Wilkerson. See id. Again, Leonard was not involved in the investigation or prosecution of Plaintiff's sexual assault charge, so he instructed Plaintiff to contact the person he thought would be able to assist him. See id., and Exhibit "X", Affidavit of Earl Leonard.

As the foregoing undisputed facts provide, Plaintiff was appropriately detained at the HCADC awaiting a hearing on revocation of his probation, during that time an inmate accused him of sexual assault, an investigation of those claims were conducted and based upon the evidence obtained a warrant was issued and Plaintiff was charged, the investigative file was turned over to the District Attorney's Office for prosecution, and the Grand Jury finally returned a "No True Bill", approximately one year after he was charged. While the Plaintiff is unhappy about the time he spent at the HCADC, none of these Defendants actions rise to the level of a constitutional violation.

As will be discussed below, there was probable cause to arrest Plaintiff for this charge, and Defendants answered Plaintiff's inquiries regarding the status of his criminal charge on each occasion and directed him to where it was believed he needed to go to find the answers. There simply was never any deliberative intent and/or indifference on behalf of any of these Defendants to deprive Plaintiff of a constitutionally protected right. Defendants are entitled to qualified immunity on all of Plaintiff's claims. Alternatively, and even if there can be some demonstration of a constitutional violation, these Defendants' actions were objectively reasonable under the circumstances and/or amounted, at most, to a potential claim of negligence. This is not sufficient as a matter of law and Defendants would ask this Honorable Court to dismiss all Plaintiff's claims against these Defendants, with prejudice.

## II.  LEGAL ARGUMENT

**A.      Summary Judgment Standard**

A motion for summary judgment should be granted where: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the trial court views the evidence in the light most favorable to the party resisting the motion. See Howard v. City of Greenwood, 783 F. 2d 1311, 1315 (5th Cir. 1986).  However, to survive summary judgment, the non-movant must demonstrate the existence of a disputed issue of material fact.  See Anderson v. Liberty Lobby, 477 U.S. 242, 247-48 (1986).  A plaintiff confronted with a summary judgment motion may not rest on mere conclusory allegations.  See Dunlap v. City of Tupelo, No. 1:95CV67-D, 1996 U.S. Dist. LEXIS 21333 *16, n.8 (N.D. Miss. Mar. 8, 1996).

**B.      These Defendants Are Entitled to Qualified Immunity on Plaintiff's Individual Capacity § 1983 Claims**

Defendants in their individual capacities are entitled to assert the defense of qualified immunity.  See Gagne v. City of Galveston, 805 F.2d 558, 559 (5th Cir. 1986).  The qualified immunity inquiry involves first, whether the alleged constitutional violation implicates a clearly established constitutional right, and second, if the plaintiff meets this threshold, whether the defendant-official's conduct was objectively reasonable in light of clearly established law at that time. See Hare v. City of Corinth, 36 F.3d 412, 414 (5th Cir. 1994); Salas v. Carpenter, 980 F.2d 299, 305-06 (5th Cir. 1992).

The initial burden is on the defendant-official to plead his good faith and establish that he was acting within the scope of his discretionary authority.  Once the defendant has done this, the burden shifts to the plaintiff to rebut the qualified immunity defense by establishing that the official's

conduct violated clearly established constitutional law. <u>The burden of demonstrating that the official did or did not violate a clearly established federal right then lies with the plaintiff</u>, not the official. See <u>Salas</u>, 980 F.2d at 306 (emphasis added).

The second step of the analysis, the objective reasonableness inquiry, focuses on whether a reasonable person would have believed his conduct was constitutional in light of information available to him and the clearly established law. See <u>Glenn v. City of Tyler</u>, 242 F.3d 307, 312 (5th Cir. 2001). Under this standard, even law enforcement officers who reasonably but mistakenly violate the Constitution receive immunity. <u>See id</u>.

The United States Supreme Court has reminded us that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." <u>Saucier v. Katz</u>, 121 S. Ct. 2151, 2157 (2001)(quoting <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986)). With respect to whether or not an officer has probable cause to make an arrest, officers "can have reasonable, but mistaken, beliefs as to the facts establishing the existence of probable cause or exigent circumstances, for example, and in those situations the courts will not hold that they have violated the Constitution." <u>Id.</u>

Qualified immunity shields police officers from suit for a wrongful arrest if a reasonable officer could have believed that the arrest was lawful in light of clearly established law and the information the officer possessed at the time of the arrest. Even a law enforcement official who reasonably but mistakenly concludes that probable cause to arrest exists is entitled to immunity. <u>See</u> <u>Mendenhall v. Riser</u>, 213 F.3d 226, 230 (5th Cir. 2000), <u>cert.denied</u>, 2001 U.S. LEXIS 136 (Jan. 8, 2001); <u>see also</u> <u>Hunter v. Bryant,</u> 502 U.S. 224, 227 (1991). If reasonably competent officers could disagree on the issue, immunity should be granted. <u>See</u> <u>Mendenhall</u>, 213 F.3d at 231. Finally, the Fifth Circuit has held that a public official is duty bound to execute an order which is valid on its face. <u>See</u> <u>Simpson v. Wells Lamont Corp.</u>, 494 F.2d 490, 494-95 (5th Cir. 1974).

For qualified immunity purposes, a defendant's acts are deemed objectively reasonable unless it can be said that

> all reasonable officials in the defendant's circumstances, which include facts known to the defendant, would have then realized that the defendant's conduct violated the Constitution or federal statute.

Whiting v. Tunica County, 222 F.Supp. 2d 809, 815-16(N.D. Miss. 2002)(emphasis added).

