IN THE UNITED STATES DISTRICT COURT
OF THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**JEROME D. JOHNSON**                                                                  **PLAINTIFF**

V.                                                    CIVIL ACTION NO. 1:07-CV-539-LG-JMR

**DONALD CABANA, WARDEN; EARL LEONARD,
SERGEANT; GEORGE H. PAYNE, JR., SHERIFF;
KENNETH ROGERS, CAPTAIN; NATHAN ELLSBERRY,
SERGEANT; RICK GASTON, CAPTAIN; ELAINE LEGE,
SERGEANT; CAROLYN PRENDERGAST, INVESTIGATOR;
STEVE CAMPBELL, CAPTAIN; AND THE HARRISON
COUNTY BOARD OF SUPERVISORS, ALL IN THEIR
OFFICIAL AND INDIVIDUAL CAPACITIES**                                   **DEFENDANTS**

_____

**REPORT AND RECOMMENDATION**
_____

This matter is before the Court on the following motions: Defendant Rick Gaston's Motion [52-1] for Summary Judgment which is accompanied by a Memorandum [53-1] in Support, Plaintiff's Motion [59-1] for Summary Judgment, Defendants' Motion [60-1] for Summary Judgment and Memorandum [61-1] in Support, and Defendant's Response [62-1] in Opposition to Plaintiff's Motion for Summary Judgment. The Court begins by noting that the Plaintiff's Motion [59-1] for Summary Judgment is simply a recitation of all of his allegations against Defendants. Despite the liberality afforded the pleadings of *pro se* litigants, the Plaintiff has failed to meet his burden of demonstrating the absence of a genuine issue of material fact. Therefore, this Court is of the opinion that the Plaintiff's Motion [59-1] should be denied. As to the remaining Motions [52-1; 60-1] of the Defendants, the Court being fully advised in the premises, and after carefully considering the pleadings filed as a matter of record, along with the applicable law, finds that the

Defendants' Motions for Summary Judgment are well taken and should be granted.

## STATEMENT OF THE CASE

Jerome D. Johnson ("Plaintiff") was convicted of three counts of forgery committed in Gulfport, MS in June 2005. *See* Exhibit "B" attached to Motion [60-1]. On June 23, 2006, while Plaintiff was serving a probation sentence at the Hinds County Restitution Center, a warrant for arrest on violation of probation was issued against Plaintiff for receipt of stolen property. See Exhibit "C" attached to Motion [60-1]..Plaintiff was then returned to the HCADC to await a hearing on revocation of probation.

On August 31, 2006 a HCADC inmate by the name of Eugene Loisel ("Loisel"), filled out an Inmate Request Form stating that he had been raped. *See* Exhibit "D" attached to Motion [60-1]. On September 1, 2006, Loisel was examined by a nurse who noted that there appeared to be some slight bruising around Loisel's rectum. *See* Exhibit "E" attached to Motion [60-1]. Loisel advised Defendants Nathan Ellsberry and Earl Leonard that he was assaulted in C-Block, D-Section. *Id.* Loisel reported that two black male inmates from the top tier of his Section entered into his cell and jumped on him. Loisel reported that one attacker, later identified as Michael Blackmon ("Blackmon"), held him down, while the other attacker, later identified as Plaintiff, raped him. *Id.* Loisel was then transported to Memorial Hospital in Gulfport where a victim's sexual assault kit was performed. The doctor noted that he found dried secretions on Loisel's buttocks. *Id.*

Defendant Carolyn Prendergast ("Prendergast") was the Criminal Investigative Division ("CID") Investigator in charge of investigating Loisel's sexual assault claim. Prendergast interviewed Loisel, and he described the inmate that raped him as a black male, tall with tattoos on each arm. *See* Exhibit "F" attached to Motion [60-1]. Loisel stated that one of the inmate's arms had something like "Gautier" tattooed on it and the other had "soldier" tattooed on it. *Id.* Loisel was shown several

pictures of inmates and he identified Plaintiff as the inmate that raped him. *Id.*

On September 1, 2006, Sergeant Kenneth Rogers assisted in a search of Plaintiff's cell, and discovered a razor blade that was removed from a county issued razor laying on the top of Plaintiff's bunk. *Id.* Officer Gregory found the handle part of a county issued razor with the blade removed in Blackmon's cell, and both items were placed into the evidence vault. *Id.* Plaintiff was charged with a Category II Rule Violation for this contraband and for tampering with cell doors. *See* Exhibit "G" attached to Motion [60-1]. Plaintiff was disciplined for this violation by being placed in Segregation Confinement from September 1, 2006, until September 20, 2006. *See* Exhibit "H" attached to Motion [60-1].