In addressing qualified immunity at the summary judgment stage, the Court here must find that Plaintiff can demonstrate that all reasonable officials would conclude that the Defendants' actions violated a federally protected right. See id. at 818. If reasonable officers could disagree on this issue, immunity applies. See id. (citing Poe v. Leonard, 282 F.3d 123, 125 (2nd Cir. 2002.) Each Defendants' conduct here was objectively reasonable. At worst, even if reasonable officers could disagree as to whether their actions violated a constitutional right and whether their actions were reasonable, they are immune. See id.

### 1. Baker v. McCollan Means that Plaintiff Has Not Alleged the Deprivation of a Constitutional Right by These Defendants

Again, Plaintiff's complaint is that he was innocent of the sexual assault charge and he was falsely charged with that offense, and then suffered false imprisonment as a result; beginning in September 2006 and ending in October 2007. The United States Supreme Court has addressed the question of a plaintiff's claim that his Fourteenth Amendment rights were violated where he alleged that, following his arrest, the defendant officers negligently detained him under a case of mistaken identity. See Baker v. McCollan, 443 U.S. 137 (1979). The plaintiff's brother had procured a duplicate copy of his driver's license but managed to substitute his picture for the plaintiff's on it. When plaintiff was later stopped for running a traffic light and a warrant check revealed that an individual by his name was wanted, he was taken into custody, over his protests of mistaken

identification. See id. at 140-41. In reversing the trial court's judgment for the defendants, the Fifth Circuit saw the question as whether the defendant sheriff was entitled to qualified immunity, which depended on the reasonableness of his failure to institute an identification procedure that would have discovered the mistaken identity. See id. at 141-42. The Supreme Court reversed and reinstated the trial court's directed verdict for defendants, concluding that the plaintiff had not been deprived of any rights secured by the Constitution, and therefore had no claim under section 1983. See id. at 146-47.

According to the Fifth Circuit, the "sheriff or arresting officer has a duty to exercise due diligence in making sure that the person arrested and detained is actually the person sought under the warrant and not merely someone of the same or similar name." Id. at 146. The Supreme Court rejected this reasoning, holding that section 1983 "imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." Id. Just as a medical malpractice claim does not become a constitutional violation merely because the victim is a prisoner, "false imprisonment does not become a violation of the Fourteenth Amendment merely because the defendant is a state official." See id.; see also DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 202 (1989) (holding that Fourteenth Amendment does not transform every tort committed by state actor into a constitutional violation).

The Baker Court held that the Fourteenth Amendment does not protect against all deprivations of liberty, only those accomplished "without due process of law." See id. at 145. Given the requirement that the arrest be only on probable cause,

> we do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent. Nor is the official charged with maintaining custody of the accused named in the warrant required by the

Constitution to perform an error-free investigation of such a claim. The ultimate determination of such claims of innocence is placed in the hands of the judge and the jury.

Id. at 145-46 (emphasis added).

As the Supreme Court held, the Constitution

does not guarantee that only the guilty will be arrested.  If it did, §1983 would provide a cause of action for every defendant acquitted–indeed, for every suspect released.  Nor are the manifold procedural protections afforded criminal defendants under the Bill of Rights "without limits." Patterson v. New York, 432 U.S. 197, 208 (1977).  "Due process does not require that every conceivable step be taken, at whatever cost, to eliminate the possibility of convicting an innocent person."  (citation omitted).

Id. at 145 (emphasis added).

Courts within the Fifth Circuit have repeatedly applied this principle, holding that where a plaintiff is arrested on a facially valid warrant, there is no claim of a deprivation of rights secured by the Constitution  and therefore no claim stated under section 1983.  See Simons v. Clemons, 752 F.2d 1053, 1055 (5th Cir. 1985); Winslow v. Dallas County Sheriff Dept., 2004 U.S. Dist. LEXIS 25137, *4-6(N.D. Tex. Dec. 13, 2004)(holding that a person arrested pursuant to valid warrant is not entitled to a separate  judicial determination that there is probable cause to detain him, and that Constitution does not guarantee only the guilty will be arrested, therefore plaintiff's claim that he was unlawfully confined  for seven (7) months dismissed); Jackson v. Jackson County, 956 F.Supp 1294, 1298-99 (S.D. Miss. 1995)(granting defendants summary judgment and citing Baker's holdings that due process does not require that every conceivable step be taken to  limit the possibility of convicting an innocent person, and that officials charged with maintaining custody of the accused named in the warrant are not required to perform an error free investigation of a mistaken identity claim).  In granting qualified immunity, the Jackson Court repeated the well settled

maxim that "there is no remedy under section 1983 for the negligent actions of state actors." 956 F. Supp. at 1303.

These Defendants were not required to take every conceivable step to prevent Plaintiff from being detained mistakenly. In order to survive summary judgment on both his official or individual capacity section 1983 claims, Baker requires Plaintiff to prove the violation of a constitutional right. Simply alleging or even proving false arrest and/or imprisonment, malicious prosecution, or conspiracy, alone, are insufficient to survive summary judgment as to this required element of his federal claims.

In this case, Defendant Prendergast[1] had more than enough information, gathered during her investigation, to show probable cause to charge Plaintiff with sexual assault. Probable cause exists "when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." Glenn v. City of Tyler, 242 F.3d 307, 313 (5th Cir. 2001). Prendergast had before her Loisel's claims, the nurse's examination and appearance of some injury to his rectum, the removal of dried secretions, Loisel's photo lineup identification of the Plaintiff and identification of Plaintiff's tattoos. This information was clearly sufficient to warrant any person of reasonable caution, including Prendergast, in the belief that this Plaintiff had committed the sexual assault offense against Loisel. Judge Ray agreed, and thus issued the warrants for Plaintiff's arrest and for search of his person for DNA evidence. In his Complaint Plaintiff does not dispute this and admits that Prendergast "appears to have done everything legal and by the book." See DN 9, P5, ¶6.