On September 5, 2006, Prendergast presented Loisel with a photographic line up of six black males, and he positively identified Plaintiff as the inmate that raped him. *See* Exhibit "E" attached to Motion [60-1]. Prendergast prepared a criminal affidavit against Blackmon and Plaintiff for sexual battery, and also prepared affidavits and underlying facts for a search warrant for Blackmon and Plaintiff's DNA. *Id.* Prendergast presented the underlying facts and affidavits to the Honorable Judge Melvin Ray, and Judge Ray issued both arrest warrants and search warrants for Blackmon and Plaintiff. *See Id.*; Exhibit "I" attached to Motion [60-1]. Plaintiff and Blackmon were then transported to Memorial Hospital in Gulfport, where sexual assault kits were obtained. *See* Exhibit "E" attached to Motion [60-1]. Plaintiff did not receive a rule violation for this charge because this was a criminal matter, and all criminal matters are handled through the CID, and not the HCADC. *See* Exhibit "H" attached to Motion [60-1].

On September 6, 2006, Plaintiff, represented by court appointed attorney K. Wilkerson, made his initial appearance before Judge Melvin Ray. *See* Exhibit "J" attached to Motion [60-1]. Plaintiff was bound over to await the action of the next Grand Jury which was to convene on the Court's next

term. *Id*. Plaintiff was granted the right to post bond, set at $100,000. *Id.* On September 7, 2006, Prendergast photographed Plaintiff's tattoos, where she observed the tattoo on the back of the Plaintiff's left arm to depict "GUTTER," and the tattoo on the back of his right arm to depict "SOLDIER." *See* Exhibit "E" attached to Motion [60-1]. The photographs were placed into the investigative file. *Id.* On September 20, 2006, Plaintiff's Preliminary Hearing was conducted and he was again bound over to await the action of the Grand Jury, and Plaintiff's bond remained at $100, 000. *See* Exhibit "K" attached to Motion [60-1].

On October 11, 2006, Prendergast was contacted by Blackmon's counsel, who advised Prendergast to conduct an interview with inmate Frederick Sullivan ("Sullivan"). *See* Exhibit "E" attached to Motion [60-1]. On October 13, 2006, Prendergast and Investigator Fayard interviewed Sullivan, who claimed that Loisel told him that Loisel owed a lot of cigarettes to other inmates and had told an unknown Sergeant that he feared for his life, and that the Sergeant alleged that Loisel had been raped to get him moved out of the block. *Id.* Sullivan admitted that he did not know whether Loisel denied that the rape occurred because he did not want other inmates to know about it or not. *Id.* As a result of the information learned from Sullivan, Prendergast interviewed Loisel for a second time. In the second interview, Loisel stated that he denied the rape occurred because he did not want the other inmates to find out about it. *Id.* Loisel stated that everything he had previously told Prendergast about the rape was true. *Id.*

On December 19, 2006, the sexual assault kits of Loisel, Blackmon, and Plaintiff were submitted and accepted by the Mississippi Crime Lab in Biloxi, MS. *See* Exhibit "L" attached to Motion [60-1]. On December 22, 2006, Prendergast submitted her entire investigation case file to the District Attorney's Office for Grand Jury review and prosecution. *See* Exhibit "M" attached to Motion [60-1]. The sexual assault kits were returned from the Mississippi Crime Lab on May 25,

2007. *See* Exhibit "N" attached to Motion [60-1]. The evidence was forwarded to the Jefferson Parish Regional DNA Profiling Unit ("Jefferson Parish Lab") in Harvey, Louisiana, for additional DNA testing on May 30, 2007. *Id.* The Jefferson Parish Lab concluded their testing on August 3, 2007, and returned their report and invoice on August 15, 2007. *See* Exhibit "O" attached to Motion [60-1]. The testing was negative for seminal fluid, and failed to reveal the presence of any sperm cells. *Id.* Prendergast forwarded the test results to the District Attorney's Office on August 21, 2007. *See* Exhibit "O1" attached to Motion [60-1]. On October 22, 2007, the District Attorney's Office presented all of the evidence before the Grand Jury, and they returned a "NO TRUE BILL," finding that there was insufficient evidence to prosecute the case any further. *See* Exhibit "P" attached to Motion [60-1].