Because Plaintiff's warrant and arrest were based upon probable cause and because Plaintiff

---

[1] Prendergast was the only Defendant herein charged with investigating Loisel's claims of sexual assault against Plaintiff. See Exhibit "F", Affidavit of Carolyn Prendergast, and Section 3. b., *infra*.

admits that Prendergast's investigation was conducted "legally and by the book", Plaintiff's situation in this case is similar to that presented in <u>Baker</u>. That is, absent an attack on the validity of the warrant under which he was incarcerated and awaiting prosecution of the criminal charge, Plaintiff's complaint is simply that despite his isolated and mostly unsubstantiated protests, he was detained for a long period of time. Plaintiff's claims, like those in <u>Baker</u>, do not rise to the level of a constitutional violation.

2.   **The Amount of Time Plaintiff Waited for his Sexual Assault Charge to be Prosecuted and Presented to the Grand Jury Does Not Rise to the Level of a Constitutional Violation, Against These Defendants**

Plaintiff makes much of the fact that he was incarcerated for over a year, while awaiting prosecution of his sexual assault charge. Defendants would first show that none of them were responsible for actually prosecuting Plaintiff's charges and presenting those charges before the Grand Jury, as this is the responsibility of the District Attorney's Office. In any event, and regardless of the length of time involved, merely negligent conduct cannot be the basis for a claim under the Fourteenth Amendment. <u>See</u> <u>Robertson v. Bowles</u>, 2002 U.S. Dist. LEXIS 3822, *9-10 (N.D. Tex. Mar. 8, 2002). The district court in <u>Robertson</u> held that an extended incarceration caused by negligent, rather than intentional, conduct does not violate substantive due process as a matter of law. <u>See</u> <u>id.</u>; <u>see also</u> <u>Martin v. Dallas County</u>, 822 F.2d 553, 555 (5th Cir. 1987) (extended incarceration not actionable if it was the result of negligent rather than intentional conduct); <u>Winslow v. Dallas County Sheriff's Dept.</u>, 2004 U.S. Dist. LEXIS 25137, *5 (N.D. Tex. Dec. 13, 2004) (holding that seven (7) month incarceration did not violation the Constitution).

In <u>Sanders v. English</u>, 950 F.2d 1152 (5th Cir. 1992), plaintiff was arrested pursuant to a warrant after he had been identified as the assailant in an armed robbery. Within two (2) days after the arrest, information came to the arresting officer's attention indicating that he had arrested the

wrong man, however the officer ignored the information.  See id. at 1154.  The plaintiff was

appointed a criminal defense attorney who persuaded the prosecuting attorney and the judge to

reduce his bond so he could get out of jail, but by then he had already been incarcerated for fifty (50)

days.  The grand jury later declined to indict the plaintiff and he filed suit.  See id.  With regard to

the claim against the arresting officer's supervisor, the chief of police, there was no dispute that the

chief played no role in any activity leading up to the plaintiff's arrest.  Although the chief was made

aware of statements from alibi witnesses on behalf of the plaintiff, he did not pursue the matter any

further or attempt to investigate the plaintiff's claim of innocence.   The chief was dismissed from

the case.  See id. at 1159-60.  In reaching this conclusion, the Court held that dismissal of the chief

was appropriate because his individual conduct in not investigating the claim of innocence was, at

worst, no more than negligent, and further because there is no respondeat superior liability under

section 1983.

     The Sanders Court cited to its decision in Simmons v. McElveen, 846 F.2d 337, 339 (5th Cir.

1988), in which it reviewed a civil rights case filed by an arrestee who alleged that his incarceration

for eight (8) months was illegal because police officers failed to properly investigate a lead that

would have conclusively proven his innocence.  See id. at 1161.  In Simmons, after the arrest

exculpatory evidence surfaced, but police did nothing to forward the information to the district

attorney.  See id. (discussing Simmons).  The Simmons Court upheld summary judgment in favor

of the police officers, reasoning that, although the investigation may not have been conducted as

efficiently or expeditiously as possible, "their conduct simply does not exceed the level of

negligence."  Id. at 1162 (quoting Simmons, 846 F.2d at 239).  As the Sanders Court emphasized,

summary judgment in Simmons was appropriate despite an eight (8) month detention because the

evidence adduced for summary judgment purposes showed  at most, that the police officers were

negligent in following up on the exonerative leads. See Sanders, 950 F.2d at 1162.

In this case, based on the undisputed facts there is simply no evidence that any of these Defendants' conduct, at worst, rose above the level of mere negligence. Again, on December 19, 2006, the sexual assault kits of Loisel, Blackmon and Plaintiff were submitted and accepted by the Mississippi Crime Lab in Biloxi, MS. On December 22, 2006, Prendergast submitted her entire investigation case file to the District Attorney's Office for Grand Jury review and prosecution. It wasn't until May 25, 2007 that the sexual assault kits were returned from the Mississippi Crime Lab, and then required additional DNA testing at another facility. The evidence was forwarded to the new facility on May 30, 2007, and was not returned to CID until August 15, 2007. Upon receiving the test results, Prendergast quickly forwarded the DNA Report to the District Attorney's Office; on August 21, 2007.

Based upon the foregoing authority, a lack of intentional conduct precludes a violation of substantive due process, as a matter of law. Despite the fact that Prendergast had no control over when the DNA testing would be completed, she never intentionally sought to delay the prosecution of Plaintiff's sexual assault charge. While the final part of Prendergast's investigation (submitting the DNA evidence to the District Attorney), did not occur as efficiently and expeditiously as the Plaintiff would have liked, her conduct could not exceed the arguable level of negligence. As such, the amount of time Plaintiff waited for his sexual assault charge to be prosecuted and presented to the Grand Jury does not rise to the level of a constitutional violation, and all Plaintiff's claims should be dismissed.