Plaintiff alleges that after he was charged with the sexual assault of Loisel, he began sending numerous requests and grievances to various officers at the HCADC. *See* Exhibit "A" attached to Motion [60-1]. However, the first Grievance Form on record was received on or about February 21, 2007. In this Grievance, Plaintiff referred to his sexual assault charge and inquired into his placement in disciplinary segregation for the contraband charge. *See* Exhibit "Q" attached to Motion [60-1]. On February 23, 2007, Captain Kenneth Rogers responded that the sexual assault charge had been turned over to CID, and that Plaintiff would need to direct all further questions regarding the matter to CID or his attorney. *See* Exhibit "R" attached to Motion [60-1]. Captain Rogers further explained that a criminal matter arising at the HCADC required that Plaintiff be placed in lockdown. *Id.* Plaintiff acknowledged that he continued to submit Grievances despite Captain Rogers' recommendation that he contact CID directly. *See* Exhibit "A" attached to Motion [60-1]. Plaintiff further admitted that he did not attempt to contact CID via written letter. *Id.*

Dissatisfied with Captain Rogers' response, Plaintiff filed his "Second Step" request on

February 23, 2007. *See* Exhibit "T" attached to Motion [60-1]. On March 6, 2007, Defendant Cabana responded and informed Plaintiff that criminal charges against inmates are turned over to CID, and Plaintiff would need to contact them for more information. *See* Exhibit "U" attached to Motion [60-1]. Plaintiff filed his final request of record on March 25, 2007, and addressed it to the Defendant Earl Leonard, the shift supervisor. *See* Exhibit "W" attached to Motion [60-1]. Leonard responded that Plaintiff should contact his attorney. *Id.*

While bound over awaiting the Grand Jury, Plaintiff alleges that he was subjected to an assault by four other inmates on August 29, 2007. *See* Exhibit "1-B" attached to Memorandum [53-1]. However, Plaintiff stated that he did not see any of the Defendants in the area of the attack, and that, to his knowledge, none of the Defendants were aware that the attack had occurred. *Id.* Plaintiff further stated that he had no knowledge as to whether any Defendant had any contact or communication with the inmates involved in the assault. *Id.*

Plaintiff filed this *pro se* suit against Warden Donald A. Cabana, Sergeant Earl Leonard, Sheriff George H. Payne, Jr., Captain Kenneth Rogers, Sergeant Nathan Ellsberry, Captain Rick Gaston, Sergeant Elaine Lege, Investigator Carolyn Prendergast, Captain Steve Campbell, and the Harrison County Board of Supervisors, in both their official and individual capacities, alleging violations of his constitutional rights while incarcerated at the Harrison County Adult Detention Center ("HCADC"). Plaintiff alleges that Defendants are liable for false arrest, because he was wrongfully charged with sexual assault of another inmate. Additionally, Plaintiff alleges Defendants are liable for false imprisonment, because he was wrongfully incarcerated awaiting review by a Grand Jury. Finally, Plaintiff alleges that he was subjected to an assault by four inmates due to the failure of Defendants to properly maintain a secure premises. *See* Complaint [1-1] and Amended Complaints [10-1; 18-1].

**STANDARD OF REVIEW**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). "The mere existence of a factual dispute does not by itself preclude the granting of summary judgment." *St. Amant v. Benoit*, 806 F.2d 1294, 1296-97 (5th Cir. 1987). "The requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). In other words, "[o]nly disputes over the facts that might effect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Furthermore, it is well settled in this circuit that "[b]are bones allegations are insufficient to withstand summary judgment because the opposing party must counter factual allegations by the moving party with specific, factual disputes; mere general allegations are not a sufficient response.'" *Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986) (*quoting Nicholas Acoustics Specialty Co. v. H & M Constr. Co.*, 695 F.2d 839, 845 (5th Cir. 1983)).

In considering a motion for summary judgment, the trial court views the evidence in the light most favorable to the party resisting the motion. *See Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986). To survive summary judgment, the non-movant must demonstrate the existence of a disputed issue of material fact. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986). To avoid the entry of summary judgment, the non-moving party must bring forth significant probative evidence demonstrating the existence of a triable issue of fact. *See Howard*, 783 F.2d at 1315.