### 3. Plaintiff's Claims for False Arrest/Imprisonment, Malicious Prosecution, and Conspiracy, Fail as a Matter of Law

In his Complaint(s) and other Pleadings, Plaintiff expressly and impliedly makes Section 1983 claims against each of these Defendants for False Arrest/Imprisonment, Malicious Prosecution, and Conspiracy. All of these claims fail because they too do not rise to the level of a constitutional violation and are insufficient as a matter of law.

#### a. False Arrest/Imprisonment

To prevail on a Section 1983 false arrest/false imprisonment claim, Plaintiff must show that Defendants did not have probable cause to arrest him. Haggerty v. Texas Southern University, 391 F.3d 653, 655 (5th Cir. 2004). Again, probable cause exists "when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." Glenn v. City of Tyler, 242 F.3d 307, 313 (5th Cir. 2001). Thus, Defendants are entitled to qualified immunity if reasonable officers in their positions could have believed that, in light of the totality of the circumstances of which they were aware, there was a fair probability that Plaintiff had committed or was committing an offense. See Haggerty, 391 F.3d at 655-656. As discussed *supra* there was ample facts to support Prendergast's finding of probable cause, Judge Ray agreed, and the valid warrant for Plaintiff's arrest was issued. Therefore, Plaintiff's claims for false arrest/imprisonment fail, and should be dismissed.

#### b. Malicious Prosecution

"'[M]alicious prosecution' standing alone is no violation of the United States Constitution, and that to proceed under 42 U.S.C. § 1983 such a claim must rest upon a denial of rights secured under federal and not state law." Haggerty at 658, citing Castellano v. Fragozo, 352 F.3d 939, 942

(5th Cir. 2003).  Again, Plaintiff has not sufficiently alleged a constitutional violation in the first place.  As such, Plaintiff's claims against each of these Defendants fail.  "The essence of a malicious prosecution claim is a groundless prosecution." Brummett v. Camble, 946 F.2d 1178, 1183 (5th Cir. Ct. App. 1991). This clearly did not happen in this case, and these Defendants would request that Plaintiff's claims for malicious prosecution, against all Defendants, be dismissed with prejudice.

Additionally, Plaintiff's claim for malicious prosecution fails for the same reason his false arrest/imprisonment claims fail, the existence of probable cause. See Doines v. Johnson, 2006 U.S. Dist. LEXIS 9902 *10 (N.D. Tex. 2006), stating that "the initiation of charges without probable cause is the core of malicious prosecution."   Defendants would also show that pursuant to Mississippi law, Defendant Prendergast is the only conceivable Defendant that could be charged with malicious prosecution.[2]   Plaintiff's claims against the remaining Defendants for Malicious Prosecution are insufficient as a matter of law, and should be dismissed as against those Defendants.

### c.    Conspiracy

"A claim for civil conspiracy requires allegations of facts sufficient to show that there was an agreement among defendants to inflict wrong or injury upon the plaintiff and an overt act that results in damages." Stuart v. Frazier, 2002 U.S. Dist. LEXIS 9169, * 8 - 9 (N.D. Tex. 2002).  In this case no allegation exits that would allow any inference that these Defendants conspired to deprive Plaintiff of his constitutional rights, nor can he present any facts showing an agreement

---

[2] In Bankston v. Pass Road Tire Ctr., 611 So. 2d 998, (Miss. 1992), the Mississippi Supreme Court stated that the test of liability for malicious prosecution is: "was defendant actively instrumental in putting the law in force . . . [and that] . . .[m]ere passive knowledge of, or acquiescence or consent in, the acts of another is not sufficient to make one liable . . ." Bankston at 1004 - 1005.  In this case, Defendant Prendergast is the only Defendant arguably responsible for actively putting the law in force, and in her duties as the investigator.  At most, the remaining Defendants had a passive knowledge (if any knowledge at all) of the sexual assault charge against Plaintiff and in the presentation of evidence to the District Attorney's Office.  However, none of these Defendants could be charged with the "proximate and efficient cause of maliciously putting the law in motion." Id. at 1005.

-19-

between these Defendants.

In Plaintiff's Complaint(s), other pleadings and deposition testimony, there is a complete absence of any allegation of fact to show that these Defendants had any agreed plan to inflict wrong or injury upon the Plaintiff. "'Mere conslusory allegations of conspiracy cannot, absent reference to material facts,' state a substantial claim of federal conspiracy under 42 U.S.C. § 1983." Stuart, 2002 U.S. Dist. LEXIS 9169 at* 9, citing Hale v. Harney, 786 F.2d 688, 690 (5th Cir. 1986). Plaintiff explains his basis for conspiracy on the grounds that he "was an innocent person, so I felt like they were conspiring against me." See Exhibit "A", Deposition of Jerome Johnson. Simply stating that Plaintiff "felt" like he was conspired against is insufficient to state a claim for conspiracy pursuant to Section 1983. Additionally, and as discussed herein, Plaintiff has failed to establish any underlying violations of his constitutional rights in the first place. Whenever there has been no underlying violation of section 1983, no actionable conspiracy follows. Id. at 11. In this case, Plaintiff's conspiracy claims fail as a matter of law.

### 3. Even Assuming the Violation of a Constitutional Right by These Defendants, Their Conduct Was Objectively Reasonable Under the Circumstances

#### a. Donald Cabana

Plaintiff claims that he inquired into the status of his criminal charge directly to Cabana. The first notice that Cabana had regarding Plaintiff's inquiry began with the filing of his grievance forms on Febrauary 21, 2007. See Exhibit "V", Affidavit of Donald Cabana. Not satisfied with the initial grievance response Plaintiff submitted (on February 26, 2007) his Second Step grievance, directed to Defendant Cabana. See Exhibit "I", Inmate Relief Request Form, Grievance Number 02 - 048 - 07. Cabana responded on March 6, 2007 (approx. eight days later), informing Plaintiff that he needed to contact CID for further clarification. See Exhibit "U", Second Step Response Form.