42 U.S.C. § 1983 imposes liability upon any person who, acting under the color of state law, deprives another of federally protected rights. Therefore, section 1983 affords a remedy to those who

suffer, as a result of state action, deprivation of rights, privileges, or immunities secured by the Constitution and the Laws of the United States. *White v. Thomas*, 660 F. 2d 680,693 (5th Cir. 1981). A plaintiff cannot succeed merely by showing any deprivation of his rights. Section 1983 was intended to protect rights protected by federal law. *Karmi-Panahi v. Los Angles Police Dept.*, 839 F. 2d 621 (9th Cir. 1988); *Wright v. Collins*, 766 F.2d 841 (5th Cir. 1985).

## ANALYSIS

In their Motions for Summary Judgment [52-1; 60-1], Defendants contend that Plaintiff's official capacity claims against them are, in reality, claims against the Harrison County Adult Correction Facility and the Harrison County Sheriff's Office. Thus, since both are local governmental entity, Plaintiff must demonstrate that his claims are actionable under the United States Supreme Court's jurisprudence regarding municipal liability under section 1983. Defendants also assert that Plaintiff's individual capacity claims are subject to a qualified immunity defense because not only has Plaintiff failed to sufficiently establish that a violation of his Constitutional rights has occurred, but Defendants' conduct was objectively reasonable and Defendants were acting within the scope of their discretionary authority at all relevant times.

Under 42 U.S.C. § 1983, liability may be imposed upon any person who, acting under the color of state law, deprives another of federally protected rights. It neither provides a general remedy for the alleged tort of state officials, nor opens the federal courthouse doors to relieve complaints of all who suffer injury at the hands of the state or its officers. Municipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001); *Monell v. Dep't of Soc. Services*, 436 U.S. 658, 694 (1978). *Monell* and later decisions reject municipal liability predicated on *respondeat superior*, because the text of section 1983

will not bear such reading. *Board of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997). "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691.

A suit against a governmental agent or officer in his official capacity is a suit against the office that the employee holds and not against the actual employee. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). The three requirements for municipal liability outlined in *Piotrowski* are necessary in order to distinguish between individual violations by local employees and those that can be fairly attributed to conduct by the governmental entity itself. *See Piotrowski*, 237 F.3d at 578-79. The United States Supreme Court has clearly emphasized the necessity of an official policy as a predicate to recovery under a theory of municipal liability:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell*, 436 U.S. at 695. Therefore, municipalities may not be held liable for acts of lower level employees, but may be held liable for constitutional violations committed pursuant to an official policy or custom. *Piotrowski*, 237 F.3d at 578.

In addition, not only must the plaintiff establish that a policy or custom of the municipality was the "moving force" behind the alleged violation of a constitutional right; he must also establish that the municipality was "deliberately indifferent" to the known consequences of the policy. *Id.* at 580; *See Lawson v. Dallas County*, 286 F.3d 257, 264 (5th Cir. 2002) ("[T]he municipality must maintain its official policy with deliberate indifference to a constitutionally protected right."). Deliberate indifference is an objective standard which encompasses "not only what the policymaker actually knew but what he should have known, given the facts and circumstances surrounding the official policy and

its impact on the plaintiff's rights." *Lawson*, 286 F.3d at 264.

The Fifth Circuit has noted that the plaintiff bears an "extremely heavy burden" in establishing both the municipality's deliberate indifference and a causal link between the alleged custom and the alleged constitutional violation. *Peters v. City of Biloxi*, 57 F.Supp. 2d 366, 376 (S.D. Miss. 1999). *See Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998); *Piotrowski*, 237 F.3d at 580 (stating that these two requirements "must not be diluted").

With these principles in mind, the Court will now individually address each of Plaintiff's constitutional claims.

I. False Imprisonment and False Arrest:

Plaintiff alleges that Defendants, by and through their employment with the HCADC and the Harrison County Sheriff's Office, are liable under Section 1983 for false arrest and false imprisonment, beginning when Plaintiff was charged with the sexual assault of another inmate on September 6, 2006, and continuing through to a Grand Jury's "No True Bill" was returned on October 22, 2007. The Court notes that Plaintiff's official capacity claims against Defendants are, in reality, a claim against the offices which each occupied at the time of the alleged incidents and, ultimately, Harrison County. *See Moore v. Carroll County, Miss.*, 960 F.Supp. 1084, 1087 n.3 (N.D. Miss. 1997). To the extent Plaintiff brings this action against Defendants in their official capacity, he must establish a constitutional violation, and in addition must satisfy the three requirements necessary to impose municipal liability. First, that the HCADC or Harrison County Sheriff's Office had an official policy, practice, or custom which would subject it to section 1983 liability; second, that the official policy is linked to the constitutional violation(s); and third, that the official policy reflects deliberate indifference to that injury. *See Lawson*, 286 F.3d at 263.