Again, Cabana was not responsible for investigating this sexual assault charge, nor prosecuting it.  <u>See</u> Exhibit "V", Affidavit of Donald Cabana.  Cabana answered every known grievance from the Plaintiff, the best way he knew how.  Even if Plaintiff could show that Cabana, or any of these Defendants for that matter, failed to remedy any of his complaints (which is denied by these Defendants), this does not violate a constitutional right.  <u>See</u> <u>Allen v. Herrera</u>, 2006 U.S. Dist. LEXIS 75292 *15 (S.D. Tex. 2006).   Since a plaintiff has no liberty interest in a satisfactory resolution of his grievances, any failures by any of these Defendants (including Cabana) to address or remedy his grievances do not violate a constitutional right.  <u>Id</u>. at *16.  Additionally, even if Cabana, or any of these Defendants, were aware of Plaintiff's grievances and claims of innocence, but failed to personally investigate those claims, this is at worst negligence, and therefore not a constitutional violation.  <u>See</u> <u>Sanders v. English</u>, 950 F.2d 1152 (5th Cir. 1992).  Cabana's actions towards Plaintiff were objectively reasonable under the circumstances and he believed that his conduct was constitutional in light of the information available to him at the time. <u>See</u> Exhibit "V", Affidavit of Donald A. Cabana.

     **b.**     **Earl Leonard and Nathan Ellsberry**

Defendant Leonard's and Ellsberry's actions were also objectively reasonable under the circumstances.  Leonard and Ellsberry, were the first officers to speak to Loisel's about his sexual assault claim against Plaintiff.  <u>See</u> Exhibit "X", Affidavit of Earl Leonard; and Exhibit "Y", Affdavit of Nathan Ellsberry.  Loisel informed them that Plaintiff had raped him he needed medical attention.  Leonard and Ellsberry then prepared a narrative of this initial meeting and Loisel's claims, and turned it over to the Investigator.  <u>See id</u>.  After that, their responsibility to further investigate Loisel's claim  ceased.  <u>Id</u>.  Any officer in Leonard and Ellsberry's position would have surely believed that their conduct was constitutional in light of the information available to him at the time.

Plaintiff also sent an Inmate Request Form to Defendant Leonard on March 25, 2007, inquiring about the status his criminal case. <u>See</u> Exhibit "W", Inmate Request Form. Leonard responded by informing Plaintiff to contact his attorney, K. Wilkerson. <u>See id</u>. Since Leonard had no other information regarding Plaintiff's sexual assault charges, and was in no way responsible for handling such matters, his actions towards Plaintiff were objectively reasonable under the circumstances, and he believed that his conduct was constitutional in light of the information available to him at the time. <u>See</u> Exhibit "X", Affidavit of Earl Leonard.

### c. Carolyn Prendergast

As provided by the facts and discussion herein, Prendergast believed her conduct was objectively reasonable under the circumstances. She conducted her investigation, filed the charges against Plaintiff and then turned over her investigative file to the District Attorney's Office. Then, as soon as the DNA evidence had been fully analyzed and returned to her, she quickly turned that information over to the District Attorney's Office. While it may have taken longer than the Plaintiff may have liked, Prendergast acted as quickly as she could under the circumstances. Certainly an officer in Prendergast's position would have believed that their conduct was constitutional in light of the information available to her at the time. Again, Plaintiff's Complaint agrees that Prendergast's investigation was "done by the book and legal." <u>See</u> DN 1.

### d. Steve Campbell

In his Deposition Plaintiff testified that his complaint against Campbell arises from his alleged refusal to respond to numerous requests he allegedly submitted. <u>See</u> Exhibit "A", P85:L6 - 9, Deposition of Jerome Johnson. During the time frame of the subject of Plaintiff's Complaint, September 2006 - October 2007, Campbell was Director of the Professional Standards Unit. <u>See</u> Exhibit "Z", Affidavit of Steve Campbell. The Professional Standards Unit is responsible for

investigation all matters of misconduct by the *employees* of the Harrison County Sheriff's Department, including those working at the HCADC. See id. Neither Campbell, nor any of the officers under him were involved, or otherwise responsible for investigating criminal matters of any kind, including those arising at the HCADC. See id. All criminal investigations and inquiries were conducted through CID. See id. All inquiries from an inmate regarding the status of their criminal matters would have been directed to CID or the Security Captain, even if addressed directly to Campbell or his staff. See id. While Campbell does not recall ever receiving a request grievance from the Plaintiff, it would have been forwarded to CID or the Security Captain. See id. But again, even if Campbell had failed to respond or remedy Plaintiff's grievances, this does not violate a constitutional right. See Allen, 2006 U.S. Dist. LEXIS 75292 at *15 - *16; and Sanders, 950 F.2d 1152 (5th Cir. 1992).

   **e.      George Payne, Jr.**

   Plaintiff claims that Payne failed train/supervise his employees (specifically Cabana) and that he failed to respond to his grievance. See Exhibit "A", P93:L5 - 22. First, Payne would show that he did not have any personal interaction with the Plaintiff at any time while he was incarcerated at the HCADC, or thereafter. See Exhibit "S", Affidavit of George Payne, Jr. With respect to Plaintiff's allegation of failure to train, all of the employees at the HCADC have been trained in accordance with the policies and procedures of the HCADC, including Cabana. See id. With respect to Plaintiff's allegation for failure to supervise, due to the nature and size of the HCADC, Payne could not personally supervise all employees at one time; however, there were in place adequate policies and procedures to ensure all officers were supervised and acted in a lawful and professional manner and in compliance with the department's policies and procedures, general orders, and the laws of Mississippi. Id. At all relevant times, a sufficient chain of command existed at the HCADC

which enabled all officers to be adequately supervised.  Id.