Plaintiff claims that Defendants are liable under section 1983 for false imprisonment and false

arrest. However, other than the above mentioned allegations, Plaintiff presents no evidence that an official policy existed which violated his constitutional rights. The Court finds that such bare allegations, without more, are simply insufficient to support a claim that there existed a policy or custom which was the moving force behind any alleged constitutional violation. At best, Plaintiff's assertions amount to an isolated incident of negligent conduct, which, by itself, is insufficient to support the instant official capacity claims against Defendants.

In addition to failing to establish the existence of an official policy, Plaintiff also fails to establish the violation of a constitutional right. Plaintiff maintains that Defendants "fail[ed] to do anything to stop or fix the wrong when there was a duty to do so [which] lead to false imprisonment of the Plaintiff." *See* Complaint and Amended Complaints. However, in order to prevail in a § 1983 claim for false arrest or false imprisonment, a plaintiff must show that he was arrested without probable cause in violation of the Fourth Amendment. *Brown v. Lyford,* 243 F.3d 185, 189 (5th Cir.2001). Probable cause exists "when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Glenn v. City of Tyler,* 242 F.3d 307, 313 (5th Cir.2001).

The Court finds that probable cause existed upon which to arrest Plaintiff for sexual assault, as Defendant Prendergast, the CID investigator, uncovered sufficient facts to reasonably conclude that Plaintiff had committed the crime charged. Defendant Prendergast had before her Loisel's claims, the nurse's physical examination and identification of injury to the victim's rectum, the removal of dried secretions from the victim's buttocks, the victim's subsequent photo lineup identification of Plaintiff, and the description of Plaintiff's two tattoos. Because Plaintiff's warrant and arrest were based upon probable cause, Plaintiff suffered no Fourth Amendment violation, and thus his § 1983

claim is legally insufficient.

Based on the foregoing analysis, the Court finds that Plaintiff's complaints do not rise to the level of constitutional violations. Even if Plaintiff were able to prove that such violations occurred, this Court finds no policy or custom on the part of the HCADC or Harrison County Sheriff's Office existed which was the moving force behind any alleged constitutional violations. Therefore, Plaintiff's official capacity claims against Defendants for false arrest and false imprisonment must fail.

Plaintiff's Complaint additionally asserts claims against Defendants in their individual capacities. In response, Defendants plead the affirmative defense of qualified immunity. In assessing a claim of qualified immunity, the determination must first be made as to whether the plaintiff has alleged a violation of a clearly established constitutional right. *Siegert v. Gilly*, 500 U.S. 226, 231 (1991). If a violation of a right has been alleged, then it must be determined whether the defendant's conduct was objectively reasonable. Even if the conduct violates a constitutional right, qualified immunity is applicable if the conduct was objectively reasonable. *Hare v. City of Corinth, Miss*, 135 F.3d 320, 327 (5th Cir. 1998).

Plaintiff claims he was subject to false arrest and false imprisonment in violation of the Fourth Amendment. In order to prevail on a claim of false imprisonment or false arrest, Plaintiff must prove that he was arrested without probable cause. "Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *Mendenhall v. Riser,* 213 F.3d 226, 230 (5th Cir.2000)(internal quotation and citation omitted). Thus, Defendants are entitled to qualified immunity if a reasonable person in their position could have believed, in light of the facts and circumstance of which Defendants were aware, that a fair probability existed that Plaintiff committed an offense. *See Glenn*, 242 F.3d at 313. "[T]here must not even

arguably be probable cause for the ... arrest for immunity to be lost." *Brown,* 243 F.3d at 190 (internal quotation and citation omitted).

As previously stated, Plaintiff has failed to prove a violation of any clearly established constitutional right, as his arrest and detention on suspicion of sexual assault of an inmate was effectuated pursuant to probable cause. Defendant Prendergast had before her Loisel's claims that he was raped, the nurse's physical examination and identification of injury to and around the Loisel's rectum, the removal of dried secretions from the Loisel's buttocks, Loisel's subsequent photo lineup identification of Plaintiff, and Loisel's description of the attacker's two tattoos which were remarkably similar to the Plaintiff's tattoos observed and photographed by Prendergast. The Court concludes that sufficient facts and evidence were known to Defendants to warrant a reasonable belief that Plaintiff committed the sexual assault of Loisel.