Plaintiff's primary complaints seem to suggest these Defendants failed to follow the policies and procedures (which Plaintiff somehow believes has the force and effect of law), and thus violated his due process rights.  In this Circuit, the law is clear "that a prison official's failure to follow the prison's own policies, procedures and regulations does not constitute a violation of due process, if constitutional minima are nevertheless met."  Woods v. Charmichael, 2007 U.S. Dist. LEXIS 88808 *5 (S.D. Miss. 2007), citing Myers v. Klevenhagen, 97 F.3d 91, 94 (5th Cir. 1996).  In this case, and discussed herein, the constitutional minima has been met by these Defendants, and any claim that Plaintiff could make regarding a failure to follow the policy and procedures fails.  While these Defendants deny that they failed to follow their policies and procedures, their conduct nonetheless provided Plaintiff his due process rights.

Next, and as discussed *supra*, Plaintiff claims to have mailed a letter to Payne's secretary, sometime in February 2007.  Neither Payne or his secretary received or have record of Plaintiff's alleged correspondence.  See Exhibit "S", Affidavit of George Payne, Jr..  The filing of this lawsuit and service of the Summons and Complaint on April 16, 2007 are the first notice and knowledge that Payne had regarding Plaintiff's claims.  Id.  Again, Plaintiff offers no support that he mailed this alleged letter, besides his own conclusory allegation.  But even if Payne had failed to respond or remedy Plaintiff's one alleged grievance directed to Payne, this does not violate a constitutional right.  See Allen, 2006 U.S. Dist. LEXIS 75292 at *15 - *16; and Sanders, 950 F.2d 1152 (5th Cir. 1992).

f.	Kenneth Rogers

Plaintiff's claims against Rogers are simply that he "failed to stop or fix the wrong" and that "he should have made sure everything was - - should have been done much better than it was."  See

Exhibit "A", P94:L15 - Deposition of Jerome Johnson. This simply does not articulate a sufficient claim that Rogers violated any constitutional right. Even if it does, Rogers actions were objectively reasonable under the circumstances.

Rogers was the Security Captain at the times relevant to the Plaintiffs Complaint(s). <u>See</u> Exhibit "AA", Affidavit of Kenneth Rogers. Rogers was not responsible for investigating Plaintiff's sexual assault charge, nor prosecuting it. <u>See id</u>. The first, and only, time that Rogers had been aware of Plaintiff's inquiry was when he received Plaintiff's Inmate Grievance Form, dated February 21, 2007. <u>Id</u>. Rogers responded by informing Plaintiff that his sexual assault charge had been turned over to CID, and that he needed to contact his attorney or CID about his case. <u>See id</u>., and Exhibit "R", First Step Response Form, dated February 23, 2007. Roger's Response was forwarded to the Grievance Officer, which was approved on February 26, 2007. <u>See</u> Exhibit "T", Inmate Relief Request Form.

Since Rogers answered every known grievance made by Plaintiff, to the best of his knowledge and in accordance with the policies and procedures to the HCADC, his actions towards Plaintiff were objectively reasonable under the circumstances and he believed that his conduct was constitutional in light of the information available to him at the time. <u>See</u> Exhibit "AA", Affidavit of Kenneth Rogers.

### g. Elaine Lege

Plaintiff's claims that Lege "knew of the wrong, but did nothing to remedy the wrong when there was a duty to do so." <u>See</u> Request to Amend Complaint, DN 10, P6-7. Plaintiff claims that Lege was the officer that came and talked to him regarding his charges for contraband, and during the time he was also charged with the sexual assault. <u>See</u> Exhibit "A", P95:L16-19. Deposition of Jerome Johnson. Besides this interaction, Plaintiff makes no further allegation of communication

or contact with Lege. None of Lege's actions towards Plaintiff, even if true, would rise to the level of constitutional violation.

Lege was a Sergeant at the times relevant to the Plaintiffs Complaint(s). <u>See</u> Exhibit "BB", Affidavit of Elaine Lege. Lege was not involved or otherwise responsible for investigating Plaintiff's sexual assault charge, nor prosecuting it. <u>See id</u>. While Lege does not recall speaking to the Plaintiff regarding the contraband charges, there is no allegation of fact which could be shown that would establish a constitutional violation. <u>Id</u>.

**C.      Plaintiff's Official Capacity Section 1983 Claims Fail as to Each Defendant**

Plaintiff fails as a matter of law to state an official capacity section 1983 claim against Cabana, Leonard, Prendergast, Campbell, Rogers, Ellsberry or Lege, since there is no allegation that any of these individuals were policy makers, and further since official capacity claims against these individuals are essentially claims against the governmental entity by which they were employed, Harrison County and the Harrison County Sheriff. Because Payne, the acting Sheriff of Harrison County at the time, and the undisputed policy making official for the Sheriff's Office (<u>See</u> Exhibit "S", Affidavit of George Payne, Jr.), is a Defendant, Plaintiff's official capacity claims against the other Defendants are duplicative, legally defective, and should be dismissed.

With respect to the official capacity section 1983 claims against Payne, claims against governmental agents or officers in their official capacities are essentially claims against the governmental entity itself. <u>See</u> <u>Moore v. Carroll County, Miss.</u>, 960 F. Supp. 1084, 1087 n.3 (N.D. Miss. 1997). The suit is against the office that the employee holds and not the actual employee. <u>See</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 165 (1985). Plaintiff's official capacity claims against Payne are in reality claims against Harrison County, or the office of the Sheriff of Harrison County, which constitute a local governmental entity.