Even assuming, *arguendo*, that Plaintiff established a violation of his constitutional rights, the Court finds that Defendants would still be entitled to qualified immunity because their conduct was objectively reasonable. Plaintiff is unable to specifically allege any unreasonable conduct on the part of Defendant, but rather states in blanket terms that Defendants "failed to adequately investigate [and] . . . knew about the wrong, but [failed to do] anything to stop or fix it when there was a duty to do so." *See* Complaint and Amended Complaints.

There is no indication that Defendants acted unreasonably in their investigation. Defendant Prendergast handled the investigation in a professional manner and pursued all relevant leads. For example, upon being notified that Loisel had allegedly recanted the allegation of sexual assault to Sullivan, Prendergast promptly conducted a second interview to determine whether Loisel had truly recanted his claims. Furthermore, Plaintiff was neither subjected to unreasonable searches nor unreasonably denied due process during the investigation into Loisel's accusations. The record

indicates that, before procuring DNA evidence Plaintiff, Prendergast submitted the fruits of her investigation to Judge Ray for a judicial determination of probable cause to support a search warrant. Following his arrest, Plaintiff was brought before Judge Ray for both an initial appearance and a preliminary hearing, and was provided an attorney to assist in his defense.

Additionally, Plaintiff claims that Defendants unreasonably detained him for 434 days while they investigated the charges filed against him. However, the record indicates that the great majority of delay in prosecuting Plaintiff's case was not attributable to neglect on behalf of the Defendants, but rather due to the time required to process the necessary DNA evidence obtained from Plaintiff's sexual assault kit. Prendergast submitted the sexual assault kits to the Mississippi Crime Lab on December 22, 2006. However, the kits were not returned to Defendants for additional DNA testings until May 25, 2007. Defendants promptly forwarded the evidence to the proper facility on May 30, 2007. The DNA test results were not returned to Defendants until August 15, 2007. Defendants forwarded the DNA Report to the District Attorney's Office on August 21, 2007. The Grand Jury returned the finding of "NO TRUE BILL" until October 22, 2007. Based on the evidence of record, the Defendants were responsible for only 136 days of Plaintiff's 434 day detention. Therefore, the Court finds that Defendants conducted Plaintiff's investigation in an objectively reasonable manner and were not responsible for an unreasonable delay.

In the case at hand, the Court finds that Plaintiff has not presented any evidence sufficient to allege a violation of a clearly established constitutional right or any unreasonable conduct on the part of the Defendants. Thus, the Court finds that Defendants are entitled to qualified immunity.[1]

---

[1] The Court also finds that to the extent Plaintiff's complaint could be construed to allege claims under state law, they are barred by provisions contained in the Mississippi Tort Claims Act, Miss. Code Ann. § 11-46-11, *et seq*. Specifically, the Act provides that a government subdivision shall not be liable for a claim "of any claimant who at the time the claim arises is an inmate of any detention center, jail, workhouse, penal farm, penitentiary, or other such institution regardless of whether such claimant is or is not an inmate . . . when the claim is filed." Miss. Code Ann. § 11-46-9(1)(m). The Court finds that because Plaintiff was an inmate at the time these events allegedly occurred, any

II. FAILURE TO SUPERVISE OR TRAIN:

Plaintiff's Complaint alleges that Defendants, by and through their employment with the HCADC and Harrison County Sheriff's Office, are liable pursuant to Section 1983 for failing to properly train and supervise their employees. Specifically, Plaintiff claims:

> [Defendants] failed to set up policies that help guide subordinates' conduct so that violations of constitutional rights do not occur, failed to inform staff of and train them on policies designed to avoid constitutional deprivations, or failed to supervise staff to ensure they adhere to policies [which] lead to false imprisonment of the Plaintiff.

*See* Amended Complaint [10-1].