A plaintiff must establish the existence of three elements to make a claim for section 1983 municipal liability: (1) the existence of a policy maker; (2) the existence of an official policy; and (3) the violation of constitutional rights whose "moving force" is the policy or custom. See <u>Monell v. Dep't of Social Servs.</u>, 436 U.S. 658, 694 (1978); <u>Piotrowski v. City of Houston</u>, 237 F.3d 567, 578 (5th Cir. 2001). According to the Fifth Circuit, municipal liability cannot be predicated on the theory of respondeat superior, so that the alleged unconstitutional conduct must be directly attributable to the municipality through some sort of official action. See <u>Piotrowski</u>, 237 F.3d at 578. "Isolated, unconstitutional actions by municipal employees will almost never trigger liability." <u>Id.</u>

The three requirements for municipal liability outlined above are necessary in order to distinguish between individual violations by local employees and those that can be fairly attributed to conduct by the governmental entity itself. See <u>id.</u> Municipal liability cannot be imposed for individual unconstitutional acts of lower level employees. See <u>id.</u> Instead, the alleged constitutional violation must occur pursuant to an official custom or policy in order for municipal liability to exist. See <u>id</u>. <u>Monell</u> established a high threshold of proof in this regard by stating that the official policy must be the "moving force" behind the alleged violation. See <u>id</u>. at 580. An official policy cannot normally be inferred from a single unconstitutional act. See <u>Whiting</u>, 222 F. Supp. 2d at 816. Finally, a plaintiff must show that the municipality was deliberately indifferent to the known consequences of the allegedly unconstitutional custom or policy. Poor judgment alone is not facially unconstitutional. See <u>Piotrowski</u>, 237 F.3d at 578.

With respect to any alleged omissions by Payne's employees, again it is well settled that municipalities may not be held liable except for action pursuant to official municipal policy which causes a constitutional tort. See <u>Collins v. City of Harker Heights, Tex.</u>, 503 U.S. 115, 121 (1992). A municipality cannot be held liable solely because it employs a tortfeasor, in other words, it cannot

be held liable under section 1983 on a theory of respondeat superior. See id. Thus, a local government may not be sued under section 1983 for an injury inflicted solely by its employees or agents. Instead, it is when the execution of a government's policy or custom inflicts the injury that the government as an entity is responsible. See id. (citing Monell v. New York City Dep't of Social Servs., 436 U.S. 658 (1978)). The import of this rule is that the "wrongful conduct of a single officer without any policymaking authority did not establish municipal policy." Id. at 121 (citing Oklahoma City v. Tuttle, 471 U.S. 808 (1985)).

In some circumstances, the municipality can be held liable for constitutional violations resulting from its failure to train municipal employees. See id. at 122. The Supreme Court stressed, however, that it "did not suggest that all harm-causing municipal policies are actionable under §1983 or that all such policies are unconstitutional." Id. at 123. Inadequate training of police officers can be characterized as the cause of a constitutional tort if, and only if, the failure to train amounted to deliberate indifference to the rights of persons with whom the police come into contact. See id. at 123-24.

A sheriff not personally involved in the acts depriving a plaintiff of constitutional rights can be liable under section 1983 if (1) the sheriff failed to train or supervise the officers involved; (2) there is a causal link between the alleged failure to supervise or train and the alleged violation of rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights. See Whiting v. Tunica County, 222 F.Supp. 2d 809, 816 (N.D. Miss. 2002). Deliberate indifference in the context of section 1983 entails a greater level of culpability than mere negligence, so that mere negligence is inadequate to impose liability. See id. at 817. Ordinarily, proof of a single incident, rather than a pattern of serious similar violations, is insufficient to sustain a claim that a lack of training or supervision caused a constitutional violation. See id. (citing Snyder

v. Trepagnier, 142 F.3d 791, 798-99 (5th Cir. 1998)).

The official capacity claims against Payne are contained in Plaintiff's Request to Amend Complaint (DN 10). Plaintiff alleges that Payne mismanaged his subordinates, failed to set up policies that help guide his subordinates, and failed to train and supervise them. See DN 10, P5.

In this case, Plaintiff cannot support an official capacity claim against Payne because, in the first instance, he does not state the deprivation of a constitutional right, as more fully argued above.

Next, what occurred here was a single incident, which is not normally sufficient to support a claim for official capacity liability. See Exhibit "S", Affidavit of George Payne. Plaintiff cannot show that Sheriff Payne was deliberately indifferent to any need for training, as all employees are trained according the HCADC Policies and Procedures. See id. Nor can Plaintiff cannot point to the existence of a policy or custom which caused the alleged constitutional deprivation. Lastly, and even assuming that the remaining Defendants did not follow policies, this is insufficient to establish official capacity liability under section 1983.

**D.      Plaintiff's State Law Claims Are Barred by the Mississippi Tort Claims Act**

As employees of a governmental entity, these Defendants are entitled to invoke all protections and immunities from Plaintiff's state law claims contained in the Mississippi Tort Claims Act, Miss. Code Ann. § 11-46-1, et seq. The police protection exemption embodied at section 11-46-9(1)(c) protects each of these Defendants from any state law claims being raised by Plaintiff. The police protection exemption provides immunity in relevant part from claims:

> [a]rising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury.

Miss. Code. Ann. § 11-46-9(1)(c)

Because each Defendants' conduct was objectively reasonable in light of clearly established constitutional law, as outlined above, by definition their conduct could not have risen to the level of reckless disregard, and therefore they are immune.

The purpose of the police protection exemption is to protect law enforcement personnel from lawsuits arising out of the performance of their duties with respect to the alleged victim. See Maldonado v. Kelly, 768 So. 2d 906, 906 (Miss. 2000). Because their duties expose them to potential legal liability on a frequent basis, the Mississippi Supreme Court has held that, as a public policy matter, police officers and firefighters should "not be liable for mere negligence." See id. Police officers and law enforcement agencies engaged in police protection are liable for reckless acts only. See id. The Mississippi Supreme Court has defined reckless disregard as the voluntary doing of an improper or wrongful act, or the voluntary refraining from doing a proper or prudent act when such an act or failure to act evinces an entire abandonment of any care, and heedless indifference to the results which may follow. See id. The Supreme Court has distinguished between this standard and simple negligence, stating that willful or wanton behavior is the "failure or refusal to exercise any care, while negligence is a failure to exercise due care." Id. at 910 (emphasis added).