"Supervisory officers cannot be held liable under Section 1983 for the actions of subordinates on any theory of vicarious liability." *Hampton v. Oktibbeha County Sheriff Dept.*, 480 F.3d 358, 367 (5th Cir. 2007) (quoting *Thibodeaux v. Arceneaux*, 768 F.2d 737, 739 (5th Cir. 1985)). Counties and supervisors are liable for the constitutional violations committed by county employees only when those violations result directly from a municipal custom or policy. *Conner v. Travis County*, 209 F.3d 794, 796 (5th Cir. 2000). Therefore, with respect to Plaintiff's claim that Defendants failed to supervise or properly train the subordinate employees of the HCADC or the Harrison County Sheriff's Office, Plaintiff must show: (1) Defendants failed to supervise or train subordinate officials; (2) a causal link exists between failure to train or supervise and violation of Plaintiff's constitutional rights; and (3) Defendants' failure to train or supervise amounts to deliberate indifference. *See Estate of Davis ex rel. McCully v. City of North Richland Hills,* 406 F.3d 375, 381 (5th Cir. 2005).

The Court finds that, to the extent Plaintiff alleges that Defendants' failure to train or supervise subordinate employees resulted in his false arrest and imprisonment, Plaintiff has failed to establish any violation of his constitutional rights. As noted previously, in order to prevail on a claim

---

claims arising under Mississippi law as a result of these alleged events are barred by the above provision.

of either false arrest or false imprisonment, Plaintiff must show that he was arrested without probable cause in violation of the Fourth Amendment. *Brown,* 243 F.3d at 189. The record indicates that sufficient probable cause existed upon which Defendants could form a reasonable belief that Plaintiff committed the crime with which he was charged. Therefore, Plaintiff suffered no violation of his rights under the Fourth Amendment.

Assuming, *arguendo*, that Plaintiff successfully established a claim of false imprisonment and arrest, Plaintiff has failed to establish that Defendants' failure to train or supervise amounts to deliberate indifference to Plaintiff's injury. "Deliberate indifference . . . [requires] proof that a municipal actor disregarded a known or obvious consequence of his action." *Estate of Davis ex rel McCully*, 406 F.3d at 381. To establish deliberate indifference, a plaintiff must prove that a defendant acted with more than negligence or even gross negligence. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). Furthermore, "a plaintiff must demonstrate a pattern of violations and that the inadequacy of the training is 'obvious and likely to result in a constitutional violation.'" *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003) (quoting *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001).

The Court finds that there is no material issue on the record with respect to whether Defendants alleged failure to train or supervise amounted to deliberate indifference. Plaintiff alleges that the investigation of Loisel's claim was inadequately conducted. However, even if accepted as true and taken as a whole, the evidence of record is legally insufficient to show that Defendants' failure to properly train Prendergast amounted to deliberate indifference to Plaintiff's injury. Because Plaintiff failed to establish a pattern of violations, Defendants' failure to properly supervise Prendergast's investigation was, at most, an isolated incident of negligence. Further, Plaintiff has failed to establish that the inadequacy of Prendergast's training was obvious and likely to result in

a violation of his constitutional rights.

Plaintiff also alleges that Defendants failed to ensure that their employees adhere to the HCADC's guidelines and policies regarding inmate grievance requests. However, "a prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met." *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996). The record indicates that Plaintiff received a response to every grievance form he filed during his detention. While Plaintiff was clearly unsatisfied with the substance of the responses, there is sufficient evidence to support a finding that Defendants sufficiently supervised and trained their subordinates so as to ensure that Plaintiff's rights were not violated. Even if Plaintiff could somehow show a causal connection between the Defendants' allegedly negligent supervision and a violation of Plaintiff's constitutional rights, the Court finds that the evidence of record is insufficient to establish that Defendants were deliberately indifferent to Plaintiff's injury. There is simply no evidence to suggest that Defendants were aware that their conduct was likely to result in a violation of Plaintiff's constitutional rights . This issue is without merit.

Plaintiff additionally alleges that Defendants are liable in their individual capacities for negligent supervision and training of their employees. In response, Defendants plead the affirmative defense of qualified immunity. In assessing a claim of qualified immunity, the determination must first be made as to whether the plaintiff has alleged a violation of a clearly established constitutional right. *Siegert*, 500 U.S. at 231. If a violation of a right has been alleged, then it must be determined whether the defendant's conduct was objectively reasonable. Even if the conduct violates a constitutional right, qualified immunity is applicable if the conduct was objectively reasonable. *Hare*, 135 F.3d at 327.