In defining reckless disregard for purposes of the Tort Claims Act, the Supreme Court stated that the phrase "reckless" has the usual meaning assigned to it:

> that the actor has intentionally done an act of unreasonable character in reckless disregard of the risk known to him, or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow. It usually is accompanied by a conscious indifference to consequences, amounting almost to a willingness that harm should follow.

Maldonado, 768 So. 2d at 911-12 (emphasis added).

Reckless disregard is conduct which is accompanied by "almost an intention" that harm

should follow from it.  That is clearly not what occurred here.

**E.**     **Plaintiff's Claims Against Defendants Payne and Cabana for the Alleged Incident of August 29, 2007, Also Fail**

On November 7, 2007, Plaintiff filed his Request to Add the Following Seven (7) Documents (DN 17), which appears to add a claim and thus amend his Complaint; regarding an altercation which he alleges occurred on August 29, 2007.  Plaintiff seeks to hold Cabana, Payne, Harrison County Board of Supervisors and William Martin responsible for this altercation.  <u>See</u> Exhibit "A", P101:L18 - P102:L22.

Defendants would first show that DN 17 was not titled, nor represented to the Court as a request to amend Plaintiff's Complaint, and there is no Order from the Court treating it as such. Defendants would also show that Plaintiff failed to seek leave of this Court, nor did he receive written consent from these Defendants.  As such this attempt at amendment is in violation of Federal Rules of Civil Procedure, Rule 15, which states that "a party may amend the party's pleading only by leave of court or by written consent of the adverse party . . .".  Fed. R. Civ. P., 15.  Therefore, this claim should be stricken.

However, should the Court consider this incident, the actions of both Payne and Cabana, officially and individually, do not rise to the level of violating the Plaintiff's constitutional rights, and/or their actions were objectively reasonable under the circumstances.  Plaintiff claims that he was assaulted by four inmates on August 29, 2007.  <u>See</u> Request to Add the Following Seven (7) Documents (DN 17).  Plaintiff does not allege that Payne or Cabana was personally aware, involved or present during this altercation.

As illustrated above, Plaintiff cannot meet the first prong of the qualified immunity analysis because he cannot demonstrate any of his constitutional rights were violated by these Defendants.

Even if he could satisfy this first prong, these Defendants' conduct were objectively reasonable. Payne and Cabana were not even aware of any alleged violation of Plaintiff's constitutional rights, since they were never present and did not personally participate in any of the alleged violations. If Payne and Cabana were not even aware of what was taking place, by definition, their conduct could not have been objectively unreasonable based on the circumstances then known to them.

Plaintiff's official capacity claims also fail, and as discussed in Section C., *supra*. Additionally, the HCADC has in place adequate policies and procedures regarding protecting inmates. See Exhibit "S", Affidavit of George Payne, Jr. All officers at the HCADC are trained in these policies and procedures. See id. In this case, Plaintiff can point to no official policy, practice or custom that violated a constitutional right regarding this alleged incident, much less one that was the moving force behind the violation. Therefore, Plaintiff's official capacity claim regarding this alleged incident fails.

## III. CONCLUSION

In sum, based upon the undisputable facts with respect to the involvement of each individual Defendant, Plaintiff does not state the deprivation of a constitutional right. In addition, the conduct of each individual Defendant was objectively reasonable. As for the official capacity claims, Plaintiff does not state the deprivation of a constitutional right, nor can he show that, based on the undisputed facts, he was injured pursuant to any municipal custom, policy, or practice. Finally, Plaintiff's exclusive remedy for his state law claims is the Tort Claims Act. See Miss. Code Ann. 11-46-7(1). Plaintiff cannot demonstrate that any of these Defendants acted with reckless disregard for his safety and well-being. See Miss. Code Ann. §11-46-9(1)(c).

Based on the foregoing, these Defendants all in their Official and Individual Capacities, pray that this Honorable Court will grant their Motion and dismiss this Civil Action as against them with prejudice. Defendants pray for such other and further relief as this Honorable Court deems appropriate.

RESPECTFULLY SUBMITTED, this the 4th day of August, 2008.

> **WARDEN DONALD A. CABANA, EARL LEONARD, CAROLYN PENDERGAST, STEVE CAMPBELL, GEORGE H. PAYNE, JR., KENNETH ROGERS, NATHAN ELLSBERRY AND ELAINE LEGE, ALL OFFICIALLY AND IN THEIR INDIVIDUAL CAPACITIES**
>
> **DUKES, DUKES, KEATING & FANECA, P.A.**
>
> BY:  */s/ Cy Faneca*
>  CY FANECA, MSB #5128

Cy Faneca, MSB #5128
Jon S. Tiner, MSB #101733
**DUKES, DUKES, KEATING AND FANECA, P.A.**
Post Office Drawer W
Gulfport, Mississippi 39502
**Telephone:** (228) 868-1111
**Facsimile:** (228) 863-2886

## CERTIFICATE OF SERVICE

I, CY FANECA, do hereby certify that I have this day delivered, via United States Mail, postage fully pre-paid, a true and correct copy of the above and foregoing pleading to the following:

        Jerome D. Johnson, #257256
        Pascagoula Restitution Center
        Post Office Box 427
        Pascagoula, Mississippi  39568

        Ian Brendell
        Post Office Box 1521
        Gulfport, MS 39501

        Karen Young, Esq.
        Meadows Law Firm
        1902 21st Avenue
        Post Office Box 1076
        Gulfport, Mississippi  39502

THIS, the 4th day of August, 2008.

        */s/ Cy Faneca*
        CY FANECA
        JON TINER