The Court finds that Plaintiff's allegations of negligent supervision and training are not linked

to a violation of any clearly recognizable constitutional right. Plaintiff was not falsely arrested or imprisoned in violation of the Fourth Amendment, as there existed sufficient probable cause to support a reasonable belief that Plaintiff had committed sexual assault of an inmate. Additionally, the failure of Defendants' subordinates to satisfactorily respond to Plaintiff's written grievances did not violate any cognizable right.

Assuming, *arguendo*, that Plaintiff were able to sufficiently establish a violation of his constitutional rights, the Court finds that Defendants would still be entitled to qualified immunity, as there is no evidence in the record to suggest that Defendants' training and supervision was unreasonable. Prendergast conducted Plaintiff's criminal investigation efficiently and thoroughly, and ensured that the investigation remained within the parameters imposed by the Constitution. Furthermore, the record indicates that Plaintiff's grievances were promptly addressed, and that Plaintiff was advised to direct his inquiries to authority in charge of his criminal investigation. All evidence indicates that the Defendants reasonably supervised and trained their subordinates so as to ensure that Plaintiff's constitutional rights were respected. Therefore, the Court finds that Defendants are entitled to qualified immunity.

### III. FAILURE TO PROTECT:

Plaintiff amended his original Complaint to assert an additional claim against Defendants. In his Amended Complaint [18-1], Plaintiff alleges that Defendants failed to properly monitor high risk inmates and, as a result, Plaintiff was assaulted by four prisoners on August 29, 2007. "Jailers owe a constitutionally rooted duty to their prisoners to provide them reasonable protection from inquiry at the hands of their fellow prisoners." *Stokes v. Delcambre*, 710 F.2d 1120, 1125 (5th Cir. 1983). In order to recover, Plaintiff must show that he is incarcerated under conditions that create a substantial risk of serious harm, and that prison officials were deliberately indifferent to an inmate's

safety. *See Longoria v. Texas*, 473 F.3d 586, 592 (5th Cir. 2006). The standard is subjective. Thus, "[t]he official must both be aware of facts from which an inference could be drawn that a substantial risk of serious harm exists and must in fact also have drawn the inference." *Id.* at 593 (internal quotations omitted).

Plaintiff's alleges that Defendants are liable for negligent training and supervision of their subordinates in relation to the August 29, 2007 attack. Plaintiff opines that he was a high risk inmate because he was charged with the sexual assault of another inmate. However, Plaintiff offered no evidence that either he or Defendants had reason to anticipate an act of violence from other inmates. In his deposition, Plaintiff stated that the four inmates that allegedly assaulted him had a reputation for assaults on other inmates, but he acknowledged that those assaults occurred after August 29, 2007. Additionally, Plaintiff alleged that some of the doors in his section do not lock. However, the Court finds that such bare allegations, without more, are simply insufficient to support a claim that Defendants were aware of a high risk of serious harm to Plaintiff.

Additionally, Plaintiff cannot establish that Defendants were deliberately indifferent to a violation of Plaintiff's constitutional rights. In his deposition, Plaintiff stated that, *in his opinion*, prison officials should check on high risk inmates every twenty or thirty minutes. *See* Exhibit "A" attached to Motion [60-1]. However, Plaintiff cannot identify the existence of any such official policy, practice or custom. Furthermore, Plaintiff acknowledged that none of the Defendants were physically present during the alleged attack, nor did Plaintiff have any reason to believe that Defendants were aware of the attack at the time it was committed. When viewed in a light most favorable to Plaintiff, the Court finds that Defendants conduct, at worst, rises to the level of negligence. Accordingly, the Court concludes that there is simply no evidence to support a finding that Defendants were deliberately indifferent to Plaintiff's constitutional rights.

## **CONCLUSION**:

Based on the forgoing analysis, this Court is of the opinion that Plaintiff has failed to meet his burden of demonstrating any genuine issues of material fact which would preclude summary judgment on his Section 1983 claims. Therefore, the Court finds that Defendants' Motions [52-1; 60-1] for Summary Judgment should be granted, and that all claims against the Defendants should be dismissed with prejudice, both in their individual and official capacities.

In accordance with the Rules of this Court, any party, within ten days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party. The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal unobjected to proposed factual findings and legal conclusions accepted by the District Court. *Douglas v. United States Auto Ass'n*, 79 F.3d 1425 (5th Cir. 1996).

This the   24th   day of August, 2008.

                                                                               s/ John M. Roper  
                                                         CHIEF UNITED STATES MAGISTRATE JUDGE